# LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

ATTORNEYS AT LAW

February 4, 2026

**VIA ECF**
Hon. Edgardo Ramos
District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:  *Erika M. Kitzmiller v. Barnard College, et al.,* **1:25-cv-08634 (S.D.N.Y.)**

Dear Judge Ramos:

Below Dr. Kitzmiller addresses issues in Attorney Gigante's letter on behalf of Columbia University.[1]

## I. Single/Joint Employer

Contrary to Columbia's assertion, Columbia was Plaintiff's employer along with Barnard. Plaintiff pled that she was a Term Assistant Professor of Education Studies at both "Barnard and Columbia" (Complaint, ¶ 51), and that Barnard and Columbia failed to hire her for the tenured positions. *Id.* ¶ 130. Columbia and Barnard are a single/joint employer due to interrelation of operations, common management, common ownership, *etc*. *Id.* ¶¶ 5-31, 58, 91, 95, 102-05, 130, 147. Allegations include that "Barnard is an official college of Columbia University," "Barnard Professors are Columbia Professors, Too," standards for tenure and promotion for Barnard faculty and Columbia faculty are the same, "Columbia is *not* considered to be a separate non-profit institution," (*id.* ¶ 11) (emphasis added), appointments to Barnard's faculty must be approved by Columbia, campuses are not separate, the Urban Studies department where Dr. Kitzmiller worked describes itself as a "Barnard-Columbia" program, the administrations of Barnard and Columbia are linked and the Barnard President reports directly to Columbia's President, and part of Dr. Kitzmiller's salary was paid by Columbia. *See id.*

## II. Title IX and Title VI

For Title IX and/or Title VI claims Columbia and Barnard are a single entity based on interrelation of operations, common management, common ownership, etc. *See e.g., Valesky v. Aquinas Acad.,* 2011 WL 4102584, at *10 (W.D. Pa. Sept. 14, 2011) (Diocese and Catholic high school one entity for Title IX purposes regardless of separate operating trusts so as to ensure artificial distinctions do not defeat statutory anti-discriminatory intent).

---

1. The facts and arguments in Dr. Kitzmiller's related Response to Barnard are incorporated herein.

James B. Lieber, Esq. - jlieber@lhhb-law.com
1722 Murray Avenue - Pittsburgh, PA 15217
Phone: 412.687.2231 - Ext 114 - Fax: 412.687.3140
www.lhhb-law.com

Hon. Edgardo Ramos
February 4, 2026
Page 2

### III. Title IX

Title IX recognizes claims based on gender stereotypes. *See Doe v. McQuaid Jesuit, No. 6:24-CV-06237 EAW*, 2024 WL 4905278, at *6 (W.D.N.Y. Nov. 27, 2024) (recognizing Title IX claim based on non-conformance with gender stereotypes). In Title VII's similar context, stereotypical discrimination arises including "the notions that mothers are insufficiently devoted to work, and that work and motherhood are incompatible." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004); *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 131–32 (E.D.N.Y. 2019).

Here stereotypical evidence is clear. *See* discrimination alleged at Complaint ¶¶ 152, 157, 161-65, 172-177, 244-248 including remarks about mothers with small children by a decision-maker, that no candidate with children was hired while only candidates without children were hired, plus another unsuccessful candidate with small children complained that she did not get either position because she had been "mommy-tracked," and give support to a stereotypical claim of sex discrimination. *See Back*, 365 F.3d at 117; *Hauff*, 425 F. Supp. 3d at 131–32. Defendants "are wrong in their contention that [Kitzmiller] cannot make out a claim that survives summary judgment unless she demonstrates that the defendants treated similarly situated men differently." *See Back*, 365 F.3d at 121.

Plaintiff may amend to add claims under the NYC Human Rights Law for, *inter alia*, gender discrimination and caregiver (parent) discrimination (as she received a dismissal for administrative convenience from the NYSDHR) and add claims under Title VII and the ADEA. She will expand the Title IX claim to show that Dr. Kitzmiller was replaced by a far younger and less qualified male.

### IV. Title VI

Regarding the Title VI claim, Plaintiff received a grant from the National Science Foundation (NSF), (Complaint ¶ 56), which supported her employment at Barnard and Columbia. *See Lewis v. Russe*, No. 88 C 8684, 1990 WL 106531, at *8 (N.D. Ill. July 10, 1990), *aff'd*, 972 F.2d 351 (7th Cir. 1991) ("Grants supporting faculty research, which also support student research which constitutes part of a student's academic program, have a sufficiently direct impact on the academic program to bring the provisions of Title VI into play."). Plaintiff may amend her complaint to allege facts that Columbia and Barnard receive federal funds, the primary purpose of which is to provide employment. *See Joy v. Crime Victims Treatment Ctr.*, 23-CV-11177 (MMG), 2025 WL 326521, at *8 (S.D.N.Y. Jan. 29, 2025) (allowing Title VI plaintiff to amend so as to aver additional facts related to federal funding).

