# LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

ATTORNEYS AT LAW

February 4, 2026

**VIA ECF**
Hon. Edgardo Ramos
District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Erika M. Kitzmiller v. Barnard College, et al.,* 1:25-cv-08634 (S.D.N.Y.)

Dear Judge Ramos:

Below Dr. Kitzmiller addresses issues in Attorney Polito's letter on behalf of Barnard College.[1]

In 2019, Joshua Jacobs, Assistant Professor in the Department of Biomedical Engineering at Columbia University, and his wife Erika Kitzmiller, an untenured faculty member at Teacher's College, Columbia, negotiated a retention package. They made a deal whereby Dr. Jacobs would stay at Columbia and Dr. Kitzmiller would receive a position at Barnard and be considered fairly for a subsequent tenure track position. Compl. ¶ 59. Dr. Kitzmiller performed extremely well but the review was unfair and riddled with prejudice against her for being a mother over 40 with young children, not being "urban enough," for racial advocacy in her scholarship and teaching, for complaints of sexist benefits, and for having a Jewish husband.

## I. Joint Employment/Single Employer.

Columbia and Barnard are a deeply intertwined single or joint employer. *See* Compl. ¶¶ 4-32. Columbia paid part of Dr. Kitzmiller's salary. *Id.* ¶ 31. During the selection process Professor Leslie Sharpe who had a position in a single department of Columbia and Barnard and a position at Columbia Medical School was tasked with interviewing Dr. Kitzmiller and attacked her scholarship on racial grounds. *Id.* ¶¶ 105-110. Barnard Vice President Jennifer Rosales revealed that Sharpe had a reputation for racism and gave an example. *Id.* ¶¶ 111-113. Dr. Kitzmiller sought a position on the tenure track managed by Columbia according to Columbia standards. *Id.* ¶ 13. "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable for resolution on a motion to dismiss." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

## II. Dr. Kitzmiller Pled A Title IX Claim Based on Gender Stereotypes.

Title IX recognizes claims based on gender stereotypes. *See Doe v. McQuaid Jesuit*, No. 6:24-CV-06237 EAW, 2024 WL 4905278, at *6 (W.D.N.Y. Nov. 27, 2024). In the similar Title VII context, claims are based on stereotypical "notions that mothers are insufficiently devoted to work, and that work and motherhood are incompatible." *See Back v. Hastings On Hudson Union*

---

[1] The facts and arguments in Dr. Kitzmiller's related response to Columbia are incorporated herein.

James B. Lieber, Esq. - jlieber@lhhb-law.com
1722 Murray Avenue - Pittsburgh, PA 15217
Phone: 412.687.2231 - Ext 114 - Fax: 412.687.3140
www.lhhb-law.com

*Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004); *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 131–32 (E.D.N.Y. 2019). The search process produced only winning candidates under the age of 40 who did not have children. Compl. ¶ 157. In 2024, Professor Maria Rivera Maulucci, who had been on both search committees, harassed Dr. Kitzmiller in front of the entire program faculty and revealed prejudice: "Erika, you have young children. That dictates the times that you are available to teach. We need people to teach at night and you won't want to do that with children." *Id.* ¶¶ 157, 161. Another losing candidate complained to being "mommy-tracked." *Id.* ¶¶ 174, 176. She was told that she would be a better mother because she had accepted a job at another university (*Id.* ¶ 175). *See Back*, 365 F.3d at 117; *Hauff*, 425 F. Supp. 3d at 131–32. Plaintiff may amend to add claims under the NYC Human Rights Law for, *inter alia*, gender discrimination and caregiver (parent) discrimination, Title VII and the ADEA.

### III. Dr. Kitzmiller Pled Section 1981 and Title VI Race Discrimination Claims.

Dr. Kitzmiller pled a prima facie case for Section 1981 and Title VI racial discrimination. *See Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 234 (S.D.N.Y. 2022). Plaintiff is in a protected class, White; was qualified for both positions based on her qualifications and experience; applied for and was turned down for both positions, and; there are circumstances giving rise to an inference of discriminatory intent. Compl. ¶¶ 272-79. Search Chair Abu El-Haj falsely claimed that Dr. Kitzmiller's application would not be considered because she was "not urban enough," which was pretextual since she was the finalist with superior urban credentials and expertise. *Id.* ¶¶ 280-82. Plaintiff may amend the Complaint to add the allegation that the winning candidate was Black and far less qualified.

