UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ERIKA M. KITZMILLER,<br><br>          Plaintiff,<br><br>     vs.<br><br>BARNARD COLLEGE AND THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, THEA ABU EL-HAJ, MARIA RIVERA MAULUCCI, ELIZABETH SCOTT-FRANCIS, ANGELA OLINTO, LINDA BELL, SIAN BEILOCK, LAURA ANN ROSENBURY, and LESLIE A. SHARP,<br><br>          Defendants. | Case No. 1:25-cv-08634 (ER) |

**MEMORANDUM OF LAW IN SUPPORT OF BARNARD COLLEGE, THEA RENDA ABU-EL-HAJ, MARIA RIVERA MAULUCCI, ELIZABETH SCOTT-FRANCIS, LINDA A. BELL, SIAN BEILOCK, LAURA ANN ROSENBURY, AND LESLEY A. SHARP'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**LITTLER MENDELSON, P.C.**
Jacqueline Phipps Polito
jpolito@littler.com
80 Linden Oaks, Suite 210
Rochester, NY 14625
Telephone: 585.203.3400

Emily Gaines
egaines@littler.com
900 Third Avenue
New York, NY 10022.3298
Telephone: 212.583.9600

**TABLE OF CONTENTS**

|  |  |  | **PAGE** |
|---|---|---|---|
| I. | | PRELIMINARY STATEMENT .................................................................. 1 | |
| II. | | STATEMENT OF FACTS ....................................................................... 2 | |
| III. | | LEGAL ARGUMENT ............................................................................ 5 | |
| | A. | PLAINTIFF'S CLAIMS ARE UNTIMELY ................................................. 6 | |
| | | 1. Plaintiff's Discrimination Claims Under Title VII, Title IX, NYSHRL and NYCHRL Are Time-Barred ................................ 6 | |
| | B. | THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DISCRIMINATION (COUNTS I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XXVI, XXVII, XXVIII, XXIX) ........................................... 8 | |
| | | 1. Plaintiff Fails to State a Claim Under Title IX and Title VI ............. 11 | |
| | | 2. Plaintiff Fails to State a Claim Under Section 1981 ......................... 12 | |
| | | 3. Plaintiff Fails to State a Claim Under the NYCHRL ........................ 13 | |
| | C. | PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED ................................................................... 14 | |
| | D. | THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF RETALIATION ............................................................ 15 | |
| | | 1. Plaintiff's Failure to Investigate Theory is Not a Cognizable Retaliatory Act ................................................... 17 | |
| | | 2. Plaintiff's Failure to Support Grant Activity Does Not State a Claim ...................................................................... 18 | |
| | | 3. Plaintiff Does Not Plausibly Allege a Causal Connection ................ 18 | |
| | E. | PLAINTIFF'S EQUAL PAY CLAIMS SHOULD BE DISMISSED ...................................................................................... 19 | |
| | F. | PLAINTIFF'S BREACH OF CONTRACT CLAIMS REMAIN DEFICIENT ......................................................................... 21 | |
| IV. | | THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY OF THE INDIVIDUAL BARNARD DEFENDANTS ...................................... 22 | |
| | A. | PLAINTIFF HAS NOT PLED A VIOLATION OF NYSHRL .................... 22 | |
| | B. | PLAINTIFF HAS NOT PLED THE INDIVIDUAL BARNARD DEFENDANTS' PERSONAL INVOLVEMENT IN ANY DISCRIMINATORY OR RETALIATORY CONDUCT ............................. 23 | |
| | | 1. Sian Beilock ................................................................................... 23 | |
| | | 2. Laura Ann Rosenbury ..................................................................... 24 | |
| | | 3. Linda A. Bell .................................................................................. 24 | |

4. Lesley Sharp ............................................................................ 26

5. Elizabeth Scott-Francis ......................................................... 26

6. Thea Abu El-Haj ..................................................................... 26

7. Maria Rivera Maulucci ......................................................... 27

V. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE AND CITY CLAIMS ................... 27

VI. PLAINTIFF SHOULD NOT BE ALLOWED TO FURTHER AMEND HER COMPLAINT AND DISCOVERY SHOULD BE STAYED ......................... 28

A. PLAINTIFF SHOULD NOT BE GRANTED FURTHER LEAVE TO AMEND ............................................................................... 28

B. DISCOVERY SHOULD BE STAYED PENDING DEFENDANTS' MOTION TO DISMISS ..................................................... 28

VII. CONCLUSION ................................................................................. 29

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Abreu Suzuki v. State Univ. of New York Coll. at Old Westbury*,
No. 08-CV-4569 (TCP), 2013 WL 2898135 (E.D.N.Y. June 13, 2013) ..................................20

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998)................................................................................................12

*Andrew v. J.P. Morgan Chase & Co.*,
783 F. App'x 102 (2d Cir. 2019) ........................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................5, 6

*Baradji v. Delta Airlines*,
No. 23-CV-2125(EK)(PK), 2026 WL 215270 (E.D.N.Y. Jan. 27, 2026) ..............................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5

*Boonmalert v. City of N.Y.*,
721 F. App'x 29 (2d Cir. 2018) ..........................................................................................23

*Chin v. Port Auth. of N.Y. & N.J.*,
685 F.3d 135 (2d Cir. 2012)................................................................................................6

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
140 S. Ct. 1009 (2020).......................................................................................................12

*Cota v. Art Brand Studios, LLC*,
No. 21-cv-1518 (LJL), 2022 U.S. Dist. LEXIS 45084 (S.D.N.Y. Mar. 14, 2022)..................29

*Cruz v. Local 32BJ*,
No. 22 Civ. 3068 (PGG)(SDA), 2024 U.S. Dist. LEXIS 180007
(S.D.N.Y. Sept. 30, 2024) ..................................................................................................13

*Curto v. Edmundson*,
392 F.3d 502 (2nd Cir. 2004)..............................................................................................6

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012)..................................................................................14

*Dawkins v. Biondi Educ. Ctr.*,
164 F. Supp. 3d 518 (S.D.N.Y. 2016)..................................................................................11

*Dechberry v. N.Y.C. Fire Dep't*,
124 F. Supp. 3d 131 (E.D.N.Y. Aug. 14, 2015) ...................................................................19

iii

*Doe v. Bloomberg, L.P.*,
    36 N.Y.3d 450 (N.Y. 2021) ..................................................................................22

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014)...................................................................................5

*Duplan v. City of N.Y.*,
    888 F.3d 612 (2d Cir. 2018)..................................................................................16

*Durand v. Excelsior Care Grp. LLC*,
    No. 19-CV-2810 (KAM)(SJB), 2020 U.S. Dist. LEXIS 231591 (S.D.N.Y.
    Dec. 9, 2020)........................................................................................................21

*Eng v. City of N.Y.*,
    No. 15 Civ. 1282 (DAB), 2017 WL 1287569 (S.D.N.Y. Mar. 29, 2017) ...............20

*Fellah v. City Uni. of N.Y.*,
    No. 20-cv-6423(JPC), 2022 WL 4619902 (S.D.N.Y. Sept. 30, 2022) ...................22

*Felton v. Monroe Cmty. Coll.*,
    579 F. Supp. 3d 400 (W.D.N.Y. 2022) ..................................................................22

*Fincher v. Depository Trust & Cleaning Corp.*,
    604 F.3d 712 (2d Cir. 2010)..................................................................................17

*Fukelman v. Delta Air Lines, Inc.*,
    No. 18-CV-2 (PKC)(PK), 2020 U.S. Dist. LEXIS 66410 (E.D.N.Y. Apr. 13, 2020) ..............9

*George v. Pathways to Housing, Inc.*,
    No. 10 Civ. 9505 (ER), 2012 WL 2512964 (S.D.N.Y. June 29, 2012) ...................28

*Goodwine v. City of N.Y.*,
    No. 15-CV-2868 (JMF), 2016 U.S. Dist. LEXIS 67794 (S.D.N.Y. May 23, 2016) ..............15

*Gorzynski v. Jetblue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010)....................................................................................16

*Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*,
    No. 16-CV-6278 (VEC), 2018 WL 4625768 (S.D.N.Y. Sept. 26, 2018) ...............13

*Grant v. The New York Times*,
    No. 16-cv-03175 (PKC), 2017 U.S. Dist. LEXIS 149403 (S.D.N.Y. Sept. 14, 2017) ............20

