**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                         :

ERIKA KITZMILLER,               :

               :

        Plaintiff,      :     Case No.: 1:25-cv-08634-ER

               :

-against-            :     **ECF CASE**

               :

               :

BARNARD COLLEGE AND THE TRUSTEES :
OF COLUMBIA UNIVERSITY IN THE CITY :
OF NEW YORK,THEA ABU EL-HAJ, MARIA :
RIVERA MAULUCCI, ELIZABETH SCOTT-  :
FRANCIS, ANGELA OLINTO, LINDA BELL, :
SIAN BEILOCK, LAURA ANN ROSENBURY,:
and LESLIE A. SHARP,        :

               :

        Defendants.     :

               :

-------------------------------------------------------- X

<u>**DEFENDANTS THE TRUSTEES OF COLUMBIA UNIVERSITY'S AND ANGELA OLINTO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT................................................................................................................................ 6

I.     PLANTIFF'S CLAIMS ARE TIME-BARRED ................................................................. 6

II.    COLUMBIA WAS NOT PLAINTIFF'S EMPLOYER UNDER ANY THEORY,
       AND ALL CLAIMS AGAINST IT SHOULD BE DISMISSED. ....................................... 7

       A.     Columbia and Barnard Are Not a "Single Employer" ......................................... 8

       B.     Columbia and Barnard Are Not "Joint Employers" .......................................... 14

III.   PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED. .............................. 16

       A.     Plaintiff's Sex-Based Discrimination Claims Should Be Dismissed (Counts I, II, III, IV, XV,
              XXVI). ......................................................................................................... 18

       B.     Plaintiff's Race-Based Claims Should Be Dismissed...................................... 20

       C.     Plaintiff's Claims for Ethnicity Association Discrimination Should Be Dismissed.................. 22

       D.     Plaintiff's Age-Based Claims Should Be Dismissed. ..................................... 23

IV.    PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED. ................................. 23

V.     PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED...... 25

VI.    PLAINTIFF'S UNEQUAL PAY CLAIMS SHOULD BE DISMISSED. ................................ 26

VII.   PLAINTIFF'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.................... 27

VIII.  ALL CLAIMS AGAINST PROVOST OLINTO SHOULD BE DISMISSED............................ 28

       A.     Plaintiff's Claims for Aiding and Abetting Against Olinto Fail as a Matter of Law.................... 28

       B.     Plaintiff's Claims for Retaliation Against Olinto Fail as a Matter of Law. ................................. 29

CONCLUSION............................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001) ............................................................................................... 23

*Adams v. N.Y. State Educ. Dep't*,
No. 08-cv-5996(VM)(AJP), 2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) ............................ 6

*Ahmad v. White Plains City Sch. Dist.*,
No. 18-CV-3416 (KMK), 2019 WL 3202747 (S.D.N.Y. July 16, 2019) ............................ 21

*Aiossa v. Bank of Am., N.A.*,
No. 10-CV-1275 (JS)(ETB), 2012 WL 4344183 (E.D.N.Y. Sep. 21, 2012), *aff'd*, 538
F. App'x 8 (2d Cir. 2013) ................................................................................................... 24

*Allen v. City of N.Y.*,
No. 18-cv-9663 (JGK), 2020 WL 4287361 (S.D.N.Y. July 27, 2020) ............................... 20

*Alvarracin v. Volume Servs., Inc.*,
No. 17-cv-3873 (PKC), 2018 WL 2452766 (S.D.N.Y. May 30, 2018) ................................. 7

*Apolinar v. R.J. 49 Rest., LLC*,
No. 15-cv-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016) .............................. 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 5, 15

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 .......................................................................................................... 28

*Batiste v. City Univ. of N.Y.*,
No. 16-CV-3358 (VEC), 2017 WL 2912525 (S.D.N.Y. July 7, 2017) ............................... 20

*Bautista v. PR Gramercy Square Condo.*,
642 F. Supp. 3d 411 (S.D.N.Y. 2022) (Ramos, J.) .............................................................. 8

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) ..................................................................................... 7, 8, 11

*Cabrera v. N.Y. City*,
436 F. Supp. 2d 635 (S.D.N.Y. 2006) ............................................................................... 19

*Cassard v. Omnicom Media Grp. Holdings, Inc.*,
No. 1:25-CV-02201 (JLR), 2025 WL 3227617 (S.D.N.Y. Nov. 19, 2025) .................. 7, 8, 13

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ................................................................................................ 2

*Chang Yan Chen v. Lilis 200 W. 57th Corp.*,
No. 19-CV-7654 (VEC), 2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020) ................................................ 9

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) .......................................................................................................... 19

*Cobian v. N.Y. City*,
No. 99 Civ. 10533, 2000 WL 1782744 (S.D.N.Y. Dec. 6, 2000), *aff'd*, 2002 WL
4594 (2d Cir. 2001) ...................................................................................................................... 24

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
589 U.S. 327 (2020) ...................................................................................................................... 21

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995) ................................................................................................ 8, 11, 12

*Curto v. Edmundson*,
392 F.3d 502 (2d Cir. 2004), *cert. denied*, 545 U.S. 1133 (2005).............................................. 6

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012) .......................................................................................... 17

*Delaney v. Farley*,
No. 14-cv-4529, 2015 U.S. App. LEXIS 14932 (2d Cir. Aug. 25, 2015).................................... 6

*Dobrosmylov v. DeSales Media Grp., Inc.*,
532 F. Supp. 3d 54 (E.D.N.Y. 2021)............................................................................................ 10

*Doheny v. Int'l Bus. Machines, Corp.*,
714 F. Supp. 3d 342 (S.D.N.Y. 2024) ................................................................................. 9, 14, 15

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000) .......................................................................................................... 15

*Farmer v. Shake Shack Enters., LLC*,
473 F. Supp. 3d 309 (S.D.N.Y. 2020) .......................................................................................... 29

*Felder v. U.S. Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) ................................................................................................... 14, 15

*Fenner v. News Corp.*,
No. 09 Civ. 09832(LGS), 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ...................................... 13

*Foster v. Humane Society of Rochester & Monroe Cnty., Inc.*,
724 F. Supp. 2d 382 (W.D.N.Y. 2010)......................................................................................... 25

*France v. Touro Coll.*,
No. 14-cv-4613 (NGG)(CLP), 2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016).................................... 15

*Gilani v. Hewlett-Packard Co.*,
No. 15-cv-5609 (NSR), 2018 WL 4374002 (S.D.N.Y. Sep. 12, 2018)................................................ 7

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
  No. 13-CV-6836 (RA), 2018 WL 4682013 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 803 F.
  App'x 457 (2d Cir. 2020) ................................................................................................... 27

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) .......................................................................................................... 23

*Han v. Kuni's Corp.*,
  No. 19-CV-6265 (RA), 2020 WL 2614726 (S.D.N.Y. May 22, 2020) ................................ 7, 8, 9, 13

*Herman v. Blockbuster Ent. Grp.*,
  18 F. Supp. 2d 304 (S.D.N.Y. 1998) ................................................................................. 13

*Holt v. KMI-Cont'l, Inc.*,
  95 F.3d 123 (2d Cir. 1996) .......................................................................................... 17, 22

*Huang v. Shanghai City Corp.*,
  459 F. Supp. 3d 580 (S.D.N.Y. 2020) ............................................................................... 10

*Humphries v. City Univ. of N.Y*,
  No. 13 Civ. 2641(PAE), 2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013) .............................. 21

*In Re Rsch. Found. of City Univ. of New York*,
  337 NLRB 965 (2002) ....................................................................................................... 14

*Isbell v. City of N.Y.*,
  316 F. Supp. 3d 571 (S.D.N.Y. 2018) ............................................................................ 6, 26

*Joseph v. Owens & Minor Distrib., Inc.*,
  5 F. Supp. 3d 295 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) ..................... 22

*Kairam v. West Side GI, LLC*,
  793 F. App'x 23 (2d Cir. 2019) ........................................................................................... 7

*Konteye v. N.Y. City Dep't of Educ.*,
  No. 17-cv-2876 (GBD) (RWL) 2019 WL 4418647 (S.D.N.Y. Apr. 10, 2019) ................... 26

*Krasner v. HSH Nordbank AG*,
  680 F. Supp. 2d 502 (S.D.N.Y. 2010) ............................................................................... 25

*Kwan v. Sahara Dreams Co. II Inc.*,
  No. 17-CV-4058(RA), 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018) ................................... 9

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ................................................................................................ 6

*Lavin-McEleney v. Marist Coll.*,
  239 F.3d 476 (2d Cir. 2001) ......................................................................................... 26, 27

*LeeHim v. N.Y.City Dep't of Educ.*,
  No. 17 Civ. 3838 (PAE), 2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017) ............................ 21

*Lehman v. Bergmann Assocs., Inc.*,
    11 F. Supp. 3d 408 (W.D.N.Y. 2014)................................................................................ 7

*Lima v.. Addeco*,
    634 F.Supp.2d 394 (S.D.N.Y. 2009) ................................................................................ 17

*Lopez v. White Plains Hosp.*,
    No. 19-CV-6263 (KMK), 2022 WL 1004188 (S.D.N.Y. Mar. 30, 2022).......................... 26

*Lora v. Centralized Mgmt. Serv., Inc.*,
    No. 18-cv-4253 (NSR), 2020 WL 3173025 (S.D.N.Y. June 12, 2020) .............................. 10

*Martinez v. Staten Island Univ. Hosp.*,
    814 F. Supp. 3d 380 (E.D.N.Y. 2026)............................................................................. 24