As to the argument that there are no allegations that Columbia took any discriminatory action against Dr. Kitzmiller because of her gender or race, nor that Columbia had knowledge of her complaints, Plaintiff can amend to plead additional allegations including that Columbia's Title IX office was contacted about Plaintiff's mistreatment in January/February 2023 and it passed off the issue to Barnard without follow-up, that many Columbia administrators were told of her mistreatment and refused to act, and that Dr. Jacobs himself was retaliated against for raising this issue of his wife's mistreatment to Columbia.[2] Further Dr. Kitzmiller is prepared to

---

2. Dr. Kitzmiller has standing to raise this retaliation. *See e.g. Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 174 (2011) (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53 (2006)) ("Title VII's

amend and prove that Columbia Provost Angela Olinto met with Dr. Jacobs in 2023-24 about the discrimination against his wife and said she would act.

### V. Section 1981

For Section 1981, Columbia and Barnard can be considered a single entity based on the interrelation of operations, common management, common ownership, etc. *See Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 421–23 (S.D.N.Y. 2022) (finding amended complaint "does allege facts sufficient to find a plausible employment relationship between the Clipper Defendants and Gramercy Square Defendants under either the single or joint employer doctrine") (Section 1981 claims). Plaintiff can allege a race discrimination claim. Search Committee Chair Dr. Abu El-Haj told Dr. Kitzmiller that her application for this position would not be considered because she was "not urban enough," which was false and pretextual. Regarding the false lack of "urbanness" charge against Dr. Kitzmiller, she was the only finalist with any educational credential in the field of urban studies, a Certificate in Urban Studies from the University of Pennsylvania. Complaint ¶¶ 280-82. Plaintiff may amend the Complaint to add the allegation that the successful but less well qualified candidate is Black. *See Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-7900-CV, 2025 WL 1501751, at *3–5 (2d Cir. May 27, 2025) (finding allegations of disparate treatment "plausibly plead that unlawful [race] discrimination [under Section 1981] was at least 'one but-for cause' of the adverse employment actions.").

Courts have consistently held that claims of discrimination based on interracial relationships are cognizable under Section 1981. *See Rosenblatt v. Bivona & Cohen, P.C.*, 946 F. Supp. 298, 300 (S.D.N.Y. 1996). Jewish individuals are a protected racial group under Section 1981. *Weiss v. La Suisse*, 260 F.Supp.2d 644 (S.D.N.Y. 2003). Plaintiff alleges that the failures to hire occurred under circumstances giving rise to an inference of discriminatory intent because her husband is Jewish. *See* Complaint ¶¶ 66, 68, 89, 114, 115, 194. The allegations that the person in charge of the search was a member of an antisemitic organization and that she knew Plaintiff was married to a Jew whom she criticized without justification, plus the times when the decision-maker falsely accused the Plaintiff of being anti-Palestine or culturally insensitive to Muslims, supports a Section 1981 claim.

Plaintiff submits that the glaring discrimination, retaliation, and disloyal breaches may be regarded poorly by a jury, which will weigh and scrutinize why a university would get rid of two of its highest performing scholars against the interests of its students and itself. There is no believable business reason here, just the flimsiest of pretexts.

---

antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."). *See also Vormittag v. Unity Elec. Co.*, No. 12 CV 4116(RJD)(RLM), 2014 WL 4273303, at *5 (E.D.N.Y. Aug. 28, 2014), *Tromblee v. New York*, 1:19-CV-0638 (LEK/CFH), 2021 WL 981847 (N.D.N.Y. Mar. 16, 2021), *and also Lopez v. Four Dee, Inc.*, No. 11–CV–1099, 2012 WL 2339289, at *2 (E.D.N.Y. Jun. 19, 2012).

Hon. Edgardo Ramos
February 4, 2026
Page 4

Respectfully submitted,

*James B. Lieber*

James B. Lieber

cc: Erika Kitzmiller, Ph. D.
Joshua Jacobs, Ph. D.
Evandro Gigante, Esq.
Jacqueline Polito, Esq.
Thomas Huber, Esq.