### IV. Dr. Kitzmiller Pled a Section 1981 Race Association Discrimination Claim.

Interracial relationships claims sound under § 1981. *See Rosenblatt v. Bivona & Cohen, P.C.*, 946 F. Supp. 298, 300 (S.D.N.Y. 1996). Jewish individuals are a protected racial group under § 1981. *Weiss v. La Suisse*, 260 F.Supp.2d 644 (S.D.N.Y. 2003). Before Dr. Kitzmiller's final interview, Search Chair Dr. Abu El-Haj ridiculed Dr. Kitzmiller's husband whom she never met, for being a bad husband and father which was false and upset Dr. Kitzmiller as intended. Dr. Abu El-Haj knew nothing personal about him except that he is Jewish. Compl. ¶¶114-15. Dr. Abu El-Haj publicly exploded accusing Dr. Kitzmiller of being anti-Palestinian, a baseless falsehood that was racist in itself, and not on topic. *Id.* ¶¶ 193-94. Dr. Abu El-Haj visited Dr. Kitzmiller's office, falsely and bizarrely complained that some wall posters were "anti-Muslim." Dr. Abu El-Haj is a supporter of the Boycott, Divestment, and Sanctions (BDS) movement which included anti-Semitic aspects about delegitimizing Israel, and Jews who support Israel's right to exist. Later Dr. Abu El-Haj was hostile to Dr. Kitzmiller without a legitimate basis. *Id.* ¶ 66. Following a work dinner, Dr. Abu El-Haj publicly scored and humiliated Dr. Kitzmiller for ordering a glass of wine without asking the Muslim guest's permission. *Id.* ¶ 68. Reasonable jurors could find race discrimination under §1981.

### V. Dr. Kitzmiller Pled a Title IX Retaliation Claim (Count II).

Dr. Kitzmiller engaged in protected activity when she complained that childhood tuition benefits were higher for Columbia than for Barnard faculty. Compl. ¶¶ 60-61. The pay-and-benefits disparity related to the fact that Barnard faculty teach a female student body; it results in second class professor status, and violates federal and state laws. *Id.* ¶ 220. The lower paid faculty at Barnard is mostly female (65%) while the higher paid Columbia faculty is mostly

Hon. Edgardo Ramos
February 4, 2026
Page 3

male (39% female), faculties at Barnard and Columbia have the same responsibilities and are evaluated according to the same standards for tenure and by the same final committees, while Barnard faculty receive poorer economic treatment. *Id.* ¶ 221-229. Plaintiff suffered adverse actions when Defendants failed to hire her in 2022 for tenure track positions. A causal connection exists based on the pretextual nature of the justifications for those decisions and failures to follow search policies and procedures. *See Id.* ¶¶ 346-84.

Plaintiff engaged in protected activity when she filed an internal discrimination complaint in January 2023. Compl. ¶¶ 182, 186. Subsequently Plaintiff suffered a materially adverse action when the Defendants interfered with her ability to get grants which they previously supported. *Id.* ¶¶ 206-210. A causal connection is established based on a pattern of antagonism against Plaintiff following the protected conduct and the failure to follow the policies and procedures for conducting an investigation in to her discrimination complaint. *Id.* ¶¶ 175, 185-204, 346-84.

## VI. Dr. Kitzmiller Pled Section 1981 and Title VI Retaliation Claims (Counts III-VI).

Plaintiff engaged in protected activity including in 2021 when she complained that student enrollment caps prevented racial minority students from taking the classes and majoring or minoring in Education Studies. Compl. ¶¶ 69, 70, 73, 75. Subsequently Plaintiff suffered adverse actions. Further, Dr. Kitzmiller was known throughout the Barnard community as an advocate for under-represented and racial minority students. *Id.* ¶ 82. Dr. Abu El-Haj made clear that she did not appreciate that Dr. Kitzmiller framed the caps as a racial issue and warned that she "would be happier at another institution" and "should consider leaving Barnard." *Id.* ¶ 71. Dr. Abu El-Haj indicated to Dr. Kitzmiller that she was frustrated that Dr. Kitzmiller met with Provost Bell to discuss the racial issue. *Id.* ¶ 74. A causal connection exists because the Chair wanted Dr. Kitzmiller to leave and made it happen.

## VII. Dr. Kitzmiller Pled Breach of Contract Claims.

Columbia and Barnard promised that Barnard would consider Dr. Kitzmiller fairly for a tenure track position. Compl. ¶ 59. They breached causing Dr. Kitzmiller to lose her job and suffer other losses. Workplace policies with university faculty can create binding and actionable contracts. *See O'Neill v. New York Univ.*, 97 A.D.3d 199, 944 N.Y.S.2d 503, 512-13 (2012). Such policies "form part of the essential employment understandings between a member of the Faculty and the University" and can "have the force of contract." *Monaco v. New York Univ.*, 145 A.D.3d 567, 43 N.Y.S.3d 328, 329 (2016). In Count XIII, Plaintiff alleged an agreement, breach by Defendants, and damages caused by Defendants' failures to abide by the terms and conditions of their hiring policies and procedures. Compl. ¶¶ 345-56. In Count IX, Plaintiff alleged an agreement, breach by Defendants, and damages caused by Defendants' failures to abide by Title IX and anti-discrimination policies and procedures. *Id.* ¶¶ 358-85. Plaintiff also will amend to show she was replaced by a much younger far less qualified male.

The facts also support a finding of fraud. The Second Circuit has held that "[t]he requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-1 (2d Cir. 2006). Motivated, Barnard willfully ignored its own internal procedures with respect to both the hiring and investigation processes extinguishing Dr. Kitzmiller's academic opportunity.

Hon. Edgardo Ramos
February 4, 2026
Page 4

                                                Respectfully submitted,

                                                James B. Lieber

cc:    Erika Kitzmiller, Ph.D
        Joshua Jacobs, Ph.D
        Evandro Gigante, Esq.
        Jacqueline Polito, Esq.
        Thomas Huber, Esq.