*Hamilton v. Siemens Healthcare Diagnostics, Inc.*,
    No. 23-CV-7408 (LML), 2025 WL 863572 (S.D.N.Y. Mar. 18, 2025) ...................8

*Hollington v CDM Fed. Programs Corp.*,
    No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887 (S.D.N.Y. Mar. 10, 2023) ...................18

*Joglo Realties, Inc. v. Dep't of Envtl. Conversation of N.Y.*,
No. 16-cv-1666 (ARR) (CLP), 2016 U.S. Dist. LEXIS 195745 (E.D.N.Y. Oct. 17, 2016)....29

*Kalia v. City Coll. of N.Y.*,
No. 22-CV-7508 (VSB), 2025 WL 522544 (S.D.N.Y. Feb. 18, 2025) ....................................9

*Kurtanidze v. Mizuho Bank, Ltd.*,
No. 23 Civ. 8716 (PAE), 2025 U.S. Dist. LEXIS 130608 (S.D.N.Y July 9, 2025) ................19

*Manolov v. Borough of Manhattan Cmty. Coll.*,
952 F. Supp. 2d 522 (S.D.N.Y. 2013)......................................................................................11

*Martin v. S. Container Corp.*,
92 A.D.3d 647 (2d Dept. 2012) ................................................................................................22

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)........................................................................................................5

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...................................................................................................................8

*Mendoza v. City of N.Y.*,
No. 21-CV-2731 (LDH)(JRC), 2023 WL 2734792 (E.D.N.Y. Mar. 31, 2023) ........................6

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013).....................................................................................................13

*Moore v. City of N.Y.*,
No. 15-CV-6600 (GBD) (JLC), 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017)...............................9

*Morrison v. Jones*,
No. 19-CV-7141 (KAM), 2020 WL 3960508 (E.D.N.Y. July 13, 2020), *aff'd*,
No. 20-2733, 2021 WL 5829749 (2d Cir. Dec. 9, 2021).........................................................28

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002).....................................................................................................................6

*Ndongo v. Bank of China, Ltd.*,
No. 22-cv-05896 (RA), 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) ...................................14

*Nezaj v. PS450 Bar & Rest.*,
719 F. Supp. 3d 318 (S.D.N.Y. 2024)........................................................................................8

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016)......................................................................................11

*Nungesser v. Columbia Univ.*,
244 F. Supp. 3d 345 (S.D.N.Y. 2017).........................................................................................5

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)..................................................................................21

*Palmer v. Penfield Cent. Sch. Dist.*,
   918 F. Supp. 2d 192 (W.D.N.Y. 2013) ..................................................................16

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)......................................................................................8

*Pappas v. City of N.Y.*,
   No. 23-cv-06010 (LJL), 2024 U.S. Dist. LEXIS 14171 (S.D.N.Y. Jan. 26, 2024) .................28

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
   653 F. Supp. 3d 80 (S.D.N.Y. 2023)......................................................................18

*Petyan v. New York City Law Dep't*,
   No. 14-CV-1434 (GBD)(JLC), 2015 WL 1855961 (S.D.N.Y. Apr. 23, 2015) .......................17

*Postell v. Fallsburg Library*,
   No. 20-CV-03991 (NSR), 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022) .................................12

*Roches-Bowman v. City of Mount Vernon*,
   No. 21-CV-5572 (KMK), 2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022).................................6

*Rose v. Goldman, Sachs & Co.*,
   163 F. Supp. 2d 238 (S.D.N.Y. 2001)....................................................................20

*Rossbach v. Montefiore Med. Ctr.*,
   No. 19-CV-5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) .................................13

*Scott v. YSB Servs. Inc.*,
   No. 21-CV-7711 (VSB), 2024 WL 1330043 (S.D.N.Y. Mar. 28, 2024)................................13

*Shulka v. Deloitte Consulting LLP*,
   1:19-cv-10578, 2020 U.S. Dist. LEXIS 104555 (S.D.N.Y. June 15, 2020) ...........................10

*Sirohi v. Trustees of Columbia Univ.*,
   No. 97-7912, 1998 U.S. App. LEXIS 22519 (2d Cir. Apr. 16, 1998) ....................................21

*Sletten v. LiquidHub, Inc.*,
   No. 13 Civ. 1146(NRB), 2014 WL 3388866 (S.D.N.Y. July, 11 2014)................................16

*Stinson v. City Univ. of N.Y.*,
   17-cv-3949 (KBF), 2018 U.S. Dist. LEXIS 95300 (S.D.N.Y. June 6, 2018)........................10

*Sutton v. Stony Brook Univ.*,
   No. 21-2055, 2022 WL 4479509 (2d Cir. Sept. 27, 2022) ....................................................11

*Vengalatorre v. Cornell Univ.*,
   36 F.4th 87 (2d Cir. 2022) ......................................................................................11

vi

*Vill. Of Freeport v. Barrella*,
    814 F.3d 594 (2d Cir. 2016)..................................................................................12

*Von Maack v. Wyckoff Heights Med. Ctr.*,
    No. 15 Civ. 3951 ER, 2016 WL 3509338 (S.D.N.Y. June 21, 2016)......................................20

*Walder v. White Plains Bd. of Educ.*,
    738 F. Supp. 2d 483 (S.D.N.Y. 2010)..................................................................................19

*Washburn v. Kingsborough Cmty. Coll.*,
    No. 20-cv-0395(DLI)(MMH), 2023 WL 2682521 (E.D.N.Y. Mar. 29, 2023).......................17

*Yu v. City of N.Y.*,
    792 Fed.Appx. 117 (2d Cir. 2020) ......................................................................................6

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994)..................................................................................11

**Statutes**

28 U.S.C. § 1367(c) ..............................................................................................27

Defendants Barnard College ("Barnard"), Thea Renda Abu El-Haj ("Abu El-Haj"), Maria Rivera Maulucci ("Rivera Maulucci"), Elizabeth Scott-Francis ("Scott-Francis"), Linda A. Bell ("Bell"), Sian Beilock ("Beilock"), Laura Ann Rosenbury ("Rosenbury"), and Lesley A. Sharp ("Sharp")[1] (collectively, "Individual Barnard Defendants") respectfully submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Erica Kitzmiller's ("Plaintiff") Amended Complaint ("Complaint" or "Compl.") in its entirety.

## I.      PRELIMINARY STATEMENT

Despite spanning 107 pages and 859 paragraphs, Plaintiff's Complaint fails to state a plausible claim under any of the 37 causes of action alleged. Her allegations, that she was discriminated against based on almost every feasible protected class, in addition to the protected class of her husband, a non-Barnard employee, rest on speculation, disagreement with academic judgment, and the mistaken premise that non-selection for a tenure-track position must have been discriminatory.

Stripped of Plaintiff's efforts to improperly expand the scope of the complaint, this case centers on two academic hiring decisions made in 2022 in which Barnard selected two qualified female candidates for tenure-track positions instead of Plaintiff. Plaintiff was interviewed, evaluated, and ultimately not chosen. Since Plaintiff cannot allege facts showing unlawful bias, she instead advances an "everything-but-the-kitchen-sink" theory—asserting discrimination based on sex, race, religion, national origin, age, parental status, marital status, caregiver status, and retaliation—all while conceding that the successful candidates shared many of her asserted protected traits.

The Complaint's fundamental defects are legal, not factual. First, as set forth below, most of Plaintiff's claims are untimely. Her federal discrimination claims are based on discrete hiring

---

[1] Lesley A. Sharp is misspelled in the Complaint.

decisions that occurred well outside the applicable limitations period, and her state and city law claims improperly rely on alleged conduct as early as 2019.

Second, even where timely, Plaintiff fails to allege facts giving rise to a plausible inference of discrimination. She relies almost entirely on isolated, non-actionable remarks disconnected from any adverse employment action, and ignores that she shares similar characteristics with the very people she accuses of discriminating against her.

Third, Plaintiff's retaliation claims fail as a matter of basic chronology. The alleged adverse actions occurred before the purported protected activity, defeating causation as a matter of law. Further, her alternative theories, *i.e.*, failure to investigate and failure to support grant activity, do not constitute cognizable retaliation.

Fourth, Plaintiff's equal pay claims are entirely conclusory. She identifies no comparator performing substantially equal work, pleads no overlapping duties, and improperly attempts to compare compensation across distinct institutions.