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ....................................................................................................... 17

*McGuigan v. CAE Link Corp.*,
    851 F. Supp. 511 (N.D.N.Y. 1994) ................................................................................. 23

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................................................................... 10, 29

*McSweeny v. Cohen*,
    776 F. Supp. 3d 200 (S.D.N.Y. 2025) ............................................................................. 26

*Mesias v. Cravath, Swaine & Moore LLP*,
    106 F. Supp. 3d 431 (S.D.N.Y. 2015) ......................................................................... 20, 24

*Meyer v. State of N.Y. Off. of Mental Health*,
    174 F. Supp. 3d 673 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. N.Y. State Off.
    of Mental Health*, 679 F. App'x 89 (2d Cir. 2017)........................................................ 19

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ........................................................................................... 18

*Moazzaz v. MetLife, Inc.*,
    No. 19-CV-10531, 2021 WL 827648 (S.D.N.Y. Mar. 4, 2021)........................................ 27

*Moschetti v. N.Y. City Dep't of Educ.*,
    No. 15-CV-3161 (KMK), 2018 WL 4759787 (S.D.N.Y. Sept. 28, 2018), *aff'd*,
    778 F. App'x 65 (2d Cir. 2019)...................................................................................... 25

*Murray v. Miner*,
    74 F.3d 402 (2d Cir. 1996) ............................................................................................... 8

*Nezaj v. PS450 Bar & Rest.*,
    719 F. Supp. 3d 318 (S.D.N.Y. 2024) ............................................................................. 24

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000)......................................................................................... 8, 25

*Patterson v. Cnty. of Oneida*,
  375 F.3d 206 (2d Cir. 2004) ........................................................................................... 7

*Pehlivanian v. China Gerui Advanced Materials Grp.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015) (Ramos, J.).......................................................... 2

*Pell v. Trustees of Columbia University in the City of New York*,
  No. 97 Civ. 0193 (SS), 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998) ................................. 3, 16

*Peters v. Mount Sinai Hosp.*,
  No. 08 Civ. 7250 (CM), 2010 WL 1372686 (S.D.N.Y. Mar. 30, 2010) ........................... 17

*Price v. Cushman & Wakefield, Inc.*,
  808 F. Supp. 2d 670 (S.D.N.Y. 2011) ........................................................................... 28

*Pryor v. Jaffe & Asher, LLP*,
  992 F. Supp. 2d 252 (S.D.N.Y. 2014) ........................................................................... 18, 21

*Roberts v. Karimi*,
  251 F.3d 404 (2d Cir. 2001) ........................................................................................... 28

*Rossbach v. Montefiore Med. Ctr.*,
  No. 19 Civ. 5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021)............................. 29

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) .................................................................... 2

*Royal v. Shulkin*,
  No. 17-CV-1252(GTS/CFH), 2018 WL 1229701 (N.D.N.Y. Jan. 5, 2018) ..................... 17

*Sanchez v. L'Oreal USA, Inc.*,
  No. 21-CV-3229, 2022 WL 1556402 (S.D.N.Y. May 17, 2022) ...................................... 29

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
  No. 19-CV-6034 (JPO), 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019)............................. 19

*Schade v. Coty, Inc.*,
  No. 00 CIV 1568 JGK, 2001 WL 709258 (S.D.N.Y. June 25, 2001) ............................. 11, 12

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014) ............................................................................. 2

*Sosa v. Medstaff, Inc.*,
  No. 12 Civ. 8926 (NRB), 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013)........................... 17

*Springs v. City of N.Y.*,
  No. 19-cv-11555 (AKH), 2020 WL 3488893 (S.D.N.Y. June 26, 2020)........................... 26

*Tapia v. TWC Admin. LLC*,
  No. 17-CV-431 (KMK), 2018 WL 5016608 (S.D.N.Y. Oct. 16, 2018)............................. 17

*Tu v. OppenheimerFunds, Inc.*,
No. 10 Civ. 4971(PKC), 2012 WL 516837 (S.D.N.Y. Feb. 16, 2012) ................................................ 24

*TufAmerica, Inc. v. Diamond*,
968 F. Supp. 2d 588 (S.D.N.Y. 2013) ..................................................................................................... 2

*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984) ..................................................................................................................... 12

*Whaley v. City Univ. of N.Y.*,
555 F. Supp. 2d 381 (S.D.N.Y. 2008) ................................................................................................... 25

*Window Headquarters, Inc. v. MAI Basic Four, Inc.*,
Nos. 91 Civ. 1816, 92 Civ. 5283 (MBM), 1993 WL 312899 (S.D.N.Y.
Aug. 12, 1993)........................................................................................................................................ 28

## STATUTES

29 U.S.C. § 206(d)(1) ...................................................................................................................................... 7

29 U.S.C. § 626(d)(1)(B) ................................................................................................................................ 6

42 U.S.C. § 12117(a) ...................................................................................................................................... 6

ADEA ..................................................................................................................................................... 6, 7, 23

Equal Pay Act ............................................................................................................................................. 7, 27

New York's Equal Pay Act ............................................................................................................................. 7

NYC Admin. Code § 8-107(13)..................................................................................................................... 18

## OTHER AUTHORITIES

*About Acting President Claire Shipman*, Off. of the President, Columbia University,
https://president.columbia.edu/content/about-acting-president-shipman ............................................... 3

*Anthropology*, Leslie A. Sharp, https://anthropology.columbia.edu/content/lesley-sharp ......................... 11

*Barnard College*, Middle States Comm'n on Higher Educ.,
https://www.msche.org/institution/0268/ ............................................................................................... 3

*Board of Trustees*, Barnard College, https://barnard.edu/college-leadership/board-trustees........................ 3

*Charities NYS*,
https://charitiesnys.com/RegistrySearch/show_details.jsp?id={04F290F1-D324-
42FF-9D58-D6F82F68106C} ................................................................................................................ 3

*Charities NYS*,
https://charitiesnys.com/RegistrySearch/show_details.jsp?id={AFCB8B76-AF8B-
4A61-BAF5-194D2E579A57}................................................................................................................ 3

viii

*College Leadership*, Barnard College, https://barnard.edu/college-leadership............................................ 3

*Columbia University*, Middle States Comm'n on Higher Educ.,
    https://www.msche.org/institution/0298/ ..................................................................................... 3

*Columbia University*, Off. of the Secretary, Columbia University,
    https://secretary.columbia.edu/directory ...................................................................................... 3

*Columbia University*, Off. of the President, Columbia University,
    https://president.columbia.edu/university-leadership........................................................................ 3

## PRELIMINARY STATEMENT

This action arises from Plaintiff Dr. Erika M. Kitzmiller's ("Plaintiff") disappointment in her failure to secure two tenure-track faculty positions at Barnard College ("Barnard"), where she was employed as a Term Assistant Professor of Education Studies from 2019 through June 2024. Plaintiff claims that her non-selection was due to discrimination and retaliation tied to her gender, caregiving responsibilities, race, religion, and age. Despite the fact that Plaintiff was, at all relevant times, employed exclusively *by* **Barnard**—not Columbia University, a separate and distinct institution—she has named the Trustees of Columbia University in the City of New York ("Columbia") and Columbia Provost Angela Olinto ("Provost Olinto") as defendants, premised on the baseless theory that Columbia and Barnard operated as a "single" or "joint" employer and are, together, liable for Barnard's alleged employment decisions. That theory is the sole basis for Plaintiff's claims against Columbia—and it fails at the pleading stage.

This is Plaintiff's second attempt to plead these claims. After Columbia identified fundamental deficiencies in Plaintiff's original complaint—most notably, the absence of any plausible basis to treat Columbia as her employer—Plaintiff filed an Amended Complaint that now spans nearly 900 paragraphs and asserts thirty-seven causes of action. Despite this tremendous expansion, the Amended Complaint remains a disjointed effort to recast a dispute with Plaintiff's employer, Barnard, into claims against Columbia—an institution that neither employed her nor was involved in the alleged conduct. The Amended Complaint attempts to blur those lines by repeatedly referring to "Barnard and Columbia" collectively, without identifying any actions actually attributable to Columbia.  Any traction gained by such imprecise drafting is fleeting, because where the Amended Complaint does distinguish between the two institutions, the allegations confirm that Barnard alone employed Plaintiff and controlled all aspects of her work, including that: Plaintiff was hired for a teaching position *at Barnard*, and *Barnard faculty and*

*administration* supervised her work, evaluated her performance, and made all decisions regarding the terms and conditions of her employment, including the tenure-track hiring decisions at issue. The Amended Complaint further attributes all statements, remarks, and conduct that Plaintiff characterizes as discriminatory or retaliatory *exclusively to Barnard faculty and personnel*.

Plaintiff fails to plausibly allege that Columbia was her employer or that Columbia or Provost Olinto had any involvement in Plaintiff's employment or the conduct underlying this action. Rather, it relies on conclusory assertions, impermissible group pleading, and allegations that do not implicate Columbia or its Provost.