Fifth, Plaintiff's breach of contract claims fail because Plaintiff alleges no enforceable agreement and cannot transform internal academic policies into binding contractual obligations.

Finally, Plaintiff's claims against the Individual Barnard Defendants independently fail for lack of personal involvement.

Because the Amended Complaint is untimely, implausible, and legally deficient in every respect, it should be dismissed in its entirety, with prejudice.

## II.    STATEMENT OF FACTS

Plaintiff served as Term Assistant Professor at Barnard from 2019 through June 2024. Compl. ¶ 66.[2] Plaintiff alleges, without any documented evidence, that in 2019, her husband, a

---

[2] Weaved throughout her Complaint is the allegation that she holds joint employment with Columbia, which Barnard denies: at all times, Plaintiff was solely a Barnard employee. The legal arguments associated with joint employment are addressed by Columbia University.

Professor at Columbia University, stayed in his position so that Plaintiff would be "fairly [considered] for a tenure-track position" at Barnard. Compl. ¶ 76. In 2019, Plaintiff complained to Provost Bell and fellow Barnard Professor Abu-El-Haj about Barnard's childhood tuition benefits as compared to Columbia's childhood tuition benefits. Compl. ¶¶ 78-79. During the winter of 2020, Plaintiff alleges that Abu El-Haj implied that Plaintiff was anti-Muslim, by noting that some of the posters on Plaintiff's wall were "anti-Muslim." Compl. ¶ 81. Plaintiff goes on to insinuate that this comment, along with Abu El-Haj's alleged support of the Boycott, Divestment, Sanctions (BDS) movement made Abu El-Haj hostile towards Plaintiff. Compl. ¶ 82-83. Plaintiff further alleges that in 2020, Abu El-Haj told Plaintiff to put up pictures of her children in her office and indicated it was important to do so for Plaintiff to consider herself a feminist. Compl. ¶ 85. Plaintiff also alleges that Rivera Maulucci told Plaintiff that Plaintiff was unlikely to be able to teach nighttime classes because her young children dictate the times that she would be available to teach (Compl. ¶¶ 184, 186), but that Plaintiff refuted such suggestion. Compl. ¶¶ 185, 187.

In April and May 2021, Plaintiff requested Barnard lift the twenty student caps for her courses. Compl. ¶ 90. Plaintiff alleged that Barnard's policy of capping courses at twenty students prevented racial minorities from taking these courses, as they sometimes registered late due to financial challenges. Compl. ¶¶ 90, 94. Plaintiff alleges that Abu El-Haj, and Rivera Maulucci reacted negatively to this request. Compl. ¶¶ 92-93. She further alleges that in 2021, she and her junior colleagues in the Educational Studies Program met with Barnard's Ombudsperson to discuss inequitable policies and practices in the Education Studies Program. Compl. ¶ 95.

At some point in 2022, Plaintiff applied for two open tenure-track Assistant Professor positions. Compl. ¶¶ 105, 112. Two other female professors were hired for the two positions. Compl. ¶¶ 113-119. Plaintiff alleges both women were younger than Plaintiff and did not have children "at the time of selection." Compl. ¶¶ 114, 116, 118. Plaintiff was one of six finalists for

3

the positions and was given an on-campus interview. Compl. ¶ 122. During the interview process, Plaintiff alleges that Sharp challenged her about yet-to-be published research (Compl. ¶¶ 130-134), that Abu El-Haj criticized Plaintiff's husband for being a deficient husband and father (Compl. ¶ 136), and that Plaintiff was told by Abu El-Haj that she was "not urban enough" for one of the positions. Compl. ¶¶ 139-140. On December 22, 2022, Plaintiff learned that she was not going to be hired for the second position. Compl. ¶ 156. Plaintiff alleges that Barnard failed to follow its own policies and procedures with respect to the composition of and process of filling the two open tenure-track Assistant Professor positions. Compl. ¶¶ 160-169. Following her non-selection, Plaintiff alleges she was told that Barnard preferred to hire individuals "right out" of their Ph.D. programs (Compl. ¶¶ 176-177), and that Plaintiff should discuss multiple projects "since she was so far removed from [her] Ph.D." Compl. ¶ 178.

Plaintiff emailed Barnard's Former President Beilock and Bell regarding the faculty searches (Compl. ¶ 203) and, on January 12, 2023, formally filed a complaint with Barnard's Office of Nondiscrimination and Title IX alleging discrimination on the bases of race, age, parental status, marital status, and retaliation. Compl. ¶ 208. Plaintiff alleges that the office conducted only an "inquiry," rather than a full investigation, and that the inquiry exceeded the time limits set forth in Barnard's policies. Compl. ¶¶ 214–216, 226. She further alleges that the investigator failed to interview Plaintiff's proposed witness prior to March 2023 (Compl. ¶¶ 217, 219–220) and did not issue a final response until May 12, 2023. Compl. ¶ 227.

Plaintiff further alleges that in March 2023, during a workshop, Abu El-Haj publicly accused her of being anti-Palestinian during a workshop. Compl. ¶ 222. Plaintiff contends that this incident was not meaningfully investigated despite her request and the provision of relevant witness information. Compl. ¶¶ 223–224. Plaintiff further alleges that Barnard denied her

4

policy-required procedural protections, including outside review and an opportunity to respond or appeal. Compl. ¶¶ 229–230.

Following the conclusion of the investigation, Plaintiff alleges that she sent multiple emails to Barnard administrators complaining about the handling of her complaint and requesting assistance, and only received a response from Bell on May 29, 2023. Compl. ¶¶ 233–238. She further alleges that Bell failed to respond to four subsequent emails seeking support for grant applications, conduct Plaintiff characterizes as retaliatory. Compl. ¶¶ 240–245.

## III.    LEGAL ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That does not mean that a plaintiff's allegations must be accepted at face value. Rather, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "hypothetical speculation, and arguments." *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 361 (S.D.N.Y. 2017) (internal citations omitted). Where a complaint offers "label and conclusions" or "naked assertion[s]" without "further factual enhancement", it will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d

145, 151-52 (2d Cir. 2014) (internal citation omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### A. PLAINTIFF'S CLAIMS ARE UNTIMELY

#### 1. Plaintiff's Discrimination Claims Under Title VII, Title IX, NYSHRL and NYCHRL Are Time-Barred

As an initial matter, the majority of Plaintiff's discrimination claims are time barred. To bring a timely claim of discrimination under Title VII, an employee must first file an EEOC charge within 300 days of the alleged discriminatory conduct. *Yu v. City of N.Y.*, 792 Fed.Appx. 117, 118 (2d Cir. 2020); *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572 (KMK), 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022). Here, Plaintiff filed her Charge with the EEOC on April 4, 2024. Compl. ¶ 48. Thus, for Plaintiff's discrimination claims to be timely, she must allege discriminatory conduct that occurred on or after June 9, 2023, 300 days prior to her filing her Charge.

Plaintiff's NYSHRL, NYCHRL, and Title IX claims have a three-year statute of limitations period. *See, e.g.*, *Mendoza v. City of N.Y.,* No. 21-CV-2731 (LDH)(JRC), 2023 WL 2734792, at *5 (E.D.N.Y. Mar. 31, 2023); *Curto v. Edmundson*, 392 F.3d 502, 504 (2nd Cir. 2004) (Title IX claims). Therefore, any allegations prior to October 17, 2022 (the date of Plaintiff's original complaint) are time barred and may not be used to establish liability.

Notably, Plaintiff's discrimination claims under Title VII, which are primarily based on two discrete failure to hire decisions, the latter of which was communicated to Plaintiff on December 22, 2022 (Compl. ¶ 156), occurred well before June 9, 2023, and are thus time barred. (Counts XXVI, XXVII and XXIX).  Plaintiff's non-selection runs from the date the decision was made and/or communicated. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (failure-to-promote claims are "discrete acts" that occur on the day they happen); *Chin v. Port*

*Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012). Accordingly, Plaintiff's discrimination claims based solely on hiring decisions that occurred prior to June 9, 2023 are untimely and should be dismissed.