### STATEMENT OF FACTS

**A.  The Columbia-Barnard Relationship**

Columbia is a private Ivy league research university. (ECF 30, "AC" ¶ 3). Barnard is an independently chartered, separately accredited private liberal arts college for women. (AC ¶ 2) The two institutions are affiliates, as set out in an Affiliation Agreement (AC ¶14, 22) and Columbia's Charters and Statutes (AC ¶ 22)[1], both of which identify the terms of their academic relationship and confirm they are independent legal entities.  Both entities are separately incorporated under

---

[1] Plaintiff references and relies on the "intercorporate agreement" between Barnard and Columbia—i.e., the Affiliation Agreement—and Columbia's Charters and Statutes in her Amended Complaint. (*See* AC ¶¶ 22, 25-26, 35, 247.) Accordingly, Columbia attaches the University Charters and Statutes as **Exhibit A** to the Declaration of Evandro Gigante ("Decl."). Courts may consider documents incorporated by reference or integral to the complaint on a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). If a document "contradict[s] allegations in the complaint, the document, not the allegations, control…." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016) (citing *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013); *Pehlivanian v. China Gerui Advanced Materials Grp.*, 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015) (Ramos, J.) ("When presented with a motion to dismiss . . . the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing [the] suit and that are either in the plaintiff's possession or that the plaintiffs knew of when bringing [the] suit, or matters of which judicial notice may be taken.") (citing *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014)).

New York Law,[2] are governed by separate boards of trustees,[3] as well as separate presidents and other administrators,[4] and maintain separately accredited academic programs.[5]  Columbia and Barnard make independent admissions decisions, are responsible for distinct employee and student populations, and maintain their own endowment, budget, payroll, benefits and employment policies and procedures. (Decl., Ex., A ch. XIII.)

The University Charters and Statutes provide that Barnard's administration "shall be conducted by a president…appointed by the Trustees of [Barnard][.]" (Decl., Ex. A, § 231 .) The Statutes further states that Columbia expressly disclaims any obligation, responsibility, or liability whatsoever, "for the maintenance, support, direction, or administration of [Barnard], including, but not limited to, the conditions of employment and rights and privileges of its faculty, or for the disbursement of the income thereof . . . ." (*Id.* § 237(a).) Notably, Columbia maintains, at most, a consultative role in faculty appointments at Barnard  (*Id.* § 234.).  As Plaintiff herself asserted in her original complaint, "the Columbia counterpart departments were never involved in [the] searches" she complains of in this case. (ECF 1 ¶ 146.)[6]

### B.  Plaintiff's Employment at Barnard

Plaintiff was hired by Barnard in 2019 as a Term Assistant Professor of Education Studies.

---

[2] *See Trustees of Columbia University*, Charities NYS, https://charitiesnys.com/RegistrySearch/show_ details.jsp?id={AFCB8B76-AF8B-4A61-BAF5-194D2E579A57} (last visited May 15, 2026); *Barnard College*, Charities NYS, https://charitiesnys.com/RegistrySearch/show_details.jsp?id={04F290F1-D324-42FF-9D58-D6F82F68106C} (last visited May 15, 2026).

[3] *The Trustees of Columbia University*, Off. of the Secretary, Columbia University, https://secretary.columbia.edu/ directory (last visited May 15, 2026); *Board of Trustees*, Barnard College, https://barnard.edu/college-leadership/ board-trustees (last visited May 15, 2026).

[4] *About Acting President Claire Shipman*, Off. of the President, Columbia University https://president.columbia.edu/ content/about-acting-president-shipman (last visited May 15, 2026); *University Leadership*, *Executive Committee*, Off. of the President, Columbia University, https://president.columbia.edu/university-leadership, (last visited May 15, 2026); *College Leadership*, Barnard College, https://barnard.edu/college-leadership (last visited May 15, 2026).

[5] *Columbia University*, Middle States Comm'n on Higher Educ., https://www.msche.org/institution/0298/ (last visited May 15, 2026); *Barnard College*, Middle States Comm'n on Higher Educ., https://www.msche.org/institution/0268/  (last visited May 15, 2026).

[6] Notably, in amending her complaint, Plaintiff conspicuously omitted this and other factual admissions that had appeared in her original pleading.

3

(AC ¶ 66.) This position was obtained through the efforts of her husband, Dr. Joshua Jacobs, a then-professor in Columbia's Department of Biomedical Engineering. (AC ¶¶ 64, 76.) To retain Dr. Jacobs on the Columbia faculty, Columbia agreed to reimburse Barnard for a portion of Plaintiff's salary at Barnard if she was hired—paying one-half of her salary from 2019 to 2022 and one-third from 2022 to 2024. (AC ¶¶ 67-68.)

While at Barnard, Plaintiff was supervised, evaluated, and managed exclusively by Barnard faculty and administrators. Barnard made all payments to Plaintiff through its own payroll, and it was Barnard—not Columbia—that made all decisions regarding Plaintiff's hiring, compensation, work assignments, class schedules, performance evaluations, and the terms and conditions of her employment. (AC ¶¶ 86–89, 107–108, 120–121.)  Faculty appointments at Barnard are made through Barnard's own processes, including review by a Barnard hiring committee and approval by Barnard's Provost, President, and Board of Trustees. (AC ¶¶ 120–121, 160–168.)

Plaintiff's claims arise primarily from Barnard's decision not to select her for two tenure-track positions that she applied for in 2022—one in Barnard's Education Studies Program and one in Barnard's Education Studies and Urban Studies Programs. (AC ¶¶ 105–112.) Plaintiff alleges that she was considered for both roles but was ultimately not selected. (AC ¶¶ 122–124, 138–139, 156–158.) Barnard, instead, selected two other candidates, Dr. Nora Gross and Dr. Amelia Herbert—both women. (AC ¶¶ 115-118.) Plaintiff contends that her non-selection was because of discriminatory conduct by Barnard faculty involved in the search process, particularly, an alleged statement that she was "not urban enough" (AC ¶ 139), alleged preferences for candidates "right out of their Ph.D." programs (AC ¶¶ 176–178), and alleged comments concerning Plaintiff's status as a mother (AC ¶¶ 184–188). Following her non-selection, Plaintiff filed an internal complaint with Barnard's Office of Nondiscrimination and Title IX on January 12, 2023, alleging

4

discrimination and retaliation. (AC ¶ 208.) Plaintiff contends that Barnard did not adequately investigate her complaint and failed to follow its internal procedures. (AC ¶¶ 214–221, 225–232.) She further alleges that a year later, in late 2023 and early 2024, Barnard faculty and administrators did not support her professional activities like grant applications and research initiatives. (AC ¶¶ 241–244.) Plaintiff's term appointment at Barnard ended in June 2024. (AC ¶¶ 66, 113.)

### C. Procedural History

Prior to commencing this action, Plaintiff filed administrative charges with the Equal Employment Opportunity Commission and the New York State Division of Human Rights ("NYSDHR"), both of which named Columbia and Barnard as respondents. (AC ¶¶ 48-53.) The NYSDHR issued an administrative dismissal, (Decl. Ex., B) and on October 17, 2025, Plaintiff commenced this action. (ECF 1.) Following pre-motion letters submitted by the defendants seeking dismissal, (*see* ECFs 21, 23), the Court held a conference, and granted Plaintiff leave to amend.

Plaintiff filed the Amended Complaint on February 23, 2026, substantially expanding the scope of the original complaint from 404 to 859 paragraphs and from eleven to thirty-seven causes of action. It also added eight individual defendants, including Columbia Provost Olinto (AC ¶¶ 7).

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[M]ere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" are insufficient. *Id*. at 663. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Plausibility . . . depends on a host of considerations: the

5

full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 582 (S.D.N.Y. 2018) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

## ARGUMENT

### I.    PLANTIFF'S CLAIMS ARE TIME-BARRED

Discrimination claims under Title IX, the NYSHRL, and the NYCHRL are all subject to a three-year statute of limitations. *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004), *cert. denied*, 545 U.S. 1133 (2005); *Delaney v. Farley*, No. 14-cv-4529, 2015 U.S. App. LEXIS 14932, at *2 (2d Cir. Aug. 25, 2015).  That period runs from the moment of the discriminatory act.  *Id*.  Discrimination claims brought under the ADEA and Title VII must be filed with the EEOC within 300 days of the alleged discriminatory act to be timely.  *Adams v. N.Y. State Educ. Dep't,* No. 08-cv-5996 (VM)(AJP), 2010 WL 624020, at *32 (S.D.N.Y. Feb. 23, 2010) ("Title VII … [and] the ADEA require claimants to file a charge of discrimination with the EEOC … within 300 days of the alleged discriminatory employment action; claims for acts that occurred more than 300 days before the filing are time-barred in federal court.") (citing 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117(a)).

Plaintiff filed her Charge with the EEOC on April 4, 2024, and with the New York State Division of Human Rights on May 8, 2024. (AC ¶ 48; Decl. Ex. B.) Timely ADEA and Title VII discrimination claims are based on conduct that occurred within 300 days of filing a charge, i.e., on or after June 9, 2023.  The failure to promote decisions that Plaintiff primarily relies upon to plead her claims of discrimination were reported to Plaintiff in November and December 2022 (AC ¶¶ 139, 156) and are thus untimely under Title VII and the ADEA.

Under the three-year statute of limitations that applies to claims brought under the NYSHRL, the NYCHRL and Title IX, the alleged discriminatory acts must have occurred on or after October 17, 2022 (three years prior to the filing of Plaintiff's original complaint). Plaintiff's

allegations concerning workplace remarks (AC ¶¶ 81, 85, 92, 93, 136, 139) primarily occurred between 2019 and 2022 —and thus are time barred.[7]

## II. COLUMBIA WAS NOT PLAINTIFF'S EMPLOYER UNDER ANY THEORY, AND ALL CLAIMS AGAINST IT SHOULD BE DISMISSED.

The central fact foreclosing nearly all of Plaintiff's claims against Columbia is that Columbia was not her employer. Plaintiff asserts discrimination and retaliation claims against Columbia under federal, state, and local statutes, while "[t]he existence of an employer-employee relationship" is an essential element of those claims.[8] *See Cassard v. Omnicom Media Grp. Holdings, Inc.*, No. 1:25-CV-02201 (JLR), 2025 WL 3227617, at *3 (S.D.N.Y. Nov. 19, 2025) (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). Plaintiff attempts to hold Columbia liable on a "single" or "joint" employer theory, but these theories fail because Plaintiff was employed by Barnard — not Columbia — and her pleadings cannot obscure this fundamental fact.