The same is true of Plaintiff's allegations concerning workplace remarks occurring between 2019 and 2022. These include Plaintiff's allegations that Abu El-Haj accused Plaintiff of being anti-Muslim and anti-Palestinian (Compl. ¶¶ 81, 222); told Plaintiff that she should display photographs of her young children in her office (Compl. ¶ 85); suggested that Plaintiff should consider leaving Barnard (Compl. ¶ 92); stated that Plaintiff could not be a good teacher with more than twenty students in her course (Compl. ¶ 93); criticized Plaintiff's husband (Compl. ¶ 136); and the assertion that Plaintiff was "not urban enough" (Compl. ¶ 139). Each of these allegations concern discrete remarks or conduct that occurred years before the Title VII cutoff and, in many instances, before the three-year limitations period applicable to Plaintiff's state-law and Title IX claims. As such, they cannot form the basis for liability under Title VII, Title IX, the NYSHRL, or the NYCHRL.

Plaintiff's dissatisfaction with Barnard's internal handling of her discrimination complaint is likewise time-barred under Title VII. Plaintiff's filing of the internal complaint on January 12, 2023 (Compl. ¶ 208), the alleged failure to interview a certain witness (Compl. ¶¶ 219-220), the characterization of the process as an "inquiry" rather than a formal investigation (Compl. ¶ 214), and the issuance of the final response on May 12, 2023 (Compl. ¶ 227), all occurred before the Title VII limitations cutoff. Alleged defects in an internal investigation do not constitute new adverse employment actions, and they do not restart the Title VII limitations period.

To the extent Plaintiff seeks to premise her claims on such events, those theories are untimely and must be dismissed.

**B.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DISCRIMINATION (COUNTS I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XXVI, XXVII, XXVIII, XXIX)**

Plaintiff invokes the protections of Title VII, Section 1981, Title IX, and the NYSHRL, all of which are governed by the same substantive standards and each are evaluated under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011) (*McDonnell Douglas* applied to Title IX claims); *Hamilton v. Siemens Healthcare Diagnostics, Inc.,* No. 23-CV-7408 (LML), 2025 WL 863572, at *9 (S.D.N.Y. Mar. 18, 2025) (*McDonnell Douglas* applied to Title VII, NYSHRL, and Section 1981).[3]

To establish a *prima facie* case of discrimination, Plaintiff must demonstrate that (i) she is a member of a protected class; (ii) she was qualified for her position; (iii) she was subject to an adverse employment action; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Hamilton*, 2025 WL 863572, at *9 (citing *Streichert v. Town of Chester, N.Y.*, No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022). Plaintiff fails to allege facts sufficient to meet the fourth element of the *prima facie* case, namely she fails to plead any non-conclusory facts that give rise to a plausible inference that the challenged hiring decisions were motivated by unlawful discrimination, because there are none.

Rather than offer factual allegations that could support a finding of discriminatory animus, Plaintiff merely asserts that because she is a member of a protected class, she must have been discriminated against. Such bald and conclusory allegations are insufficient as a matter of law.

---

[3] The NYSHRL was amended in 2019 to direct courts to construe the statute in a manner more akin to the New York City Human Rights Law. *See Nezaj v. PS450 Bar & Rest.,* 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (quoting N.Y. Exec. Law § 300). "[I]t is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims." *Id.* (citation omitted).

Indeed, Plaintiff cannot merely identify individuals outside of her protected class to plead an inference of discriminatory intent. *See e.g., Kalia v. City Coll. of N.Y.*, No. 22-CV-7508 (VSB), 2025 WL 522544, at *8 (S.D.N.Y. Feb. 18, 2025) (plaintiff's "conclusory allegation that his application 'was much stronger'…insufficient to raise an inference of discrimination."); *Moore v. City of N.Y.*, No. 15-CV-6600 (GBD) (JLC), 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017) (dismissing Title VII claims for race and gender discrimination where, "beyond merely identifying himself as an African American male and noting that a number of Defendants involved in the alleged adverse actions…[were] 'white' and/or 'female,' [plaintiff] proffer[ed] no other facts to support his claim that Defendants [acted] because of his membership in a protected class."). Plaintiff's claims are premised on the faulty assumption that the two individuals selected were less qualified than her because they were six to eight years younger than she and because they did not have children. (Compl. ¶¶ 115-119, 157).

With respect to Plaintiff's associational discrimination claims, Plaintiff fails to allege how her marriage to Dr. Jacobs (a Jewish faculty member of Columbia University) creates an inference of discrimination. The Complaint does not tie any alleged discriminatory conduct to Plaintiff's religious association, nor does it even suggest that faculty members knew of Dr. Jacob's religion. *See* Compl. ¶ 136 (alleging that Dr. Jacobs was called a "deficient husband and father."). Plaintiff also fails to allege that the successful candidates were married to non-Jewish individuals. *See Fukelman v. Delta Air Lines, Inc.,* No. 18-CV-2 (PKC)(PK), 2020 U.S. Dist. LEXIS 66410 at *39-40 (E.D.N.Y. Apr. 13, 2020). Because Plaintiff has failed to plead any facts suggesting that her husband's religion played a role in the promotion process, her claim fails as a matter of law.

To the extent Plaintiff relies on alleged comments made by her coworkers Abu El-Haj and Rivera Maulucci,[4] it is well established that "stray remarks, even if made by a decision-maker, do not constitute sufficient evidence to make out a case of employment discrimination." *Baradji v. Delta Airlines*, No. 23-CV-2125(EK)(PK), 2026 WL 215270, at *2 (E.D.N.Y. Jan. 27, 2026) (internal citation omitted). This is especially true given that the majority of the alleged remarks have nothing to do with Plaintiff's protected characteristics. Compl. ¶¶ 92, 93, 102, 103, 104, 110. Indeed, Plaintiff is grasping at straws to imply that these alleged remarks are somehow tied to a protected category. *See, e.g.*, Compl. ¶ 81 ("Dr. Abu El-Haj visited [Plaintiff's] office, falsely and bizarrely noted that some wall posters were 'anti-Muslim,' and *implied* that Dr. Kitzmiller was anti-Muslim as well." (emphasis added); Compl. ¶ 139-140 ("Based on information and belief, the charge that [Plaintiff] was 'not urban enough' *was a code* for race-specifically Black or African American.") (emphasis added). However, even if these few comments were tied to a protected category (they are not), the Complaint does not plausibly allege that any of the cited remarks were temporally proximate to, causally connected with, or reflective of the reasoning underlying the challenged hiring decisions. *See, e.g., Shulka v. Deloitte Consulting LLP*, 1:19-cv-10578 (AJN) (SDA), 2020 U.S. Dist. LEXIS 104555, at *19-21 (S.D.N.Y. June 15, 2020); *Stinson v. City Univ. of N.Y.*, 17-cv-3949 (KBF), 2018 U.S. Dist. LEXIS 95300, at *27 (S.D.N.Y. June 6, 2018) (citing *Bailey v. Frederick Godman, Inc.*, 2006 U.S. Dist. LEXIS 12453, at *4 (S.D.N.Y. Mar. 23, 2006) (finding that "stray comments…without some demonstrable connection to plaintiff's discharge, are insufficient to give rise to an inference of discrimination."). Absent such linkage, these allegations cannot sustain a discrimination claim.

---

[4] As discussed above, the majority of these comments are time-barred under Title VII, Title IX, NYSHRL, and NYCHRL. *See supra* Section A.

### 1.    Plaintiff Fails to State a Claim Under Title IX and Title VI

"[I]n order to survive a Rule 12(b)(6) motion to dismiss a claim under Title IX, a complaint showing that the plaintiff was within the protected class, was qualified for the position, and was subjected to an adverse action, need only 'alleg[e] facts giving rise to a plausible minimal inference of bias' on the basis of sex." *Vengalatorre v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022) (emphasis added) (internal quotation omitted). "A Title IX plaintiff 'must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of…discriminatory intent." *Sutton v. Stony Brook Univ.*, No. 21-2055, 2022 WL 4479509 at *2 (2d Cir. Sept. 27, 2022) (summary order) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). Naked assertions of discrimination are inadequate. *Yusuf*, 35 F.3d at 713. Under Title VI, a plaintiff must plausibly allege that the defendant discriminated against her on the basis of race, and that the discrimination was a substantial or motivating factor for the defendant's actions. *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 530 (S.D.N.Y. 2016).