As a general matter, "[t]he law allows a corporation to organize so as to isolate liabilities among separate entities," and therefore "only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Han v. Kuni's Corp.,* No. 19-

---

[7] Defendant Barnard College has fully briefed the statute of limitations argument in Section III.A.1 of its Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint (ECF 56). Columbia and Provost Olinto hereby incorporate by reference the arguments and authorities set forth in that section as though fully stated herein.

[8] *See Gilani v. Hewlett-Packard Co.*, No. 15-cv-5609 (NSR), 2018 WL 4374002, at *4 (S.D.N.Y. Sep. 12, 2018) ("Liability under either Title VII or the ADEA will only lie where there was an employer-employee relationship at the time of the alleged unlawful conduct."); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225-26, 226 n.7 (2d Cir. 2014) (noting that "[t]he NYSHRL mirrors [Title VII's] federal obligations"); *Alvarracin v. Volume Servs., Inc.*, No. 17-cv-3873 (PKC), 2018 WL 2452766, at *2 (S.D.N.Y. May 30, 2018) ("The NYCHRL makes it unlawful for employers to discriminate on the basis of age, race, color, national origin or gender, among other characteristics."); *Kairam v. West Side GI, LLC*, 793 F. App'x 23, 25-26 (2d Cir. 2019) ("The [Equal Pay Act] 'prohibits employers from discriminating among employees on the basis of sex . . . .") (citing 29 U.S.C. § 206(d)(1)); *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 n.6 (W.D.N.Y. 2014) ("New York's Equal Pay Act is analyzed under the same standards applicable to the federal Equal Pay Act."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) ("[Section 1981] outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment[.]").

CV-6265 (RA), 2020 WL 2614726, at *7 (S.D.N.Y. May 22, 2020) (alteration in original) (quoting

*Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). In the context of employment discrimination

laws, there is a strong presumption that one entity is not the employer of another entity's

employees. *Id.* at *7. Accordingly, "[t]o prevail in an employment action against a defendant who

is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an

'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other."

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (quoting *Cook v. Arrowsmith*

*Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). The complaint must allege "concrete

allegations against specific entities . . . in order to create a plausible inference of an employment

relationship among them." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422

(S.D.N.Y. 2022) (Ramos, J.). Here, Plaintiff fails to plead facts to support a plausible inference

that Columbia was Plaintiff's employer under a single or joint-employer theory.[9]

### A. Columbia and Barnard Are Not a "Single Employer"

A four-factor test is used to determine whether two separate entities constitute a "single

employer": (1) interrelation of operations; (2) centralized control of labor relations; (3) common

management; and (4) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.*,

69 F.3d 1235, 1240 (2d Cir. 1995). Although no factor is determinative, "control of labor relations

is the central concern" (*Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)), so courts look at "what

entity made the final decisions regarding employment matters related to the person claiming

discrimination." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014) (cleaned up). Here,

---

[9] Plaintiff repeatedly engages in impermissible group pleading by referring to Barnard and Columbia collectively without alleging facts specific to Columbia. She repeatedly fails to distinguish between the two entities or to attribute *any* conduct to Columbia. Such undifferentiated allegations are insufficient to state a claim, particularly where an employment relationship is a necessary predicate to liability. *See Cassard v. Omnicom Media Grp. Holdings, Inc.*, No. 1:25-CV-02201 (JLR), 2025 WL 3227617, at *4 (S.D.N.Y. Nov. 19, 2025) ("A plaintiff cannot simply baldly assert that separate corporate entities constitute a single integrated organization and then refer to them collectively throughout the complaint."); *Bautista*, 642 F. Supp. 3d at 422.

that entity is Barnard—and the Amended Complaint fails to satisfy any of the remaining factors.

### i.    *Interrelation of Operations.*

Plaintiff does not plausibly allege that Barnard's and Columbia's operations are so intertwined as to constitute a single organization. In evaluating this factor, courts consider whether the entities shared employees, services, records, and equipment; whether they commingled bank accounts, accounts receivable, or credit lines; whether one entity maintained the other's books, issued its paychecks, or prepared and filed its tax returns; and whether one entity was involved directly in the other's daily operational decisions. *See Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 375–76 (S.D.N.Y. 2024) (citing *Han*, 2020 WL 2614726, at *9). Plaintiff's allegations as to these factors are either non-existent or entirely conclusory.

First, the Amended Complaint lacks allegations that Columbia maintains Barnard's books, issues paychecks to Barnard employees, or administers its tax or payroll functions—nor does it plausibly allege that Columbia participates in Barnard's daily operations. Plaintiff also does not allege any commingling of finances, shared bank accounts, credit lines, or financial systems.

As to shared employees, Plaintiff's claims that Barnard's website advertises that "Barnard Professors are Columbia Professors, Too," (AC ¶ 17), and that certain courses may be taught by Columbia or Barnard faculty, (*id.* ¶¶ 26, 29), do not suggest the level of shared employment sufficient to show that the two institutions are a single enterprise. At most, these allegations reflect overlapping academic privileges—not a shared workforce. *See Chang Yan Chen v. Lilis 200 W. 57th Corp.,* No. 19-CV-7654 (VEC), 2020 WL 7774345, at *4 (S.D.N.Y. Dec. 30, 2020) (granting defendant's motion to dismiss when "Plaintiff's allegation concerning a single employee's concurrent employment at [one entity] and [the other entity], standing alone, is patently insufficient to demonstrate. . . a single integrated enterprise"); *Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058(RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018).

Plaintiff's conclusory allegation that she "was a Term Assistant Professor of Education Studies at Barnard and Columbia," (AC ¶ 66), fares no better, as courts routinely disregard such "naked assertion[s]." *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020); *see also Lora v. Centralized Mgmt. Serv., Inc.,* No. 18-cv-4253 (NSR), 2020 WL 3173025, at *5-6 (S.D.N.Y. June 12, 2020). Moreover, Plaintiff contradicts this assertion when she calls herself "a member of Barnard faculty," (AC ¶ 86), and distinguishes Barnard and Columbia as separate institutions with different employment structures and benefits. (*See id*. ¶¶ 78–80.) These admissions show that Plaintiff was employed by ***Barnard***—not Columbia.

Plaintiff also fails to allege that the entities share services, records, or equipment in any legally meaningful sense. Her allegations that Barnard and Columbia share certain facilities, academic courses, and employment benefits, (*see* AC ¶¶ 15-16, 26, 29, 30, 39), again describe an academic affiliation, not integrated operations indicative of single employment. *See Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) (finding that "common benefits plans do not establish a single integrated enterprise[.]"). Nor does Plaintiff's reliance on Barnard's references to Columbia on its website, (AC ¶¶ 15-17, 34, 41), and its use of Columbia's name in its logo, facilities, and academic resources (AC ¶¶ 14, 27, 31-33) advance her claim, because joint advertising and marketing do not make two entities a single integrated enterprise. *See Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (finding the fact that independent businesses "use a single website or a common name for marketing purposes" does not "make each responsible for the labor law violations of the other."); *Apolinar v. R.J. 49 Rest., LLC*, No. 15-cv-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016).

### ii.    *Centralized Control of Labor Relations.*

The Amended Complaint also fails to establish centralized control of labor relations, which turns on whether the entities maintain separate human resources departments, set their own

employment policies, make independent employment decisions, and shift employees between entities. *See Schade v. Coty, Inc.*, No. 00 CIV 1568 JGK, 2001 WL 709258, at *8 (S.D.N.Y. June 25, 2001) (internal citations omitted). The critical inquiry is whether the entity plaintiff seeks to hold liable "made the final decisions regarding employment matters related to the person claiming discrimination." *Id.* (citing *Cook*, 69 F.3d at 1240)*; see also Brown*, 756 F.3d at 227.

Plaintiff does not claim Columbia was involved in the alleged discriminatory promotion decisions, which the Amended Complaint attributes to Barnard personnel. Plaintiff instead alleges that the search committees which evaluated her candidacy and made the final decisions for the two tenure-track positions were composed entirely of Barnard faculty, including Dr. Abu El-Haj, Dr. Rivera Maulucci, and Dr. Sharp. (AC ¶¶ 120–21.) She further alleges that Dr. Abu El-Haj, Chair of Barnard's Education Studies Program, chaired the search committee and communicated the decision not to advance her candidacy. (Id. ¶¶ 107, 139.)

Plaintiff's allegations of discriminatory remarks and conduct focus exclusively on Barnard personnel during the interview process and Barnard's internal deliberations. She alleges that Dr. Abu El-Haj said she was "not urban enough" (AC ¶ 139), that Barnard faculty preferred candidates "right out of their Ph.D." programs (*id*. ¶¶ 176–178), and that Barnard faculty commented on Plaintiff's status as a mother in relation to her availability to teach (*id*. ¶¶ 184–188).