Here, Plaintiff's only alleged "adverse" employment action is Barnard's failure to hire Plaintiff for two tenure-track positions. *See* Compl. ¶ 113. Yet, as Plaintiff admits, Barnard hired two *female* candidates to fill both of these positions. Compl. ¶¶ 115, 117. Instead, as the Complaint repeatedly states throughout, Plaintiff alleges that Barnard was biased *against individuals with children as well as their age* – not their sex – that allegedly resulted in Barnard not hiring Plaintiff. *See* Compl. ¶¶ 114-118. *See also Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 527 (S.D.N.Y. 2013) (dismissing plaintiff's Title VI and Title IX claims where complaint failed to allege that defendant referred to plaintiff's race or gender).[5] Critically, Plaintiff's own allegations repeatedly attribute her non-selection to perceived bias based on age and parental or

---

[5] Title IX does not recognize a private right of action based upon an alleged disparate impact of a policy on a protected group. *See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363 (S.D.N.Y. 2016) (collecting cases).

11

caregiver status—not sex.  Despite her attempt to do so, she can't have it both ways. Plaintiff thus pleads herself out of any plausible Title IX claim because she fails to allege any facts suggesting that sex played any role in Barnard's decision-making. Indeed, Plaintiff concedes that both open positions were filled by women. *See* Compl.  ¶¶ 115-119. Lastly, Plaintiff does not allege any facts showing that race was a substantial or motivating factor in the hiring decisions, relying instead on generalized grievances, speculative comparisons, and conclusory assertions of unfairness.

### 2.    Plaintiff Fails to State a Claim Under Section 1981

It is well settled that "Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age." *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir. 1998) (internal citations omitted). The statute specifically covers claims of race discrimination only. *See Vill. Of Freeport v. Barrella,* 814 F.3d 594, 606 (2d Cir. 2016). The Supreme Court clarified that "to prevail [on a Section 1981 claim], a plaintiff must initially plead, and ultimately prove that, but-for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,* 140 S. Ct. 1009, 1019 (2020). The burden of demonstrating that a plaintiff's race was the but-for cause of their injury lies with the plaintiff, and that burden remains constant over the life of the lawsuit, including during the initial pleading stage. *See id.* at 1013-19. Accordingly, Plaintiff must allege that, but-for her race, she would not have experienced the discrimination she alleges.

Here, Plaintiff's own allegations throughout the Complaint eviscerate her Section 1981 claim (Counts V, X). In addition to her claims of race discrimination, Plaintiff alleges throughout the Complaint that she was discriminated against because of her sex, national origin, age, ethnicity, religion, and caregiver status. Accordingly, Plaintiff has failed to allege, as she must, that her race was the "but-for" reason for any alleged adverse employment action. *See Postell v. Fallsburg Library*, No. 20-CV-03991 (NSR), 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022) (finding that

12

plaintiff's allegations that he was discriminated against because of his race, gender, or age precluded the Court from concluding that race was the but-for cause of the alleged unlawful conduct).

### 3.    Plaintiff Fails to State a Claim Under the NYCHRL[6]

Plaintiff's discrimination claims under the NYCHRL also fail. To state a claim for discrimination under the NYCHRL, a plaintiff must show that she was treated less well than other employees based on her protected status. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted). However, a plaintiff must still allege facts that give rise to "a minimal inference of discriminatory motivation." *Cruz v. Local 32BJ*, No. 22 Civ. 3068 (PGG)(SDA), 2024 U.S. Dist. LEXIS 180007, at \*48 (S.D.N.Y. Sept. 30, 2024) (citation omitted). For the reasons set forth above, Plaintiff fails to state a claim because she cannot plead facts showing that any alleged adverse treatment stemming from her failure to be selected for a tenure-track position was motivated by her sex, race, religion, national origin, or other protected trait. Such allegations do not plausibly establish that Barnard acted based upon a protected characteristic, even under the NYCHRL's broader "treated less well" standard. For these reasons, her NYCHRL discrimination claims must be dismissed.

---

[6] Count XXXII of the Complaint raises a claim of vicarious liability under NYCHRL. However, it is well established that the NYCHRL employer liability provision does not create a substantive cause of action. *See, e.g., Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758 (DLC), 2021 WL 930710, at \*9 (S.D.N.Y. Mar. 11, 2021); *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-CV-6278 (VEC), 2018 WL 4625768, at \*2 n.2 (S.D.N.Y. Sept. 26, 2018) ("This doctrine is a theory of liability, to be used in connection with other claims, not a freestanding cause of action."). To maintain a separate cause of action for vicarious liability would be duplicative here where Plaintiff already brings claims for discriminatory conduct against Barnard. *Scott v. YSB Servs. Inc.*, No. 21-CV-7711 (VSB), 2024 WL 1330043, at \*7 (S.D.N.Y. Mar. 28, 2024).

### C.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED

Plaintiff claims that Barnard subjected her to a hostile work environment in violation of the NYSHRL (Count XXXVII) and the NYCHRL (Count XXXVI). Her hostile work environment claims fail as a matter of law.

To plead a hostile work environment claim, a plaintiff must plausibly allege that she was subjected to "inferior terms, conditions or privileges of employment because of [her] membership in one or more of [the] protected categories." *Ndongo v. Bank of China, Ltd.*, No. 22-cv-05896 (RA), 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023) (citing N.Y. Exec. Law § 296(1)(h)). Such a claim will fail "if the offending actions are no more than petty slights or trivial inconveniences." *Id.* (internal citations omitted). Neither statute constitutes a "general civility code." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012). Even if the plaintiff alleges inferior terms and conditions of employment, the plaintiff still must plead sufficient facts to infer "these actions were taken 'because of' her protected characteristics." *Id.*

Here, Plaintiff's allegations do not meet that standard. Plaintiff alleges only the following specific comments:

- In 2020, Abu El-Haj visited Plaintiff's office, and noted that some wall posters were "anti-Muslim." Compl. ¶ 81.

- Also in 2020, Abu El-Haj suggested Plaintiff should put up pictures of her young children in her office. Compl. ¶ 85.

- In April 2021, Abu El-Haj allegedly stated that Plaintiff "would be happier at another institution" and should "consider leaving Barnard". Compl. ¶ 92.

- In April 2021, Rivera Maulucci allegedly told Plaintiff that she could not be a "good teacher" with more than twenty students in a course during discussions about enrollment caps. Compl. ¶ 93.

- In September 2022, Abu El-Haj allegedly remarked, in reference to Beilock's public recognition of Plaintiff, "I don't even know how she would know who you are." Compl. ¶ 102.

14

- In the Fall of 2022, Abu El-Haj allegedly stated sarcastically during a program meeting, "Well, Erika, we aren't as famous as you." Compl.¶ 104.

- In the Fall of 2022, Sharp allegedly challenged Plaintiff during her interview by insisting that it "cannot be true" that a majority-Black high school where Plaintiff conducted research had a 100% college-going rate. Compl.¶¶ 131-132.

- In November 2022, during the tenure-track hiring process, Abu El-Haj allegedly told Plaintiff she was "not urban enough" Compl.¶ 139.

- During a program meeting in April 2024, Rivera Maulucci allegedly stated, "Erika, you have young children. That dictates the times that you are available to teach. We need people to teach at night and you won't want to do that with children," and followed up by suggesting that caregiving responsibilities affect teaching availability. Compl.¶¶ 179-188.

These isolated remarks (most of which are time barred) are nothing more than sporadic comments or perceived slights untethered to any protected characteristic. *See, e.g., Goodwine v. City of N.Y.*, No. 15-CV-2868 (JMF), 2016 U.S. Dist. LEXIS 67794, at *29-30 (S.D.N.Y. May 23, 2016). As a matter of law, they do not support a reasonable inference that Plaintiff was treated "less well" because of a protected characteristic rather than due to professional disagreements or subjective perceptions. Absent allegations showing both (i) conduct exceeding petty slights and (ii) a causal connection to a protected characteristic, Plaintiff's hostile work environment claims fail under the NYSHRL and even under the more liberal standard the NYCHRL.

### D. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF RETALIATION

Plaintiff's retaliation claims under Title VII, Section 1981, Title VI, Title IX, NYSHRL, or the NYCHRL should be dismissed because the Complaint does not plausibly allege a cognizable retaliatory act or a causal connection between any protected activity and alleged adverse act (Counts X, XV, XVI, XVII, XIX, XX, XXI, XXII, XVIII).

To sufficiently plead a retaliation claim under Title VII, Section 1981, or the NYSHRL, the plaintiff must show "that: (1) she participated in a legally protected activity; (2) her employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal

connection existed between the protected activity and the adverse employment action." *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146(NRB), 2014 WL 3388866, at \*4 (S.D.N.Y. July, 11 2014) (internal quotations omitted); *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir. 2018). Similarly, under Title VI, a plaintiff must show (1) participation in a protected activity, that was known to defendant; (2) adverse action by the defendant against the plaintiff; (3) a causal connection between the plaintiff's protected activity and the defendant's adverse action. *See Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013).