Plaintiff implausibly relies on Dr. Sharp's dual appointments at Barnard and Columbia to argue that Columbia played a role in the conduct at issue (*see* AC ¶¶ 126-127). However, Plaintiff does not allege that Dr. Sharp, who merely held the title of Senior Research Scientist in Columbia's Department of Sociomedical Sciences[10], held any supervisory or decision-making authority at

---

[10] Notably, this is an adjunct, non-salaried role at Columbia. Dr. Sharp's email address (listed on Columbia's website) is a barnard.edu address. At Barnard, Dr. Sharp is a Professor of Anthropology. *Dep't of Anthropology*, Leslie A. Sharp, https://anthropology.columbia.edu/content/lesley-sharp (last visited May 15, 2026).

11

Columbia (with respect to Plaintiff, or at all), or that her participation reflected *Columbia's* involvement rather than Barnard's internal decision-making. Nor does Plaintiff allege that Dr. Sharp had authority over the final promotion decision as a single member of a four-or-five-person committee. (*see* AC ¶¶ 120-121). These omissions are dispositive because the relevant inquiry is which entity "made the final decisions regarding employment matters related to the person claiming discrimination"—and Plaintiff does not (and cannot) plead that it was Columbia. *See Schade*, 2001 WL 709258, at *8 (citing *Cook*, 69 F.3d at 1240).

Plaintiff also pleads that Barnard officials, including the Provost, President, and Board of Trustees, oversaw and approved faculty hiring decisions. (AC ¶ 24.) These allegations concern *Barnard's* internal processes and the conduct of *Barnard* personnel. (*See id.* ¶¶ 160–169.) Similarly, the alleged procedural irregularities in the hiring process, including the composition of the search committees, conflicts of interest among committee members, and departures from stated hiring criteria. (*See id.* ¶¶ 160–169.) are directed at Barnard's internal policies as evident by Plaintiff's reliance on Barnard's Academic Code, Faculty Handbook, and hiring rules. (*Id.*)

Although Plaintiff generally refers to Columbia's role in approving faculty appointments, (*see* AC ¶¶ 21–24), she does not allege that Columbia controlled *her* promotion decisions. Indeed, Plaintiff admitted in her original complaint that "the Columbia counterpart departments were never involved in these searches." (Compl. ¶ 146, ECF 1). That admission—conspicuously deleted from the Amended Complaint, confirms that Columbia played no role in the relevant decisions.[11]

Finally, the Amended Complaint confirms that Barnard and Columbia maintained separate

---

[11]*See, e.g., United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that such pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party. . . A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." (citations omitted)).

12

labor relations. Plaintiff's allegations describe Barnard-specific policies, procedures, and administrative bodies governing hiring and discrimination complaints, including Barnard's Office of Nondiscrimination and Title IX, which investigated her internal complaint. (*See* AC ¶¶ 203–221.) She does not allege that Columbia personnel participated in that process. *Cassard*, 2025 WL 3227617, at *6 (finding plaintiff did not allege centralized control when she did not allege anyone from defendant was involved in alleged discrimination or investigated her complaints). Instead, her allegations reflect that she interacted only with Barnard administrators regarding her complaint. (*See* AC ¶¶ 203–221.)[12]

### iii.     Common Management.

As to the third factor, Plaintiff does not allege that Columbia and Barnard share common management. "As a general matter, the Court must consider evidence of common management in the light of the well established principle that directors and officers holding positions with [two entities] can and do change hats to represent the two corporations separately, despite their common ownership." *Han*, 2020 WL 2614726, at *11 (cleaned up) (quoting *Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 309 (S.D.N.Y. 1998)). In other words, alleging a 'dual role' is insufficient because a plaintiff must demonstrate that the relevant actions were taken in furtherance of the affiliated entity—rather than the employer's—interests. *See id*.

Plaintiff's reliance on dual appointments and cross-institutional committee participation fails because these allegations reflect academic collaboration—not common management or control and there is no allegation that the promotion decision furthered *Columbia's* interests. Allegations of overlapping personnel, without more, are insufficient. *See Fenner v. News Corp.*,

---

[12] Plaintiff likewise alleges that Barnard maintained its own hiring policies and procedures—which she claims were violated—further underscoring that Barnard, not Columbia, controlled the relevant decisions. (AC ¶¶ 160–68.)

13

No. 09 Civ. 09832(LGS), 2013 WL 6244156, at *11 (S.D.N.Y. Dec. 2, 2013) (explaining that executives' simultaneous roles at separate companies, including involvement in hiring at both, does not alone demonstrate a single employer).

### iv.    Common Ownership or Financial Control.

As to the final element, Plaintiff does not allege that Columbia owns Barnard or otherwise exercises financial control over it. The Amended Complaint contains no allegations of shared finances, bank accounts, budgets, or financial decision-making. The University Charters and Statutes, on the other hand, reflects two separate financial structures. (*See* Decl., Ex. A, § 237(a).)

Plaintiff relies on Columbia's partial salary funding to plead common ownership (AC ¶¶ 67-68), however, providing financial support does not transform a funder into an employer or establish financial control. *See In Re Rsch. Found. of City Univ. of New York*, 337 NLRB 965, 971 n.15 (2002) ("Given the thousands of employees working for each employer, we find that the few isolated instances of employees on the Employer's payroll. . . are not representative of the otherwise separate operations of the two employers.").

Indeed, Plaintiff concedes that Barnard—not Columbia—controlled the hiring process, employment policies, and internal complaint procedures governing her employment, (*see* AC ¶¶ 24, 160–168, 203–221), and she does not allege that Columbia set her compensation, determined her employment terms, or exercised any financial control over her position.

### B.  Columbia and Barnard Are Not "Joint Employers".

Plaintiff's joint employer theory is equally unavailing. "A joint employer relationship exists when two or more entities, according to common law principles, share significant control of the same employee." *Doheny*, 714 F. Supp. 3d at 377 (cleaned up) (quoting *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022)). Broadly, courts look at whether the alleged employer "paid the employees' salaries, hired and fired them, and had control over their daily employment

14

activities," with the crux of these factors being "the element of control." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (cleaned up). Though no single factor is dispositive, the "greatest emphasis" is placed on the extent to which the hiring party controls the "'manner and means' by which the worker completes his or her assigned tasks." *Doheny*, 714 F. Supp. 3d at 377 (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000)).

Here, Plaintiff alleges that Columbia contributed a portion of her salary, (AC ¶¶ 67–68); that certain faculty held dual affiliations with Barnard and Columbia, (*id.* ¶¶ 17, 127); and that Columbia plays a general role in approving faculty appointments or participates in university-wide committees (*id.* ¶¶ 21–24, 38). These allegations do not establish that Columbia controlled the "manner and means" by which Plaintiff performed her work. The court's decision in *France v. Touro Coll.*, No. 14-cv-4613 (NGG)(CLP), 2016 WL 1105400, at *8, (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, No. 14-cv-4613 (NGG)(CLP), 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016), is instructive. The court granted a motion to dismiss because "[a]part from a general allegation that [moving party] was her employer, there is not a single factual allegation in the Amended Complaint as to what role [moving party] played in determining plaintiff's terms and conditions of employment that would satisfy the requirements of *Iqbal* and *Twombly* to state a plausible claim that [moving party] was a joint employer." *Id.*

Here, Plaintiff does not allege that Columbia hired her, supervised her, disciplined her, or terminated her employment. Rather, she alleges that she was employed as a "Term Assistant Professor" at Barnard, (AC ¶ 66), that she was "a member of Barnard faculty," (*id.* ¶ 86), and that Barnard faculty and administrators evaluated her performance, oversaw her work, and made the promotion decisions. (*See id.* ¶¶ 107, 120–21, 139.) Her allegations regarding teaching, research, student mentoring, and grant activity likewise reflect that she worked within Barnard's academic

15

programs under the direction of Barnard personnel. (*See id.* ¶¶ 70–75, 86–94.)

Nor does she allege that Columbia exercised control over her daily employment activities. She does not claim that Columbia set her teaching schedule, assigned her courses, supervised her research, or evaluated her performance. All such allegations are directed at Barnard and its faculty. (*See, e.g.,* AC ¶¶ 86-89 (Plaintiff's career development and mentoring), ¶¶ 90–94 (course caps and teaching parameters), ¶¶ 107–09 (Plaintiff's evaluations and candidacy), ¶¶ 183–187 (Plaintiff's availability for teaching evening classes), ¶¶ 241–244 (Plaintiff's grant-related requests).) Likewise, Barnard's Office of Nondiscrimination and Title IX and Barnard administrators handled Plaintiff's internal complaint, with no alleged involvement by Columbia. (*See id*. ¶¶ 203–221.)

Another court in this District has already cast doubt on the idea that Columbia and Barnard are joint employers. In *Pell v. Trustees of Columbia University in the City of New York*, No. 97 Civ. 0193 (SS), 1998 WL 19989, at \*1 n.1 (S.D.N.Y. Jan. 21, 1998), the Court reasoned that plaintiff had "not alleged sufficient facts demonstrating that Columbia and [Barnard] jointly control employment decisions," when "an employee of Barnard is not considered or treated as an employee of Columbia" and "Barnard is solely responsible for the business and operation of Barnard, while Columbia is solely responsible for the business and operation of Columbia." *Id*. Plaintiff's allegations here fare no better.

At most, the Amended Complaint alleges an academic affiliation between Barnard and Columbia. But "the element of control" required for joint employment is not satisfied by such generalized connections. Because Plaintiff does not plausibly allege that Columbia controlled the manner and means of her work—or otherwise shared significant control over her employment—it fails to state a joint employer relationship as a matter of law.