The elements of retaliation under the NYCHRL differ only in that the plaintiff need not prove any adverse employment action; instead, [s]he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Sletten,* 2014 WL 3388866, at \*4 (quoting *Mayers v. Emigrant Bancorp, Inc.,* 796 F. Supp. 2d 434, 446 (S.D.N.Y.2011)).

Plaintiff advances three theories of retaliation, none of which satisfy the pleading requirements under federal, state or city law. First, Plaintiff alleges that in 2019 she complained that Barnard faculty received lower benefits than Columbia faculty, including lower childhood tuition benefits. Compl. ¶¶ 78-80, 538-540. Second, she alleges that after making complaints in 2023, Barnard retaliated against her by not hiring her for a tenure-track position, even though that decision had been made in 2022. Compl. ¶¶ 156, 203, 208, 544–545. Third, Plaintiff alleges that her husband was denied a promotion at Columbia University because he complained about discrimination against Plaintiff. Compl. ¶¶ 775-779.[7] In support of her purported retaliation claim,

---

[7] Plaintiff's assertion in Count XXX is nonsensical. She fails to allege that she engaged in any protected activity and does not explain how her husband's complaint or his alleged failure to receive a promotion could give rise to a viable retaliation claim on her behalf.

Plaintiff also asserts that Barnard's alleged failure to support her grant activity and its failure to investigate (or to properly investigate) her internal complaints constitute adverse employment actions. Compl. ¶¶ 214–227, 240–245, 544. As noted below, she is wrong.

### 1. Plaintiff's Failure to Investigate Theory is Not a Cognizable Retaliatory Act

It is undisputed that a "failure to investigate" or "failure to properly investigate" Plaintiff's January 12, 2023 Complaint is not recognized as an "adverse action" to support a retaliation claim. The Second Circuit has specifically held that "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Fincher v. Depository Trust & Cleaning Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-0395(DLI)(MMH), 2023 WL 2682521, at *10 (E.D.N.Y. Mar. 29, 2023) (dismissing the plaintiff's Title IX retaliation claim where contention that defendant "retaliated against them by failing to conduct a proper investigation does not amount to an adverse action for a claim of retaliation."); *Petyan v. New York City Law Dep't*, No. 14-CV-1434 (GBD)(JLC), 2015 WL 1855961, at *11 (S.D.N.Y. Apr. 23, 2015) ("[F]ailure to properly investigate [plaintiff's] claim does not constitute an adverse employment action.") (collecting cases), *report and rec. adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015). Therefore, Plaintiff's allegations that Barnard failed to "properly investigate" her allegations with respect to her application for the two tenure-track positions cannot sufficiently state a claim for retaliation under Title IX.[8]

---

[8] Moreover, Plaintiff's claim that she was "not hired" for the two tenure-track positions based upon her Title IX Complaint is nonsensical given that Plaintiff's Title IX Complaint occurred *after* she was not hired for the two tenure-track positions.

17

### 2.    Plaintiff's Failure to Support Grant Activity Does Not State a Claim

Barnard's alleged failure to support Plaintiff in her grant application fails for two reasons: (1) the failure to respond to four emails is insufficient to plausibly state Barnard engaged in an adverse employment action; and (2) the temporal proximity between any alleged protected activity and the alleged adverse action is too far removed to plausibly allege the causal connection required to state a retaliation claim. *Hollington v CDM Fed. Programs Corp.*, No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887, at *29-30 (S.D.N.Y. Mar. 10, 2023) (While there is "no firm outer limit to the temporal proximity required…most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.") (internal citations omitted).

Under any applicable standard, the alleged failure to respond to a handful of emails about potential grant opportunities, without any change to Plaintiff's job duties, compensation, or status, is not the type of conduct that would deter a reasonable employee from engaging in protected activity. For these independent reasons, Plaintiff's retaliation claims fail as a matter of law and should be dismissed in their entirety.

### 3.    Plaintiff Does Not Plausibly Allege a Causal Connection

Plaintiff's claims of retaliation should be dismissed because her alleged protected activity occurred *after* any alleged adverse employment action. Plaintiff complained to Barnard's Office of Nondiscrimination on January 12, 2023, however, Plaintiff was notified that she was not selected for either tenure track position in 2022. It is therefore impossible for Plaintiff to state a claim for retaliation because the alleged adverse action occurred prior to the alleged protected activity. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.,* 653 F. Supp. 3d 80, 104 (S.D.N.Y. 2023) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

18

The same causation defect applies to Plaintiff's allegations that she engaged in protected activity by advocating on behalf of minority students in 2021 because the allegedly retaliatory hiring decisions were not made until late 2022. That lapse of time, coupled with the absence of specific factual allegations tying the later search outcomes to the earlier advocacy, defeats any plausible inference of retaliatory motive. *See, e.g., Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 154 (E.D.N.Y. Aug. 14, 2015) ("[D]istrict courts within the Second Circuit 'have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.'"); *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23 Civ. 8716 (PAE), 2025 U.S. Dist. LEXIS 130608, at *52 (S.D.N.Y July 9, 2025) (quoting *Lulo v. OTG Mgmt.*, LLC, No. 19 Civ. 3776, 2022 WL 409224, at *5 (S.D.N.Y. Feb. 10, 2022). *See also Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (collecting cases). The temporal gap, which exceeded one year, independently defeats any plausible inference of retaliatory motive.

However, even if Plaintiff could allege a plausible timeline (she cannot), the lack of any evidence of animus based on a protected characteristic forestalls any attempt to establish the necessary causal connection between the protected activity and the adverse employment action. Accordingly, Plaintiff has failed to state a claim for retaliation under the federal or state standard, and her claims must be dismissed.

### E.    PLAINTIFF'S EQUAL PAY CLAIMS SHOULD BE DISMISSED

Plaintiff also fails to adequately plead an equal pay claim under federal, state, or local law (Counts XXXI, XXXIII, XXXIV and XXXV).

To state a valid claim, a plaintiff must allege that (1) the employer pays different wages to employees outside the protected category; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working

19

conditions. *See Grant v. The New York Times*, No. 16-cv-03175 (PKC), 2017 U.S. Dist. LEXIS 149403, at *13 (S.D.N.Y. Sept. 14, 2017) (same standards used for claims brought under Title VII, EPA, and NYSHRL).[9] To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that his employer violated the EPA. *Rose v. Goldman, Sachs & Co.,* 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) (granting motion to dismiss plaintiff's equal pay claims). And "[e]ven at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim." *Id.* (internal citation omitted).

Plaintiff's allegations fall well short of this standard. Nowhere in the Complaint does Plaintiff identify a single comparator who allegedly earned more than Plaintiff while performing substantially equal work. Instead, Plaintiff relies on generalized assertions that her counterparts at Columbia University (notably, not all male), receive higher salaries for substantially similar academic work. Compl. ¶ 265 ("The faculties at Barnard and Columbia have the same responsibilities in terms of teaching, scholarship and service…"). These allegations say nothing about the work actually performed of any alleged comparator, and therefore, cannot sustain an equal pay claim. *See, e.g., Abreu Suzuki v. State Univ. of New York Coll. at Old Westbury*, No. 08-CV-4569 (TCP), 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing Equal Pay Act claims where complaint contained only single conclusory allegation that defendant paid plaintiff "and other female professors less wages than they paid to male employees although she performed equal, or superior, work and had equal or better qualifications and experience"); *Eng v. City of N.Y.*, No. 15 Civ. 1282 (DAB), 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) (dismissing Equal Pay Act claim where plaintiff "provide[d] no factual allegations that would allow the Court to compare her job duties, skills and experience with those of the comparators"); *Von Maack v.*

---

[9] Under Title VII, a Plaintiff must also produce evidence of discriminatory animus to make out a *prima facie* case of intentional sex-based salary discrimination.