## III.    PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

Assuming, *arguendo*, the Court finds that Plaintiff plausibly pled that Columbia and

16

Barnard are joint or single employers, the substantive allegations in the Amended Complaint still fail to state a claim because they do not implicate any actions by Columbia.[13]

Discrimination claims brought under Title VII are analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. Under this framework, a plaintiff must first state a *prima facie* case by pleading that: (i) she was a member of a protected class; (ii) she was qualified for the position she held; (iii) she suffered an adverse employment action; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination. In the failure-to-promote context, the fourth element requires a showing that the employer promoted another employee of similar qualifications outside plaintiff's protected class. *See Davis-Bell v. Columbia Univ.,* 851 F. Supp. 2d 650, 679 (S.D.N.Y. 2012).

Critically, an inference of discrimination cannot be drawn from a plaintiff's mere identification as a member of a protected class, without factual allegations evidencing adverse treatment due to that characteristic. *See Royal v. Shulkin*, No. 17-CV-1252(GTS/CFH), 2018 WL 1229701, at *2 (N.D.N.Y. Jan. 5, 2018), *adopted*, 17-CV-1252(GTS/CFH), 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); *see also Peters v. Mount Sinai Hosp.*, No. 08 Civ. 7250 (CM), 2010 WL 1372686, at *8 (S.D.N.Y. Mar. 30, 2010). Nor does a plaintiff's subjective view that she was the more qualified candidate suffice to raise an inference of discrimination. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996); *Tapia v. TWC Admin. LLC*, No. 17-CV-431 (KMK), 2018 WL 5016608, at *12 (S.D.N.Y. Oct. 16, 2018) (collecting cases).

---

[13] *See Sosa v. Medstaff, Inc.*, No. 12 Civ. 8926 (NRB), 2013 WL 6569913, at *2–4 (S.D.N.Y. Dec. 13, 2013) ( "In evaluating alleged discriminatory activity in the joint-employment context, the appropriate focus is on the actual decisionmaker—the conduct of one employer cannot necessarily be imputed to the other" because "even where two companies are deemed a joint employer, it is not necessarily the case that both are liable for discriminatory conduct." (cleaned up) (*citing Lima v.. Addeco*, 634 F.Supp.2d 394, 400 (S.D.N.Y. 2009)).

17

Plaintiff also asserts parallel discrimination claims under the City and State Human Rights Laws. While these statutes are construed more liberally than Title VII, a plaintiff still must allege that, compared to similarly situated employees, "she [was] treated 'less well' — because of a discriminatory intent." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013)).

Plaintiff's discrimination claims fail under each standard. First, she does not allege that Columbia—as opposed to Barnard—engaged in discriminatory conduct. All allegations concerning the promotion process, including the composition of search committees, the evaluation of candidates, and the ultimate selection decisions, are directed at Barnard faculty and administrators acting in accordance with Barnard's processes. (S*ee, e.g.,* AC ¶¶ 107, 120–21, 139.) Plaintiff does not allege that any Columbia employee made discriminatory remarks, participated in the decision-making process[14], or exercised control over the decisions. Second, even if any alleged conduct could be attributed to Columbia (which it cannot), the Amended Complaint fails to plead facts giving rise to a plausible inference of discrimination, as set forth below.[15]

## A. Plaintiff's Sex-Based Discrimination Claims Should Be Dismissed (Counts I, II, III, IV, XV, XXVI).

### i.  *Plaintiff's Sex-Based Claims Fail on the Merits.*

Plaintiff's sex discrimination claims under Title IX (Count I), Title VII (Count XXVI), the NYSHRL (Count III), and the NYCHRL (Count II) fail because the Amended Complaint does not

---

[14] To the extent Plaintiff relies on the allegation that Dr. Sharp—who served on the search committee—holds appointments at both Barnard and Columbia, *see* AC ¶¶ 126–127, that allegation does not plausibly show that Columbia participated in the promotion decisions at issue. *See* Section II(A)(ii), *supra*.

[15] Plaintiff asserts a claim for "Failure to Prevent Discrimination" under NYC Admin. Code § 8-107(13) (Count XXXII). This claim is derivative, and first requires a Plaintiff to establish an underlying act of discrimination. Because Plaintiff's substantive discrimination claims against Columbia fail for the reasons set forth herein, her failure-to-prevent claim necessarily fails as well. Moreover, even if this claim were viable on a standalone basis, Columbia had no employment relationship with Plaintiff and therefore owed her no duty to prevent discrimination. Accordingly, Count XXXII should be dismissed as to Columbia.

contain any allegations of sex discrimination apart from Plaintiff's status *as a parent*. (*See* AC ¶¶ 287, 289–294, 334–336, 709–716.). Instead, Plaintiff ties *all* her "sex-based" allegations to her— or other candidates and faculty members'—parental status. (*See id.* ¶¶ 179, 184–188 (alleged comments about Plaintiff's availability based on having young children), ¶¶ 191–194 (allegations regarding Dr. Throop in terms of her status as a parent), ¶¶ 195–200 (same as to Dr. Miranda), ¶¶ 201–202 (same as to Dr. Ortiz).) However, the Amended Complaint is devoid of any allegations that male parents were treated more favorably.

Plaintiff's sex discrimination claims also fail because the candidates selected for both tenure-track positions were women. Where the individuals selected are members of the same protected class as the plaintiff, courts recognize a strong inference *against* discrimination. *See Meyer v. State of N.Y. Off. of Mental Health*, 174 F. Supp. 3d 673, 687-88 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. N.Y. State Off. of Mental Health*, 679 F. App'x 89 (2d Cir. 2017); *Cabrera v. N.Y. City*, 436 F. Supp. 2d 635, 645 (S.D.N.Y. 2006) (finding no inference of discrimination where those promoted were in plaintiff's protected class).

Plaintiff's allegations, made on information and belief, that the successful candidates are not mothers also cannot save her claim. (*See* AC ¶¶ 116, 118, 424, 426, 451, 453, 743, 745.) These allegations (again duplicative of her caregiver claims (Count IV)) are entirely conclusory. Plaintiff does not allege that she had any reason to know the parental status of the selected candidates at the time of the promotion decisions or otherwise possessed non-speculative information about their family status. *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."); *see Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (plaintiff failed to state a

claim where she offered no allegations beyond her own speculation that defendant's actions were connected to her protected characteristics).

Plaintiff's reliance on alleged comments about caregiving does not cure this deficiency. The Amended Complaint identifies a few statements allegedly made by Barnard faculty concerning motherhood and teaching availability, including comments about whether faculty with young children could teach evening classes. (*See* AC ¶¶ 184–188.) But Plaintiff does not plausibly allege that these comments were connected to Plaintiff's promotion decisions, referenced the parental status of any candidate, or were made by anyone at Columbia. In fact, as alleged, these statements appear connected with earlier discussions about course assignments and class caps, (*see id.* ¶¶ 90, 94), which predated the tenure-track promotion decisions in late 2022 by over a year. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015).

Likewise, any reliance on alleged statements concerning other faculty members' experiences (*see* AC ¶¶ 197–200) is insufficient to state a claim for discrimination against Plaintiff. *See Allen v. City of N.Y.*, No. 18-cv-9663 (JGK), 2020 WL 4287361, at *4 (S.D.N.Y. July 27, 2020) (dismissing plaintiff's claim where the complaint "failed to point to more than a single remark, which the plaintiff herself did not directly hear . . . ."); *Batiste v. City Univ. of N.Y.*, No. 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) (finding no hostile work environment where the remark was not heard by the plaintiff).

## B. Plaintiff's Race-Based Claims Should Be Dismissed.

Plaintiff's race discrimination claims under Section 1981 (Count V), Title VII (Count XXVII), the NYSHRL (Count VII), and the NYCHRL (Count VI) likewise fail. The Amended Complaint does not allege that any Columbia employee engaged in race-based conduct toward Plaintiff. The sole basis for Plaintiff's race-based claim is a comment allegedly made by Barnard Professor Abu El-Haj that Plaintiff was "not urban enough" for the Urban Studies tenure-track

20

position. (AC ¶¶ 139-140, 196.) Professor Abu El-Haj is not a Columbia employee, and in any event, the alleged comment—even if true—does not support an inference of race discrimination. *See LeeHim v. N.Y.City Dep't of Educ.*, No. 17 Civ. 3838 (PAE), 2017 WL 5634128, at *7 (S.D.N.Y. Nov. 21, 2017) (dismissing race discrimination claim where plaintiff alleged that terms like "aggressive" were racially coded, but the complaint contained no statements referring directly to race); *Humphries v. City Univ. of N.Y*, No. 13 Civ. 2641(PAE), 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013) (finding plaintiff's  subjective interpretation of facially non-discriminatory terms does not reveal discriminatory animus).

Plaintiff's Section 1981 claims require her to plead facts meeting the demanding standard that race was the "but-for cause" of her injury. *See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). Under Title VII, Plaintiff must allege that race played a role in the challenged decision. Again, Plaintiff's allegations satisfy neither standard.[16]

Plaintiff pleads no facts connecting the alleged discriminatory statement by a Barnard faculty member to any discriminatory intent or to the ultimate promotion decisions. A single, ambiguous comment untethered to any factual context suggesting discriminatory animus cannot sustain a race discrimination claim. *See Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416 (KMK), 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019) (explaining that "stray remarks" alone are insufficient to raise an inference of discrimination).