*Wyckoff Heights Med. Ctr.*, No. 15 Civ. 3951 ER, 2016 WL 3509338, at \*11 (S.D.N.Y. June 21, 2016) (dismissing Equal Pay Act claim where complaint was "devoid of any allegations going to whether [plaintiff and her comparator] performed a 'substantially similar' job"); *Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810 (KAM)(SJB), 2020 U.S. Dist. LEXIS 231591, \*11-12 (S.D.N.Y. Dec. 9, 2020) (dismissing Equal Pay Act claims where plaintiff merely alleged that female nurse practitioners were paid less than their male counterparts when the complaint provided no details about the actual job components or duties of the class members).

### F.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS REMAIN DEFICIENT.

Plaintiff's attempt to recast her discrimination claims as breach of contract claims (Counts XXIII, XXIV and XXV) fails as a matter of law and should be dismissed. To plead a breach of contract claim under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal citations omitted).

Here, Plaintiff posits two contractual obligations. First, Plaintiff alleges that she and her husband entered into a contract with Columbia and Barnard whereby her husband would stay at Columbia provided that Plaintiff would be "fairly considered" for a tenure track position at Barnard. *See* Compl. at ¶¶ 76–77, 655–660. She further alleges that Barnard's Academic Code and Barnard's Faculty Handbook created a contract regarding Barnard's hiring policies and procedures. Compl. at ¶¶ 662–67, 675–702. Neither theory establishes the existence of an enforceable contract.

First, Plaintiff's conclusory assertion of an agreement relating to her husband's continued employment is legally insufficient. To plead a valid and binding contract, Plaintiff must allege the identity of the contracting parties and the essential terms of the agreement. *See Sirohi v. Trustees of Columbia Univ.*, No. 97-7912, 1998 U.S. App. LEXIS 22519, at \*5 (2d Cir. Apr. 16, 1998)

21

("Sirohi failed to successfully plead a breach of contract claim because he did not allege the essential terms of the parties' purported contract 'in nonconclusory language,' including the specific provisions of the contract upon which liability is predicated."). Plaintiff alleges no facts identifying who allegedly entered into this agreement on Barnard's behalf, when or how the agreement was formed, or what specific, binding obligations it imposed. An alleged promise of "fair consideration" for a tenure track position is vague and indeterminate.

Second, Plaintiff cannot transform Barnard's internal policies and procedures into contractual obligations. It is well settled that "[r]outinely issued employee manuals, handbooks and policy statements should not be lightly converted into binding employment agreements". *Martin v. S. Container Corp.*, 92 A.D.3d 647, 648-49 (2d Dept. 2012); *Andrew v. J.P. Morgan Chase & Co.*, 783 F. App'x 102, 103 (2d Cir. 2019) (quoting *Lobosco v. NY Tel. Co./Nynex*, 96 N.Y.2d 312, 317 (N.Y. 2001)).

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY OF THE INDIVIDUAL BARNARD DEFENDANTS

Plaintiff has failed to allege sufficient facts to sustain her claims against any of the Individual Barnard Defendants (Counts II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XVI, XVII, XIX, XX and XXI).

### A.    PLAINTIFF HAS NOT PLED A VIOLATION OF NYSHRL

Under the NYSHRL, an individual can be held liable on an aider and abettor theory. *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 457 (N.Y. 2021) (clarifying that employees of the corporate employer should not be held liable as "employers"), but liability will attach only if the individual defendant "actually participates in the conduct giving rise to a discrimination claim." *Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 410 (W.D.N.Y. 2022); *see also Fellah v. City Uni. of N.Y.*, No. 20-cv-6423(JPC), 2022 WL 4619902, at *8 (S.D.N.Y. Sept. 30, 2022) (the plaintiff "must allege that the defendant actually participated in the unlawful conduct such that the aider

22

and abettor share the intent or purpose of the principal actor"). Moreover, there must be an underlying NYSHRL violation for an aiding and abetting claim to be available to a plaintiff. *Boonmalert v. City of N.Y.*, 721 F. App'x 29, 34 (2d Cir. 2018).

As described above, Plaintiff has failed to plausibly plead any violation of the NYSHRL. Therefore, her claims against the Individual Barnard Defendants pursuant to the NYSHRL cannot survive because an aiding and abetting claim cannot survive.

### B. PLAINTIFF HAS NOT PLED THE INDIVIDUAL BARNARD DEFENDANTS' PERSONAL INVOLVEMENT IN ANY DISCRIMINATORY OR RETALIATORY CONDUCT

Even if there were an underlying violation (there is not), the Complaint fails to sufficiently allege the personal involvement of any of the Individual Barnard Defendants in any discriminatory or retaliatory conduct. Most of the Individual Barnard Defendants are mentioned solely in connection with their job titles or institutional roles. The Complaint does not allege that these Individual Defendants took any adverse action against Plaintiff or acted with discriminatory or retaliatory animus.

#### 1. Sian Beilock

Plaintiff has not pled sufficient facts establishing Former Barnard President Beilock's personal involvement in any discriminatory or retaliatory conduct. The Complaint alleges that after learning on December 22, 2022 that she was not selected for the tenure-track positions, Plaintiff emailed Beilock regarding the searches, and Beilock directed Plaintiff to meet with Bell about her concerns. Compl. ¶ 203. Plaintiff further alleges that Beilock had oversight authority over Barnard's Office of Nondiscrimination and Title IX during her presidency (Compl. ¶ 204), and that Beilock was informed of Plaintiff's complaints through correspondence copied to her in 2023, to which she did not substantively respond. Compl. ¶¶ 218, 233-236. Plaintiff also alleges that she met with Beilock in March 2023 to express concerns about the handling of her Title IX complaint,

23

and that Beilock stated the matter could not be discussed while the investigation process was ongoing. Compl. ¶ 220. Plaintiff does not allege that Beilock participated in, directed, approved, or knowingly condoned any discriminatory or retaliatory act, nor that she made or influenced the challenged employment decisions. Indeed, Plaintiff acknowledges that Beilock praised Plaintiff in a public forum. Compl. ¶ 97. Accordingly, the Complaint fails to allege the personal involvement required to support individual liability against Beilock.

### 2.    Laura Ann Rosenbury

Plaintiff does not allege that Rosenbury, who assumed her position as President of Barnard College on June 12, 2023, participated in, directed, approved, or knowingly condoned any discriminatory or retaliatory act. Instead, Plaintiff alleges only that she emailed then-incoming President Rosenbury on June 9, 2023, asserting that her discrimination complaints were not being properly investigated, and that she received no response. Compl. ¶ 237. She further alleges that she copied Rosenbury on a second correspondence dated June 23, 2023, again without receiving a response. Compl. ¶ 238. Plaintiff also alleges that on January 5, 2024, she emailed Rosenbury to inform her that she had been selected as a semifinalist for a large grant, to which President Rosenbury did not respond. Compl. ¶ 243. Finally, Plaintiff asserts that in response to an email sent on April 7, 2024, complaining of gender discrimination related to a comment by Rivera Maulucci, Rosenbury responded only that she understood that Scott-Francis was working with Plaintiff on the matter. Compl. ¶¶ 249-250. These minimal email interactions, even if accepted as true, do not establish personal involvement by Rosenbury in any alleged discriminatory or retaliatory conduct.

### 3.    Linda A. Bell

Plaintiff has not pled sufficient facts establishing Linda Bell's personal involvement in any discriminatory or retaliatory conduct.

24

The Complaint alleges that in 2019, Plaintiff complained to Bell about disparities in childhood tuition benefits between Barnard and Columbia faculty, and that Bell stated she was unaware of the difference. Compl. ¶¶ 78–79. Plaintiff further alleges that on April 16, 2021, she contacted Bell about possible tenure-track openings and sent a document outlining her accomplishments (Compl. ¶ 86), and that Bell stated that term faculty had been promoted in the past, said Plaintiff was in a strong position to be promoted, and agreed to assign her a mentor. Compl. ¶¶ 88–89. Plaintiff also alleges that in May 2021 she informed Bell that enrollment caps were preventing racial-minority students from taking courses and majoring or minoring in Education Studies. Compl. ¶¶ 94–95. With respect to the hiring process, Plaintiff alleges that Provost Bell did not meet with her during her on-campus interview, even though Barnard policy stated that a candidate "must also meet with the Provost". Compl. ¶ 168. Plaintiff further alleges that Bell oversaw the Office of Nondiscrimination and Title IX, had oversight over faculty hiring, and possessed authority to intervene. Compl. ¶¶ 205, 209. Plaintiff alleges that on January 31, 2023, she met with Bell and described alleged discrimination, and that Bell characterized Plaintiff's concerns as "really serious" or "serious concerns," but allegedly took no further action. Compl. ¶¶ 209, 213. The Complaint also alleges that on May 29, 2023, Bell acknowledged receipt of Plaintiff's emails and stated that Scott-Francis would be reaching out. Compl. ¶ 235. Finally, Plaintiff alleges that Bell did not respond to emails sent in December 2023 and January 2024 seeking support for proposed grant applications and informing her of Plaintiff's selection as a semifinalist for a Spencer Foundation grant. Compl. ¶¶ 241–242, 244.