Plaintiff's allegations also fail because she does not plausibly allege that she was treated less favorably than similarly situated non-white candidates. Plaintiff alleges that one of the successful candidates, Dr. Herbert, is African American (*see* AC ¶ 119), however, she does not

---

[16] Even under NYSHRL's and NYCHRL's more liberal standards, Plaintiff still must plead facts permitting a plausible inference that she was treated "less well" because of race. *See Pryor*, 992 F. Supp. 2d at 257 (citation omitted). She cannot show that she was treated less well, let alone because of her race.

allege the race of the other successful candidate, Dr. Gross. For this reason, Plaintiff cannot plausibly allege that both challenged decisions favored candidates outside her protected class. Plaintiff also does not plead that either successful candidate was similarly situated to her or objectively less qualified. Instead, she relies on her subjective view that she was the superior candidate, which is insufficient. *See Holt*, 95 F.3d at 130 (a plaintiff cannot show pretext simply "by asserting her personal belief that she was the most qualified person for the various positions").

### C.  Plaintiff's Claims for Ethnicity Association Discrimination Should Be Dismissed.

Plaintiff asserts claims of associational discrimination based on her marriage to Dr. Jacobs, who is Jewish, under Section 1981 (Count X), Title VII (Count XXIX), the NYSHRL (Count XII), and the NYCHRL (Count XI). These claims fail because the Amended Complaint does not tie Columbia to any alleged discriminatory conduct related to Plaintiff's religious association. Plaintiff does not allege that any Columbia employee commented on her husband's religion, participated in the promotion decisions, or were aware of Dr. Jacobs's religion.[17] The absence of any Columbia-specific allegations is fatal to her claims. *See Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309-10 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).

In any event, Plaintiff also fails to allege that any decision-maker considered her husband's religion in the promotion process, nor treated her differently because of it. She does not allege that the successful candidates were married to non-Jewish individuals. Instead, Plaintiff asks the Court to infer that she was discriminated against only because she is married to a Jewish individual. That is insufficient as a matter of law.

---

[17] Plaintiff alleges that a Barnard faculty member referred to Dr. Jacobs as a "deficient husband and father," *see* AC ¶ 136, and that she was criticized for displaying allegedly "anti-Muslim" materials in her office, *see id.* ¶¶ 81, 473, 491, 511, 766, and that Dr. Abu El-Haj once referred to her as "anti-Palestinian," *see id.* ¶¶ 222, 477, 494, 514, 691, 769. These allegations, even if accepted as true, do not reference Dr. Jacobs's religion, do not reflect animus toward Jewish individuals, and are not connected to the promotion decisions.

**D. Plaintiff's Age-Based Claims Should Be Dismissed.**

Plaintiff's age discrimination claims under the ADEA (Count XXVIII), the NYSHRL (Count IX), and the NYCHRL (Count VIII), fail for the same reasons her other discrimination claims. The Amended Complaint does not plausibly allege any discriminatory conduct[18] by Columbia whatsoever.

Plaintiff's age discrimination theory is based on the search committees' alleged preference for candidates "right out of their Ph.D." (AC ¶¶ 176–178, 432–434, 459–461, 751–753.) A preference for early-career academics does not constitute age discrimination. Because a Ph.D. can be obtained at any age, a preference for early career candidates reflects a legitimate interest in emerging scholarship and long-term institutional development, not age-based animus. *See McGuigan v. CAE Link Corp.*, 851 F. Supp. 511, 514 (N.D.N.Y. 1994) ("The bare fact that an employer encourages employment of recent college and technical school graduates does not constitute unlawful age discrimination."). Plaintiff asserts that one of the successful candidates, Dr. Gross, completed her Ph. D. in 2020. (AC ¶ 158.) That allegation alone does not establish that Dr. Gross is younger than Plaintiff, or that age played any role her selection.

## IV.    PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED.

Plaintiff asserts retaliation claims under Title VII, Title IX, Section 1981, the NYSHRL, and the NYCHRL. These claims are based on two sets of alleged protected activity: (i) Plaintiff's January 12, 2023 complaint filed with Barnard's Office of Nondiscrimination and Title IX, (see AC Counts XV, XVI, XVII, XVIII), and (ii) her April and May 2021 complaints to Barnard faculty regarding class enrollment caps, (*see* AC ¶¶ 90, 94, 598 ) (forming the basis of Counts XIX, XX,

---

[18] ADEA claims are analyzed under the same McDonnell Douglas framework but require proof that age was the "but-for cause" of the adverse action—not merely a motivating factor. *See Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 176 (2009); *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466 (2d Cir. 2001)("[A]ge discrimination suits bought under the State HRL and City HRL are subject to the same analysis as claims brought under the ADEA.").

XXI, XXII). Neither theory supports a plausible claim.[19]

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in a legally protected activity; (2) her employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action. *See Aiossa v. Bank of Am., N.A.*, No. 10-CV-1275 (JS)(ETB), 2012 WL 4344183, at \*3 (E.D.N.Y. Sep. 21, 2012), *aff'd*, 538 F. App'x 8 (2d Cir. 2013); *see also Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 334-35 (S.D.N.Y. 2024) (analyzing NYSHRL claim). Under the NYCHRL, a plaintiff need only allege that the employer engaged in conduct that was reasonably likely to deter a person from engaging in protected activity. *See Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 412 (E.D.N.Y. 2026).

Plaintiff's claims fail under either framework because she cannot establish causation. The promotion decisions—the only adverse employment actions alleged—occurred in November and December 2022. (*See id.* ¶¶ 139, 156.) Those decisions predate Plaintiff's January 2023 internal complaint and cannot, as a matter of law—or common sense—have been caused by it. *See Tu v. OppenheimerFunds, Inc.*, No. 10 Civ. 4971(PKC), 2012 WL 516837, at \*11 (S.D.N.Y. Feb. 16, 2012).  Plaintiff also cannot rely on her 2021 complaints, which occurred approximately one and a half years before the promotion decisions—far too remote in time to support an inference of causation. *See Mesias*, 106 F. Supp. 3d at 438; *Cobian v. N.Y. City*, No. 99 Civ. 10533, 2000 WL 1782744, at \*18 (S.D.N.Y. Dec. 6, 2000), *aff'd*, 2002 WL 4594 (2d Cir. 2001).

Plaintiff's remaining allegations cannot resuscitate her claims. Plaintiff alleges that

---

[19] Plaintiff also asserts a claim labeled "Retaliation Under All Listed Discrimination Statutes" (Count XXX), which appears to be based on the allegation that her husband, Dr. Jacobs, was denied a promotion because Columbia was aware of Plaintiff's complaints. (*See* AC ¶¶ 774–779.) This claim does not assert a basis for relief for Plaintiff. Plaintiff does not—and cannot—assert a retaliation claim based on alleged adverse action taken against a third party, particularly where she fails to plead any facts showing that the decision regarding Dr. Jacobs was causally connected to her protected activity or that any such action would constitute a materially adverse action as to her. In any event, the claim is entirely conclusory and fails for the same reasons as Plaintiff's other retaliation claims.

*Barnard* (not Columbia) administrators did not respond to or support her grant proposals in late 2023 and early 2024. (*See* AC ¶¶ 241–244.) However, Courts consistently hold that the denial of administrative or institutional support, absent material harm, does not constitute an adverse employment action. *See Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 402 (S.D.N.Y. 2008); *Moschetti v. N.Y. City Dep't of Educ.*, No. 15-CV-3161 (KMK), 2018 WL 4759787, at *14 n.22 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 778 F. App'x 65 (2d Cir. 2019).

Similarly, Plaintiff's dissatisfaction with the way her complaints were investigated by *Barnard* cannot form the basis of a claim of retaliation against *Columbia*. The Amended Complaint makes clear that her complaint was submitted to and handled by Barnard's Office of Nondiscrimination and Title IX. (*See* AC ¶¶ 203–221.) There is no allegation that Columbia conducted, influenced, or had any responsibility for that investigation.

Plaintiff's 2021 class cap complaints also fail to qualify as protected activity. To constitute protected activity, a complaint must concern unlawful discrimination—not general workplace policies. *See Foster v. Humane Society of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 394–95 (W.D.N.Y. 2010). Although Plaintiff's class cap complaints referenced a potential impact on racial minority students, they were directed to Barnard faculty and fundamentally concerned course enrollment caps, departmental operations, and resource allocation—not unlawful discrimination. (*See* AC ¶¶ 90–94.) *See Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521–23 (S.D.N.Y. 2010) (dismissing retaliation claim where alleged protected activity could not reasonably be construed as a complaint of discrimination based on a protected characteristic).

## V.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED.

To state a claim under the NYCHRL (Count XXXVI) and NYSHRL (Count XXXVII) a Plaintiff must show that she was treated "less well" than other employees because of a protected

characteristic. *McSweeny v. Cohen,* 776 F. Supp. 3d 200, 246 (S.D.N.Y. 2025). The alleged conduct must exceed what a reasonable person would consider as "petty slights or trivial inconsistencies." *Springs v. City of N.Y.,* No. 19-cv-11555 (AKH), 2020 WL 3488893, at *7 (S.D.N.Y. June 26, 2020).  Moreover, isolated or trivial acts are insufficient, as hostile work environment claims "are not intended to promote or enforce civility, gentility, or even decency." *Lopez v. White Plains Hosp.*, No. 19-CV-6263 (KMK), 2022 WL 1004188, at *16 (S.D.N.Y. Mar. 30, 2022) (cleaned up) (citing *Isbell*, 316 F. Supp. 3d at 591), aff'd, 2022 WL 19835765 (2d Cir. May 16, 2022).