Taken together, these allegations falsely portray Bell as a senior administrator who was informed of Plaintiff's concerns and failed to act (which is not the case), but even if accepted as true, do not establish personal involvement by Bell in any alleged discriminatory or retaliatory conduct.

####     4.    Lesley Sharp

The allegations against Sharp are limited to her service as a member of the tenure-track search committees (Compl. ¶¶ 120-121) and her conduct during Plaintiff's interview, including expressing skepticism about Plaintiff's description of her research.  Compl. ¶¶ 130-132. The Complaint does not allege that Sharp exercised final decision-making authority over the hiring decisions, nor does it allege facts establishing discriminatory or retaliatory intent or a causal connection between Sharp's alleged remarks and Plaintiff's non-selection. At most, the allegations describe an isolated comment during Plaintiff's interview that has no relation to any protected characteristic, which is insufficient as a matter of law to establish individual liability. Accordingly, the claims against Sharp should be dismissed.

####     5.    Elizabeth Scott-Francis

The allegations against Scott-Francis concern solely the scope and adequacy of the investigation into Plaintiff's January 12, 2023 complaint. Plaintiff alleges, among other things, that certain witnesses were not interviewed, that Scott-Francis conducted an "inquiry" rather than a formal investigation, and that she declined to provide Plaintiff with a written investigative report. Compl. ¶¶ 214–227, 229–232. These allegations do not assert that Scott-Francis took part in any adverse employment action or employment decision affecting Plaintiff. At most, they reflect disagreement with investigative procedures and outcomes, which is insufficient as a matter of law to establish individual liability for discrimination or retaliation.

####     6.    Thea Abu El-Haj

As to Abu El-Haj, the Complaint fails to plead actionable personal involvement. Plaintiff alleges that Abu El-Haj made a handful of isolated remarks over several years (many of which are time barred), including comments concerning posters in Plaintiff's office (Compl. ¶ 81), suggestions about displaying photographs of Plaintiff's children (Compl. ¶ 85), suggesting that

Plaintiff would be happier at another institution and should consider leaving Barnard ( Compl. ¶ 92), suggesting that President Beilock wouldn't know who Plaintiff was (Compl. ¶ 102), an alleged remark that Plaintiff was "not urban enough" (Compl. ¶ 139), criticism of Plaintiff's husband during the interview process (Compl. ¶ 136), and a statement during a public interaction in March 2023 accusing Plaintiff of being "anti-Palestinian." Compl. ¶¶ 222, 477. Plaintiff characterizes some of these remarks as "coded" comments, but the Complaint does not allege facts plausibly connecting these statements to any adverse employment action.

### 7.    Maria Rivera Maulucci

The allegations concerning Rivera Maulucci are limited to her service as a member of the search committees, and a handful of isolated remarks over several years. Compl. ¶¶ 93, 179–186, 597. Notably, Plaintiff only alleges that Rivera Maulucci made *one* comment prior to Plaintiff's non-selection for the tenure-track positions, and such comment (about whether Plaintiff could be a "good teacher" with more than 20 students in her course) has nothing to do with any of Plaintiff's protected characteristics.

In short, the Complaint fails to allege that any Individual Defendant actually participated in, directed, or was causally connected to a discriminatory or retaliatory act affecting Plaintiff. All of the isolated comments are devoid of any temporal proximity or causal connection to an adverse action and thus fail to establish any basis for personal liability. Accordingly, the claims against the individual Barnard defendants should be dismissed in their entirety.

## V.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE AND CITY CLAIMS

Once the federal claims are dismissed, the Court may decline to exercise supplemental jurisdiction over any remaining state and city law claims, namely, Plaintiff's claims under the NYSHRL and NYCHRL. *See* 28 U.S.C. § 1367(c) (providing that a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it

has original jurisdiction"). "Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims." *Morrison v. Jones*, No. 19-CV-7141 (KAM), 2020 WL 3960508, at *4 (E.D.N.Y. July 13, 2020), *aff'd*, No. 20-2733, 2021 WL 5829749 (2d Cir. Dec. 9, 2021).

## VI.    PLAINTIFF SHOULD NOT BE ALLOWED TO FURTHER AMEND HER COMPLAINT AND DISCOVERY SHOULD BE STAYED

### A.    PLAINTIFF SHOULD NOT BE GRANTED FURTHER LEAVE TO AMEND

The Court has already granted Plaintiff leave to amend her Complaint, which she exercised by adding nearly fifty pages of allegations. Accordingly, Plaintiff should not be permitted to amend her pleading a second time. Although Fed. R. Civ. P. 15(a) instructs that leave to amend a complaint should be freely given when justice so requires, it is equally well established that leave to amend a complaint need not be granted when amendment would be futile. *George v. Pathways to Housing, Inc.*, No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *7 (S.D.N.Y. June 29, 2012) ("An amendment is considered futile where the plaintiff is unable to demonstrate that [s]he would be able to cure the defects in a manner that would survive a motion to dismiss."). Here, the majority of Plaintiff's claims cannot be salvaged by further amendment.

### B.    DISCOVERY SHOULD BE STAYED PENDING DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss is completely dispositive of the claims in the Complaint. Although a pending dispositive motion does not, per se, require a stay of discovery, a court may grant a motion to stay of discovery "[u]pon a showing of 'good cause.'" *Pappas v. City of N.Y.*, No. 23-cv-06010 (LJL), 2024 U.S. Dist. LEXIS 14171, at *2 (S.D.N.Y. Jan. 26, 2024) (quoting Fed. R. Civ. P. 16(b)(4)). A court may consider the following factors: "(1) whether the defendant has made a strong showing that plaintiffs' claim lacks merit; (2) the breadth of the requested discover and the burden of responding to it; and (3) the risk of unfair prejudice to the party

28

opposing the stay." *Joglo Realties, Inc. v. Dep't of Envtl. Conversation of N.Y.*, No. 16-cv-1666 (ARR) (CLP), 2016 U.S. Dist. LEXIS 195745, at *4 (E.D.N.Y. Oct. 17, 2016) (internal quotations omitted).

Defendants' motion to dismiss raises arguments that are "likely to succeed on the merits and, at a minimum, present[] substantial grounds for dismissal." *Cota v. Art Brand Studios, LLC*, No. 21-cv-1518 (LJL), 2022 U.S. Dist. LEXIS 45084, at *2 (S.D.N.Y. Mar. 14, 2022). Should the Court grant Defendants' motion to dismiss, it will resolve the case. Engaging in discovery while Defendants' motion to dismiss is pending will result in the unnecessary and wasteful expenditure of time, money, and resources. Furthermore, "there is no reason to believe that Plaintiff[] would suffer prejudice for the short period of time…necessary…to rule on the motion." *Cota*, 2022 U.S. Dist. LEXIS 45084 at *3. A stay of discovery is appropriate here.

## VII.    CONCLUSION

For all these reasons, the Court should dismiss Plaintiff's Complaint with prejudice and without leave to amend.

29

Dated:  May 15, 2026
     Rochester, New York                 LITTLER MENDELSON, P.C.

By: */s/ Jacqueline Phipps Polito*

Jacqueline Phipps Polito
jpolito@littler.com
80 Linden Oaks, Suite 210
Rochester, NY 14625
Telephone: 585.203.3400
Facsimile: 585.203.3414

Emily Gaines
egaines@littler.com
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

Attorneys For Defendants
BARNARD COLLEGE, THEA RENDA
ABU EL-HAJ, MARIA RIVERA
MAULUCCI, ELIZABETH SCOTT-
FRANCIS, LINDA A. BELL, SIAN
BEILOCK, LAURA ANN ROSENBURY
AND LESLEY A. SHARP

30

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing contains 9,211 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c).  The undersigned relied on the word count of the word-processing program used to prepare this document.

Dated:  May 15, 2026                              */s/ Jacqueline Phipps Polito*
                                                  Jacqueline Phipps Polito