The conduct alleged does not come close to plausibly stating a hostile work environment claim under NYCHRL or NYSHRL. Plaintiff's allegations amount to disagreements over Barnard's promotion decisions—including her non-selection for tenure-track positions and related search committee determinations (AC ¶¶ 120–139, 156–158), criticism of Barnard's academic criteria (id. ¶¶ 176–178), and dissatisfaction with institutional support and internal processes, including Barnard's Title IX investigation and alleged lack of support for her grants (id. ¶¶ 203–221, 241–244). None of these allegations relate to her gender, race, age, religion, or any other protected characteristic. Nor did they involve *any* actions by Columbia that could plausibly constitute 'discriminatory intimidation, ridicule, and insult.' *See Konteye v. N.Y. City Dep't of Educ.*, No. 17-cv-2876 (GBD) (RWL) 2019 WL 4418647, at *9 (S.D.N.Y. Apr. 10, 2019).

## VI.    PLAINTIFF'S UNEQUAL PAY CLAIMS SHOULD BE DISMISSED.

Plaintiff asserts claims for unequal pay under the federal Equal Pay Act and the New York Equal Pay Act (Count XXXI), the NYCHRL (Count XXXIII), the NYSHRL (Count XXXIV), and Title VII (Count XXXV). These claims require Plaintiff to plausibly allege that she was paid less than a comparator outside her protected class for substantially similar work performed under similar working conditions. *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001).

26

As an initial matter, Plaintiff's claims against Columbia fail because, as discussed *supra* I.A.iv, Plaintiff was employed by Barnard, and her compensation was paid by Barnard. (*See* AC ¶¶ 66–68.) Since Columbia was not her employer, Columbia's compensation decisions with respect to its own employees are irrelevant. Even if such a comparison were permissible, Plaintiff does not plausibly allege that she performed substantially equal work to any Columbia faculty member or identify a valid comparator. The Equal Pay Act requires a showing that the comparator performed work requiring equal skill, effort, and responsibility under similar working conditions. *See Lavin-McEleney*, 239 F.3d at 480. Plaintiff relies on generalized allegations that Columbia faculty are paid more than Barnard faculty (*see* AC ¶¶ 259–263), but she pleads nothing about job duties, responsibilities, or working conditions that would support a finding of inequality. Such institution-wide comparisons do not satisfy the comparator requirement as a matter of law.[20]

## VII.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

Plaintiff asserts breach of contract claims against Columbia in Counts XXIII, XXIV, and XXV. To state a claim for breach of contract under New York law, a plaintiff must allege (i) the existence of a contract, (ii) performance by the plaintiff, (iii) breach by the defendant, and (iv) resulting damages. *See Grewal v. Cuneo Gilbert & LaDuca LLP*, No. 13-CV-6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 803 F. App'x 457 (2d Cir. 2020). All three claims fail because Plaintiff does not plead an enforceable contract between her and Columbia.

Regarding Count XXIII, Plaintiff asserts that Columbia and Barnard entered into an agreement with her Dr. Jacobs, pursuant to which she would be "fairly considered" for a tenure-track position. (AC ¶ 656.) Her claim fails because she has no standing to enforce any such

---

[20] Plaintiff's equal pay claims under Title VII, the NYSHRL, and the NYCHRL likewise fail. *Moazzaz v. MetLife, Inc.,* No. 19-CV-10531, 2021 WL 827648, at *4 (S.D.N.Y. Mar. 4, 2021) (NYSHRL and NYCHRL are generally analyzed under the Equal Pay Act standard except they also require pleading discriminatory animus).

agreement and because she pleads no facts regarding when an agreement was made or its specific terms. *See Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001) ("[A] plaintiff in a breach of contract case must prove . . . that an enforceable contract existed. . . "); *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816, 92 Civ. 5283 (MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993). Further, her assertion that she was not "fairly considered" for a position is too vague to constitute a contractual obligation. *See Aubrey v. New Sch.,* 624 F. Supp. 3d 403, 414 ("[A] promise that lacks objective measurements. . . by which to objectively analyze performance is deemed unenforceable 'puffery'").[21]

## VIII.    ALL CLAIMS AGAINST PROVOST OLINTO SHOULD BE DISMISSED.

Provost Olinto's sole alleged connection to this matter is that, in October 2024, Dr. Jacobs—not Plaintiff—purportedly met with Provost Olinto to report what he described as discrimination experienced by Plaintiff and to express his view that Barnard's investigation was a "sham." (AC ¶¶ 248; 252-253.) Provost Olinto allegedly indicated she would raise the issue with the Barnard Provost, but failed to take further action. (AC ¶ 254.)  Based on this one interaction *between Dr. Jacobs and Provost Olinto*, Plaintiff implausibly asserts that Provost Olinto aided and abetted Columbia's purported discriminatory acts (of which there were none) and retaliated against Plaintiff.

### A. Plaintiff's Claims for Aiding and Abetting Against Olinto Fail as a Matter of Law.

Plaintiff asserts claims for aiding and abetting discrimination under the NYCHRL (Count XIII) and the NYSHRL (Count XIV) against Provost Olinto. To state a claim for aiding and abetting discrimination under either law, a plaintiff must allege that the defendant "actually

---

[21]Counts XXIV and XXV fail because they are based on Barnard's policies and procedures. (*See* AC ¶¶ 662–673). They do not create contractual obligations for Columbia. Furthermore, "employee manuals, handbooks and policy statements should not *lightly* be converted into binding employment agreements." *Price v. Cushman & Wakefield*, *Inc.*, 808 F. Supp. 2d 670, 700 (S.D.N.Y. 2011) (emphasis in original).

participated" in the unlawful conduct and that the aider and abettor "share the intent or purpose of the principal actor." *McHenry,* 510 F. Supp. 3d at 68 (cleaned up) (citation omitted). "A precondition to a valid aiding and abetting claim under the NYSHRL or NYCHRL is a demonstration of a valid primary claim for discrimination." *Sanchez v. L'Oreal USA, Inc*., No. 21-CV-3229, 2022 WL 1556402, at *5 (S.D.N.Y. May 17, 2022) (quoting *Rossbach v. Montefiore Med. Ctr*., No. 19 Civ. 5758 (DLC), 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021). Because Plaintiff's discrimination claims against Columbia fail for the reasons set forth in Sections II and IV, *supra*, there is no discriminatory conduct for Provost Olinto to have aided or abetted. *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337-388 (S.D.N.Y. 2020).

Even if the underlying claims survive, the aiding and abetting claims against Provost Olinto fail because Plaintiff does not allege that Provost Olinto "actually participated" in any discriminatory conduct or shared the discriminatory intent of any principal actor. The sole allegation regarding Provost Olinto is that Dr. Jacobs — not Plaintiff — allegedly spoke to her in October 2024, *nearly two years after* the promotion decisions were made, to raise concerns about Plaintiff's discrimination complaints. (AC ¶¶ 252-253.) This allegation is insufficient to plead that Provost Olinto "actually participated" in any discriminatory conduct, shared any discriminatory intent, or had any involvement in the decisions impacting Plaintiff's employment at Barnard.

**B. Plaintiff's Claims for Retaliation Against Olinto Fail as a Matter of Law.**

Plaintiff's retaliation claims against Provost Olinto, pled under the NYCHRL (Count XVI) and the NYSHRL (Count XVII) fail because Provost Olinto did not take any adverse employment action against Plaintiff and Plaintiff cannot plead a causal connection. Provost Olinto's alleged "failure to act" after Dr. Jacobs contacted her does not constitute an adverse employment action because Provost Olinto had no duty to intervene at a separate institution on behalf of a non-employee. Second, there is no causal connection between any protected activity and any action (or

29

inaction) by Provost Olinto. Dr. Jacobs allegedly met with Provost Olinto in October 2024 — nearly two years after the promotion decisions, and months after Plaintiff's employment at Barnard ended. Provost Olinto's alleged "failure to act" cannot constitute retaliation for protected activity that preceded her involvement by years.[22]

**CONCLUSION**

For the reasons discussed above, the Court should grant Defendants' Motion to Dismiss.

Dated: New York, New York        Respectfully submitted,
       May 15, 2026

PROSKAUER ROSE LLP
By: */s/ Evandro C. Gigante*
Evandro C. Gigante
Edna D. Guerrasio
Eleven Times Square
New York, New York 10036
(t) 212-969-3000
(f) 212-969-2900
egigante@proskauer.com
eguerrasio@proskauer.com
*Attorneys for Defendants The Trustees of Columbia*
*University in the City of New York and*
*Angela Olinto*

---

[22] Defendant Barnard College also filed a Memorandum of Law in Support of its Motion to Dismiss the Complaint (ECF 56). Columbia and Provost Olinto incorporate those arguments herein, and specifically join in Barnard's request that the Court stay discovery pending adjudication of Defendants' motions to dismiss (*id.* at Sec. VI(b)), and decline to exercise supplemental jurisdiction over Plaintiff's city and state law claims in the event all federal claims are dismissed (*id.* at Sec. V).

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I caused Defendants The Trustees of Columbia University's and Columbia Provost Angela Olinto's Memorandum of Law In Support of their Motion to Dismiss Plaintiff's First Amended Complaint to be served on all counsel of record through the court's electronic-filing system.


Dated: May 15, 2026
      New York, New York                            */s/ Evandro Gigante*
                                       Evandro Gigante

32

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Judge Ramos's May 13, 2026 Order (ECF 53), the foregoing brief is limited to 30 pages with 10,212 words total, with each additional page containing no more than 350 words.

The word counts were prepared using the Microsoft Word "Word Count" tool, excluding the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but including "material contained in footnotes or endnotes."  Local Civil Rule 7.1.

Dated: May 15, 2026
     New York, New York            */s/ Evandro Gigante*
                                       Evandro Gigante