**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| ERIKA KITZMILLER, | : | |
| | : | |
| Plaintiff, | : | Case No.: 1:25-cv-08634-ER |
| | : | |
| BARNARD COLLEGE AND THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,THEA ABU EL-HAJ, MARIA RIVERA MAULUCCI, ELIZABETH SCOTT-FRANCIS, ANGELA OLINTO, LINDA BELL, SIAN BEILOCK, LAURA ANN ROSENBURY, and LESLEY A. SHARP, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE MOTION TO DISMISS THE AMENDED COMPLAINT OF BARNARD
COLLEGE, THEA ABU EL-HAJ, MARIA RIVERA MAULUCCI,
ELIZABETH SCOTT-FRANCIS, LINDA A. BELL, SIAN BEILOCK, LAURA
ANN ROSENBURY, AND LESLEY A. SHARP (ECF NO. 55)**

LIEBER HAMMER HUBER PAUL
& HOFFMAN, P.C.

James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
Counsel for Plaintiff
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com

Counsel for Plaintiff Erika Kitzmiller

**TABLE OF CONTENTS**

I.    Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiff's Claims are Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Plaintiff Adequately Pled Claims for Discrimination. . . . . . . . . . . . . . . . . . . . . . 6

        1.    Plaintiff Sufficiently Pled Sex Discrimination Based on Gender
            Stereotypes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    Plaintiff Sufficiently Pled Caregiver/Parental Discrimination . . . . . . . . . . 8

        3.    Plaintiff Sufficiently Pled Race Discrimination . . . . . . . . . . . . . . . . . . . . 9

        4.    Plaintiff Sufficiently Pled Age Discrimination. . . . . . . . . . . . . . . . . . . . . 11

        5.    Plaintiff Sufficiently Pled Race Association Discrimination . . . . . . . . . . 12

    C.    Plaintiff Sufficiently Pled Claims For Hostile Work Environment . . . . . . . . . . . 14

    D.    Plaintiff Sufficiently Pled Retaliation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    E.    Plaintiff's Equal Pay Claims Should Not Be Dismissed. . . . . . . . . . . . . . . . . . . . 21

    F.    Plaintiff Sufficiently Alleged Breach of Contract Claims . . . . . . . . . . . . . . . . . . 23

    G.    Plaintiff Adequately Pled Claims Against Individual Defendants . . . . . . . . . . . . 25

        1.    Dr. Thea Abu El-Haj. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        2.    Dr. Maria Rivera Maulucci. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        3.    Dr. Lesley Sharp . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        4.    Dr. Linda Bell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        5.    Dr. Sian Beilock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        6.    Dr. Laura Ann Rosenbury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        7.    Dr. Elizabeth Scott-Francis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**Cases:**

*Back v. Hastings On Hudson Union Free Sch. Dist.*,365 F.3d 107 (2d Cir. 2004) . . . . . . . . 6, 7, 8

*Banks v. Gen. Motors, LLC*, 81 F.4th 242 (2d Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bautista v. PR Gramercy Square Condo.*, 642 F.Supp. 3d 411 (S.D.N.Y. 2022) . . . . . . . . . . . . 6

*Belfi v. Prendergast*, 191F.3d 129, 135 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brikman v. Westchester Med. Ctr.Ad.Phys. Servs., P.C.*, 2025 WL 2371315
(S.D.N.Y. Aug. 13, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. City of New York*, 869 F.Supp. 158 (S.D.N.Y.1994). . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) . . . . . . . . . . . . . . . . . . . . . 17, 20

*Chiara v. Town of New Castle*, 126 A.D.3d 111,122, 2 N.Y.S.3d 132, 141 (2015). . . . . . . . . . 13

*Comcast Corp. v. National Ass'n of African American-Owned Media*, 590 U.S.
327 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Cummings v. Cityof New York*, 246 A.D.3d 560, 251 N.Y.S.3d 91 (2026) . . . . . . . . . . . . . . . . 16

*D'Cunha v. Genovese/Eckerd Corp.*, 479 F3d 193 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 12

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2d Cir. 2019). . . . . . . . . . . . . . . . . . . . . 5, 6

*DeNigris v. NewNYC Health and Hospitals Corp.*, 861 F.Supp. 2d 185 (S.D.N.Y. 2012) . . . . . . 4

*DiBartolo v. Segal Grp., Inc.*, 2025 WL 2172643 (S.D.N.Y. July 31, 2025). . . . . . . . . . . . . 11, 12

*Dietrich v. City of New York*, 2019 WL 2236585 (S.D.N.Y. May 16, 2019). . . . . . . . . . . . . . . . 12

*Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Doe v. McQuaid Jesuit*, 2024 WL 4905278 (W.D.N.Y. Nov. 27, 2024) . . . . . . . . . . . . . . . . . 7, 8

*Duplan v. City of New York*, 888 F.3d 612 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Esposito v. Deutsche Bank AG*, 2008 WL 5233590 (S.D.N.Y. Dec. 16, 2008) . . . . . . . . . . . . . . 4

*Exch. Listing, LLC v. InspiraTechs., Ltd.*, 661 F. Supp. 3d 134 (S.D.N.Y. 2023) . . . . . . . . . . . . 23

*Farmer v. ShakeShack Enters., LLC*, 473 F. Supp. 3d 309 (S.D.N.Y. 2020). . . . . . . 19, 21, 26, 29

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

*Fincher v. Depository Trust & Cleaning Corp.*, 604 F.3d 712 (2d Cir. 2010). . . . . . . . . . . . . . . 19

*Gittens-Bridges v. City of New York*, 2020 WL3100213 (S.D.N.Y. June 11, 2020) . . . . . . . . . . 12

*Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . 7

*Holcomb v.v. Iona  Coll.*, 521 F.3d 130 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Joshi v.Trustees of Columbia University*, 515 F.Supp.3d 200 (S.D.N.Y. 2021) . . . . . . . . . . . . . 23

*Kane v. Mt. Pleasant Cent. Sch. Dist.*, 80 F.4th 101 (2d Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . 3

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kirkland-Hudson v. MountVernon City School Dist.*, 665 F.Supp. 3d 412 (S.D.N.Y. 2023) . . 5, 6

*Konyukhova v. Walgreen Co.*, 2026 WL 880381 (S.D.N.Y. Mar. 31, 2026) . . . . . . . . . . . . . . . . . 9

*Kurtanidze v. Mizuho Bank, Ltd.*, 2024 WL 1117180 (S.D.N.Y. Mar. 13, 2024) . . . . . . . . . . . . 9

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Littlejohn v. City of N.Y.,* 795 F.3d 297 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 18, 19, 21

*Livingston v. City of New York*, 563 F. Supp. 3d 201 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . 8, 16

*Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349 (S.D.N.Y. 2012) . . . . . . . . . . . . 26

*Mazyck v. Met. Transp. Auth.*, 893 F.Supp. 2d 574 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . 4

*McDonnell Douglas. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . 9

*Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir.2016) . . . . . . . . . . . . . . . 9

*Mihalik v. Credit Agricole Cheuvreux N. Amer., Inc.*, 715 F.3d
102 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 14, 19, 21, 22

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mumin v. City of New York*, 2025 WL 2733229 (S.D.N.Y. Sept. 25, 2025) . . . . . . . . . . . . . . . 10

*Palmer v. Cook*, 108 N.Y.S.3d 297 (N.Y. Sup. Ct. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Postell v. Fallsburg Libr.*, 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022) . . . . . . . . . . . . . . . . . . 11

*Rosenblatt v. Bivona & Cohen, P.C.,* 946 F. Supp.298 (S.D.N.Y. 1996). . . . . . . . . . . . . . . . . . 13

*Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022). . . . . . . . . . . . 11

*Shamciyan v. Acacia Network, Inc.*, 2023 WL 6214546 (S.D.N.Y. Sept. 24, 2023) . . . . . . . 10, 11

*Stern v. Trs. of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012),
 aff'd, 713F.3d 163 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Tolbert v. Smith*, 790 F.3d 427 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trezza v. The Hartford, Inc.*, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998) . . . . . . . . . . . . . . . . 7

*Vega v. Hempstead Union Free School District*, 801F.3d 72 (2d Cir. 2015). . . . . . . . 9, 16, 18, 19

*Ward v. Cohen Media Publications LLC*, 2023 WL 5353342 (S.D.N.Y. Aug. 21, 2023) . . . . . . 16

*Weiss v. La Suisse*, 260 F.Supp.2d 644 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75(2d Cir. 2000) . . . . . . . . . . . . . . 26

*Zentz v. Int'l Foreign Exch. Concepts, L.P.,* 33 Misc. 3d1212(A), 939 N.Y.S.2d 745
(Sup. Ct. 2011), aff'd, 106 A.D.3d 904, 965 N.Y.S.2d 180 (2013) . . . . . . . . . . . . . . . . . . . . . . . 23

**Other Authorities:**

29 U.S.C. § 206(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

N.Y. CODE § 8-502(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.Y. Exec. Law § 296(1)(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y.C. Admin. Code §§8-107(1)(a) & 8-102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y.C. Admin. Code § 8-107(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.Y.C. Admin. Code § 8-107(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I.  STATEMENT OF FACTS

Born in 1977, Dr. Erika Kitzmiller is the mother of two young children and wife of a Jewish former Columbia professor.  Am. Compl. ¶¶ 55, 64-65.  An accomplished educational historian and scholar of inequality, she holds two Ph.D.'s from the University of Pennsylvania, and previously taught at Harvard, Penn, and Columbia.  *Id.* ¶¶ 56-66.  From 2019 through June 2024, she served as a Term Assistant Professor at Barnard College and Columbia University and established a strong record of teaching, scholarship, and service, authored a well-regarded book, numerous peer-reviewed publications, secured $667,525 in grant funding, mentored dozens of students, received high teaching evaluations, and advocated for racial equity, educational access, and equal treatment of faculty.  *Id.* ¶¶ 69-75, 78-80, 90-101.

In 2022, Barnard/Columbia conducted searches for tenure-track positions in Urban Studies and Education Studies.  Dr. Kitzmiller was exceptionally qualified for both and had been encouraged by senior administrators to pursue tenure-track opportunities.  Am. Compl. ¶¶ 86-89, 103-108.  Yet, search committees including Professors Thea Abu El-Haj, Maria Rivera Maulucci, and Lesley Sharp rejected her candidacy.  *Id.* ¶¶ 107-121.  Defendants hired two less-qualified younger (below 40) individuals who did not have children or Jewish spouses.  *Id.* ¶¶ 288, 296, 472.  For Education and Urban Studies, the Defendants hired an African American individual outside of Dr. Kitzmiller's protected race class.  *Id.* ¶¶ 154, 160-68.

Search members made comments reflecting discrimination and hostility.  Dr. Maulucci said: "You have young children. That dictates the times that you are available to teach. We need people to teach at night and you won't want to do that with children." *Id.* ¶¶ 179, 184.  She told another candidate that it was better for her to have accepted the job at Molloy University than to stay at Barnard because she could be a better mother at Molloy.  *Id.* ¶ 199.  Like Plaintiff, this rejected

candidate felt "mommy-tracked." *Id.* ¶¶ 194-98. Dr. Abu El-Haj oddly instructed Dr. Kitzmiller to display photographs of her children in her office to show her maternal status. *Id.* ¶ 85.

For Urban Studies, Dr. Abu El-Haj told Dr. Kitzmiller she was "not urban enough," a code for race – specifically Black or African American. *Id.* ¶ 372. The rationale was a pretext and could not have been based on Dr. Kitzmiller's superior Urban Studies background. She had more education (*e.g.*, Certificate in Urban Studies), and years of experience (*e.g.*, teaching Urban Studies and authoring a well-regarded book) than the chosen candidate, (*Id.* ¶¶ 362-85), as a jury will weigh. The hiring policy required candidate selection to be based on the wording of the advertisement but an "urbanness" or similar criterion was not even in the job posting. *Id.* ¶ 167.

Defendants picked individuals under 40. Dr. Abu El-Haj explained that Barnard preferred to hire tenure track faculty who were "younger and fresh out of their Ph.D. programs." Am. Compl. ¶¶ 432-33. She told Plaintiff unlike other candidates who were instructed to discuss one key research contribution that she should focus on multiple projects "since she was so far removed from [her] Ph.D.," an ageist higher standard. *Id.* ¶ 434. Violations of the College's policies and procedures abounded including that one search committee with Dr. Abu El-Haj and her brother-in-law Dr. Passell, rather than recusing as required, awarded the position to Abu El-Haj's younger doctoral advisee (a conflict of interest). *Id.* ¶¶ 154, 160-68.

The discriminatory attitude toward Dr. Kitzmiller's Jewish husband surfaced during the interview process. Dr. Abu El-Haj (a supporter of the Boycott, Divestment and Sanctions (BDS) movement that contains anti-Semitic aspects) accused Dr. Jacobs of being a bad husband and father, although she did not know anything personal about him besides that he was Jewish. Am. Compl. ¶¶ 137, 468, 473, 476. Barnard's motion fallaciously claims that Plaintiff did not plead Dr. Abu El-

2

Haj knew Dr. Jacobs was Jewish. *See id.* Dr. Abu El-Haj falsely charged that Plaintiff's wall posters were "anti-Muslim," and implied that Dr. Kitzmiller was anti-Muslim as well. *Id.* ¶ 473. During a workshop, Dr. Abu El-Haj exploded at Dr. Kitzmiller and accused her of being anti-Palestinian, a baseless falsehood. *Id.* ¶¶ 477-78.

Dr. Kitzmiller complained to Barnard officials, including Provost Linda Bell, President Sian Beilock, President Laura Ann Rosenbury, and Nondiscrimination and Title IX Director Elizabeth Scott-Francis, of discrimination, retaliation, and irregularities in the search process. Am. Compl. ¶¶ 203-250. Senior administrators acknowledged that her concerns were serious but failed to conduct an investigation or take corrective action. *Id.* ¶¶ 213-232, 235-250. Prior to her complaints, the Administration assisted Plaintiff in securing grants. *Id.* ¶546. Following protected activity, Defendants failed to support grant applications and ignored repeated requests concerning funding opportunities worth hundreds of thousands of dollars to the institution. *Id.* ¶¶ 544, 546-550.

Plaintiff states claims for discrimination on the basis of gender stereotypes, caregiver status, race, age, race association, retaliation, and unequal pay, plus for breach of contract.

## II.  ARGUMENT

### A.    Plaintiff's Claims Are Timely.

Title IX claims for sex discrimination and retaliation (Counts I, XV) have a 3-year statute of limitations. *Kane v. Mt. Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 104 (2d Cir. 2023). Plaintiff filed her complaint on October 17, 2025; therefore any discrete acts after October 16, 2022 are timely. ECF No. 1. The Title IX counts are based on acts that occurred after that date and are timely. Am. Compl. ¶¶ 139, 156  (Plaintiff was informed of rejections on 11/21/22 (Urban Studies rejection) and 12/22/22 (Education Studies rejection), 274-99, 544-54.

Section 1981 claims for race discrimination, race association discrimination, and retaliation (Counts V, X, XIX) have 4 year statutes of limitations. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023). Plaintiff filed on October 17, 2025; therefore any discrete acts after October 16, 2021 are timely. ECF No. 1. The Section 1981 counts are based on discrete acts that occurred after that date and are timely. Am. Compl. ¶¶ 139, 156, 366-86, 480, 595, 608-11.[1]

The eleven (11) NYCHRL claims for sex discrimination, caregiver status, race discrimination, age discrimination, race/ethnicity association discrimination, aiding and abetting, retaliation, failure to prevent discrimination, unequal pay/compensation discrimination, and hostile work environment (Counts II, IV, VI, VIII, XI, XIII, XVI, XX, XXX, XXXIII, XXXVI) have 3-year statutes. N.Y. CODE § 8-502(d). The nine (9) NYSHRL claims for sex discrimination, race discrimination, age discrimination, race/ethnicity association discrimination, aiding and abetting, retaliation, discrimination, and hostile work environment (Counts III, VII, IX, XII, XIV, XVII, XXI, XXXIV, XXXVII) have 3-year statutes. *See Mazyck v. Met. Transp. Auth.*, 893 F.Supp.2d 574, 587 (S.D.N.Y. 2012).

Claims brought under the NYSHRL and NYCHRL are "tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter." *DeNigris v. New NYC Health and Hospitals Corp.*, 861 F.Supp.2d 185, 192 (S.D.N.Y. 2012). Claims under the NYSHRL and NYCHRL are tolled during the pendency of a complaint with the NYSDHR. *Esposito*

---

[1]The Parties entered into a tolling agreement that tolled Plaintiff's Title IX claims and Section 1981 retaliation claim for an additional 173 days from December 13, 2024 until June 4, 2025. *See* Lieber Declaration filed herewith. If the Court considers the Tolling Agreement, it may do so because its authenticity is undisputed and it conclusively resolves any remaining limitations issue. Alternatively, if the Court concludes that the agreement falls outside the pleadings, Rule 12(d) authorizes conversion of the motion to one for summary judgment on this narrow issue. In either event, dismissal under Rule 12(b)(6) is improper.

4

*v. Deutsche Bank AG*, 2008 WL 5233590, at *4 (S.D.N.Y. Dec. 16, 2008).  Plaintiff filed her EEOC charge on April 4, 2024 and received a right to sue letter on February 13, 2026, a period of 680 days. Am. Compl. ¶¶ 48, 53.  Plaintiff filed a NYSDHR charge on May 8, 2024 and an administrative convenience dismissal was issued January 15, 2026, (ECF No. 60-2),[2] a period of 617 days.  Plaintiff filed NYCHRL and NYSHRL claims on February 23, 2026.  ECF No. 30.  Subtracting both the 3 year statute of limitations and the 680 tolling days means that all discrete acts that occurred on or after April 14, 2021 are timely.  Plaintiff's NYCHRL and NYSHRL counts are based on discrete acts that occurred after April 14, 2021 and timely.  *See* Am. Compl. ¶¶ 139, 156, 313, 333, 347, 392, 406, 419, 446, 489, 492, 508, 512, 523, 531, 623-25, 636-37, 841-842.

The EEOC statute is 300 days.  *Brown v. City of New York*, 869 F.Supp. 158, 169 (S.D.N.Y. 1994).  Plaintiff filed her charge for race, sex, religion, and age discrimination and retaliation on April 4, 2024.  Am. Compl. ¶¶ 48-49.  Therefore, acts on or after June 9, 2023 are timely under Title VII and the ADEA.  Plaintiff alleges acts after June 9, 2023 including failures to support her grant activity or investigate her discrimination claims.  *See* Am. Compl. ¶¶ 237-238 (June 9 and 23, 2023 complaints with no response); 547-551 (Dec. 2023-Jan. 2024 failure to support grants).

Contrary to Barnard's argument, courts may consider time-barred allegations as "background evidence" to determine whether an adverse action was the result of a discriminatory motive. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019); *Kirkland-Hudson v. Mount Vernon City School Dist.*, 665 F.Supp.3d 412, 445 (S.D.N.Y. 2023).  A jury can consider allegations of discriminatory or protected conduct that occurred prior to Plaintiff's timely claims including:

---

[2]Plaintiff pled that she filed with the NYSDHR in April 2024.  The NYSDHR dismissal letter states the charge was filed May 8, 2024.  Regardless, Plaintiff's claims are still timely.

- 2020 – Am. Compl. ¶¶ 81, 85 (Dr. Abu El-Haj told Plaintiff her posters were "anti-Muslim" and to display photos of her children in her office);

- 2021 – *Id.* ¶ 92 (Dr. Abu El-Haj told Plaintiff to consider leaving Barnard); ¶ 93 (Dr. Maulucci told Plaintiff she could not be a good teacher with more than 20 students);

- 2022 – Am. Compl. ¶ 136 (Prior to Dr. Kitzmiller's final interview, Dr. Abu El-Haj criticized her husband"); ¶ 139 (On November 21, 2022, Dr. Abu El-Haj told Dr. Kitzmiller that her application would not be considered because she was 'not urban enough'").

While the allegations from 2022 are clearly within the statute of limitations, those from 2020 and 2021 are evidence of Defendant's discriminatory motive and are to be considered. *See Davis-Garett*, 921 F.3d at 42; *Kirkland-Hudson*, 665 F.Supp.3d at 445.

**B.    Plaintiff Adequately Pled Claims For Discrimination.**

Plaintiff stated claims for discrimination on the basis of sex (Counts I-III, XXVI), caregiver status (Count IV), race (Counts V-VII, XXVII), age (Counts VIII, IX, XXVIII), or race association (Counts X-XII, XXIX). At the pleading stage, there is a "minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). It can arise from circumstances including "the employer's criticism of the plaintiff's performance in ethically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id.* at 312. It can be shown where the employer hires or promotes someone outside the protected class. *Bautista v. PR Gramercy Square Condo.*, 642 F.Supp.3d 411, 424-25 (S.D.N.Y. 2022). However, failure to identify comparators "is not fatal to a discrimination claim." *Id.*

**1.    Plaintiff Sufficiently Pled Sex Discrimination Based on Gender Stereotypes.**

Under Title IX, NCYHRL, NYSHRL, and Title VII, adverse employment actions based upon

stereotypical assumptions regarding motherhood and caregiving constitute unlawful sex discrimination. *Doe v. McQuaid Jesuit*, 2024 WL 4905278, at \*6 (W.D.N.Y. Nov. 27, 2024) (Title IX). Stereotypes concerning "the incompatibility of motherhood and employment" are gender-based and support liability under discrimination laws. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004); *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 131–32 (E.D.N.Y. 2019). An employer may not presume that a mother is less committed to her career, insufficiently devoted to her work, or incapable of balancing work and family responsibilities. *Id.* at 119-22; *Trezza v. The Hartford, Inc.*, 1998 WL 912101, at \*7–8 (S.D.N.Y. Dec. 30, 1998). Nor is disparate treatment of fathers required. *Id.* at 121–22. The NYCHRL is construed "broadly in favor of discrimination plaintiffs." *Mihalik v. Credit Agricole Cheuvreux N. Amer., Inc.*, 715 F.3d 102, 109-110 (2d Cir. 2013).

A mother of young children who applied for two open tenure-track positions, Plaintiff although qualified was not selected due to gender stereotyping. Am. Compl. ¶¶ 64, 88, 112, 113, 114. Defendants hired less qualified applicants who did not have children. *Id.* ¶ 288, 296. The Provost indicated that Dr. Kitzmiller "was in a strong position to be promoted so given her credentials, teaching, and scholarship." *Id.* ¶ 88. A member of both Committees, Dr. Maulucci, said: "[Y]ou have young children. That dictates the times that you are available to teach. We need people to teach at night and you won't want to do that with children." *Id.* ¶¶ 179, 184. The search recommended the only two candidates who did not have children and rejected the three remaining candidates who did. *Id.* ¶¶ 171-74.

A rejected mother like Plaintiff, Dr. Chandler Miranda said that she was "mommy tracked," and told a Committee member that she did not get the job because of when she had her children

7

which he did not deny. *Id.* ¶¶ 194-98, 200, 294. Dr. Maulucci told her that "it was better for her to have accepted the job at Molloy University than to stay at Barnard because she would see in time that she would be a better mother and spend more time with her children as a professor at Molloy." *Id.* ¶ 199. Barnard's Director of Nondiscrimination and Title IX, Dr. Scott-Francis, admitted to Plaintiff that there were "climate" (i.e., discrimination) issues within Education Studies that needed to be addressed. *Id.* ¶ 298.

The search violated College policies and procedures, including Dr. Abu El-Haj recommending her own doctoral advisee who was awarded the position. *Id.* ¶¶ 154, 160-68. Violations of an employer's own procedures constitute evidence of pretext and discrimination. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313, 320–21 (2d Cir. 1997) (reversing summary judgment where university deviated from its normal decisionmaking procedures); *Tolbert v. Smith*, 790 F.3d 427, 437–38 (2d Cir. 2015). Plaintiff plainly pled claims for sex discrimination based on gender stereotypes under Title IX, NCYHRL, NYSHRL, and Title VII that Defendants should answer. *See Back,* 365 F.3d at 119-22; *McQuaid Jesuit*, 2024 WL 4905278, at *6.

### 2. <u>Plaintiff Sufficiently Pled Caregiver/Parental Discrimination.</u>

The NYCHRL prohibits discrimination because of actual or perceived caregiver status for "a person who provides direct and ongoing care for a minor child." N.Y.C. Admin. Code §§ 8-107(1)(a) & 8-102. To establish a prima facie case of discrimination under the NYCHRL, a plaintiff is not required to show an adverse employment action and need only "show differential treatment — that [he] was treated 'less well' — because of a discriminatory intent." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021). A qualified mother of young children, Plaintiff applied for two open positions but was not selected with inferences of discrimination. *See*

8

Am. Compl. ¶¶ 64, 112, 113, 114, 301-21, & Section II(B)(1), *supra*, incorporated herein by reference; *see also Kurtanidze v. Mizuho Bank, Ltd.*, 2024 WL 1117180, at *16 (S.D.N.Y. Mar. 13, 2024) (denying motion to dismiss caregiver claim); *Konyukhova v. Walgreen Co.*, 2026 WL 880381, at *9 (S.D.N.Y. Mar. 31, 2026) (same).

### 3.    Plaintiff Sufficiently Pled Race Discrimination.

At the pleading stage, a plaintiff asserting race discrimination need not establish a *prima facie* case under *McDonnell Douglas*. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002). The complaint need contain only sufficient factual matter to provide "plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Title VII claims require only allegations that race was a motivating factor. *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 87 (2d Cir. 2015). Claims under 42 U.S.C. § 1981 are subject to the same general pleading principles, although the plaintiff ultimately must establish that race was a but-for cause (not the sole cause). *Comcast Corp. v. National Ass'n of African American-Owned Media*, 590 U.S. 327 (2020). NYCHRL requires only that one plausibly allege that she was treated "less well" in part because of a protected characteristic. *Mihalik*, 715 F.3d at 109–10.

Plaintiff, a Caucasian, applied for a position in Urban Studies, was not selected, and supplied an inference of race discrimination. Am. Compl. ¶¶ 362-85. Defendants hired a less-qualified African American candidate who lacked peer-reviewed publications in contrast to Plaintiff's impressive publication record. *Id.* ¶ 371. Dr. Abu El-Haj said Dr. Kitzmiller lost because she was not "urban enough," code for race. *Id.* ¶ 372. "Racially charged code words may provide evidence of discriminatory intent." *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 610 (2d Cir. 2016). Search committee member Aaron Passell of the joint Barnard-Columbia Urban Studies

9

Program (who is Dr. Abu El-Haj's brother in law) likewise told another rejected non-Black candidate that she was "not urban enough." Am. Compl. ¶ 197. The hiring policy required that candidates be selected based on the wording of the advertisement, but "urbanness" or similar criterion was not included. *Id.* ¶ 167. The search was replete with violations of policies and procedures, including that Dr. Abu El-Haj recommended her own doctoral advisee who won the position. *Id.* ¶¶ 154, 160-68.

The "urbanness" charge was pretextual as Plaintiff was the only finalist with an educational credential in the field, a Certificate in Urban Studies. *Id.* ¶ 373. Her doctoral advisor was a leading figure in urban studies and urban history. *Id.* ¶ 375. Plaintiff taught in the Urban Studies program in 2015-16 and received exemplary evaluations. *Id.* ¶ 376. She wrote "The Roots of Educational Inequality," the first book tracing the history of a public school in the context of its city neighborhood. It was nominated for prizes including by the Urban History Association. *Id.* ¶ 380-81. Her research of urban public schools spans nearly two decades, and she taught in them for 25 years. *Id.* ¶ 382. For the 1981 claim, Plaintiff pled that, "But for Plaintiff's race, Defendant would not have denied Plaintiff the tenure track position." *Id.* ¶ 384. Plaintiff sufficiently states claims for race discrimination that present jury questions. *See Shamciyan v. Acacia Network, Inc.*, 2023 WL 6214546, at *6 (S.D.N.Y. Sept. 24, 2023) (denying motion to dismiss race discrimination).

Since Plaintiff plausibly alleged race discrimination under Section 1981, her NYCHRL and NYSHRL claims pass muster under their "more liberal" applicable pleading standards. *See Mumin v. City of New York*, 2025 WL 2733229 (S.D.N.Y. Sept. 25, 2025) (denying motion to dismiss NYSHRL claims where court denied motion on Title VII claims); *Brikman v. Westchester Med. Ctr. Ad.Phys. Servs., P.C.*, 2025 WL 2371315 (S.D.N.Y. Aug. 13, 2025).

Barnard's argument that the 1981 claim fails because Plaintiff raised discrimination based upon sex and other protected characteristics lacks merit. Section § 1981 indicates that race is a but-for cause, but does not require alleging that race was the sole or exclusive cause. *Comcast Corp.*, 589 U.S. at 333. Since "[o]ften, events have multiple but-for causes," the existence of other contributing motives does not defeat liability so long as the protected characteristic was one but-for cause of the challenged action. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). Rule 8(d) expressly permits a plaintiff to plead alternative and even inconsistent theories of recovery. Plaintiff may simultaneously allege that race was a but-for cause of the adverse employment action for purposes of § 1981 while also alleging discrimination based upon sex, caregiver status, and other protected characteristics. *See Shamciyan*, 2023 WL 6214546, at *6 ("Had [plaintiff] experienced discrimination only because he was all of Persian, Iranian descent, Jewish, and fifty-six years old, each of those characteristics could be a but-for cause. It therefore does not defeat [Plaintiff's] section 1981 discrimination claim to allege that he was also the victim of other sorts of discrimination.") (distinguishing *Postell v. Fallsburg Libr.*, 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022)).

4.    **Plaintiff Sufficiently Pled Age Discrimination.**

A plaintiff must be: (1) within the protected age group; (2) qualified; (3) subject to an adverse employment action; and (4) that adverse action occurred under circumstances giving rise to an inference of discrimination. *DiBartolo v. Segal Grp., Inc.*, 2025 WL 2172643, at *4 (S.D.N.Y. July 31, 2025); *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022). Plaintiff, 44 and within the protected age group, (Am. Compl. ¶ 422), qualified based on her education and experience, (*Id.* ¶ 55-63, 66, 417), was not hired under circumstances giving rise to an inference of age discrimination. *Id.* ¶¶ 420-34.

Barnard and Columbia chose less qualified applicants sufficiently younger permitting an inference of age discrimination.  Successful applicant Gross was at least 8 years younger than Plaintiff and successful applicant Herbert was at least 6 years younger than Plaintiff, (Am. Compl. ¶¶ 116, 118).  *D'Cunha v. Genovese/Eckerd Corp.*, 479 F3d 193, 195 (2d Cir. 2007) (inference of age discrimination where individual offered position was eight years younger than plaintiff).  The committees recommended only candidates under the age of 40.  *Id.* ¶ 430.  Plus ageist comments were made by decision-makers.  *See Dietrich v. City of New York*, 2019 WL 2236585, at *5 (S.D.N.Y. May 16, 2019).

Dr. Abu El-Haj admitted that "Barnard preferred to hire tenure track faculty who were younger and fresh out of their Ph.D. programs."  Am. Compl. ¶¶ 432-33.  She directed Plaintiff that "unlike the other candidates who were instructed to discuss one key research contribution she should focus on multiple projects 'since she was so far removed from [her] Ph.D.,'" which was reflective of disparate treatment and ageism.  *Id.* ¶ 434.  Defendants set a higher standard for Plaintiff while breaching practices and procedures in connection with the searches, (*Id.* ¶¶ 160-69), evidence of discrimination against older employees.  *See Gittens-Bridges v. City of New York*, 2020 WL 3100213, at *15 (S.D.N.Y. June 11, 2020).  The search was riddled with violations of policies and procedures.  Am. Compl. ¶¶ 154, 160-68.  Plaintiff adequately pled a cause of action for age discrimination under the NYCHRL, NYSHRL, and the ADEA.  *See Dietrich*, 2019 WL 2236585, at *10; *DiBartolo*, 2025 WL 2172643, at *7–8.

### 5.    **Plaintiff Sufficiently Pled Race Association Discrimination**.

Dr. Kitzmiller pled employment discrimination because her husband is Jewish.  Am. Compl. ¶¶ 466-516.  Interracial relationships claims sound under the NYCHRL, the NYSHRL, § 1981 and

Title VII.  *See* N.Y.C. Admin. Code § 8-107(20); *Chiara v. Town of New Castle*, 126 A.D.3d 111, 122, 2 N.Y.S.3d 132, 141 (2015) (NYSHRL); *Rosenblatt v. Bivona & Cohen, P.C.*, 946 F. Supp. 298, 300 (S.D.N.Y. 1996) (1981).  Jewish individuals are a protected racial group under these statutes.  *Weiss v. La Suisse*, 260 F.Supp.2d 644 (S.D.N.Y. 2003).  Membership in the protected class exists "by virtue of the defendants' alleged discriminatory conduct stemming from his [or her] marriage to a Jewish person."  *Chiara*, 2 N.Y.S.3d at 141; *Weiss*, 260 F.Supp.2d 644.

Dr. Jacobs was a Jewish Columbia professor, as Defendants were aware.  Am. Compl. ¶¶ 467-68.  Plaintiff was qualified, applied, and rejected under circumstances giving rise to an inference of interrelationship discrimination.  *Id.* ¶¶ 469-72.  During the interview process, Dr. Abu El-Haj attacked Dr. Jacobs as a bad husband and father, although she did not know anything personal about him besides that he was Jewish.  *Id.* ¶ 476.  She falsely attacked Dr. Kitzmiller for some wall posters as "anti-Muslim."  *Id.* ¶ 473.  She is a supporter of the BDS movement containing anti-Semitic aspects.  *Id.* ¶ 473.  Her partisan research reflects an interest in Palestinian American identity and citizenship.  *Id.* ¶ 475.  During a workshop, Dr. Abu El-Haj went off-topic and railed at Dr. Kitzmiller for being anti-Palestinian, a baseless falsehood.  *Id.* ¶ 477.  No action was taken against Dr. Abu El-Haj despite Plaintiff's complaint against her.  *Id.* ¶ 478.

Plaintiff alleged Defendants selected candidates outside the protected association class (not married to Jews) who were less qualified.  *Id.* ¶ 472.  She adequately pled a claim for race association discrimination.  *See Chiara*, 2 N.Y.S.3d at 142 (race association claim survived summary judgment where terminated plaintiff's wife was Jewish); *Holcomb v. Iona Coll.*, 521 F.3d 130, 140 (2d Cir. 2008) (white plaintiff produced evidence of firing because he was married to a black woman).

**C.**        **Plaintiff Sufficiently Pled Claims For Hostile Work Environment.**

A NYCHRL plaintiff claiming a hostile work environment need demonstrate only that she was treated "less well" because of a protected characteristic. *See Mihalik*, 715 F.3d at 110. "[D]iscriminatory conduct need not be 'severe or pervasive' to create an actionable hostile work environment." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).   Liability exists unless the conduct amounts to nothing more than "petty slights or trivial inconveniences." *Mihalik*, 715 F.3d at 110-13.  Just one "single comment may be actionable in the proper context." *Id.* at 113.  The NYSHRL provides that harassment is unlawful whenever an individual is subjected to inferior terms, conditions, or privileges of employment because of a protected characteristic, unless the conduct constitutes no more than petty slights or trivial inconveniences.  N.Y. Exec. Law § 296(1)(h).

Plaintiff alleges a multi-year pattern of discriminatory comments, stereotyping, professional disparagement, exclusion from opportunities, and hostility because she was an older female professor with young children, because of race and association with racial advocacy, and association with her Jewish husband.  Defendants selected two younger less-qualified candidates without children for the positions. Am. Compl. ¶¶ 114-119, 153-158, 176-178.  The allegations provide inferences that Plaintiff's age, parental status, race, and gender were viewed negatively by decisionmakers.

Allegations exist of repeated unlawful sex-based and caregiver stereotyping. Dr. Abu El-Haj directed Plaintiff to display photographs of her young children in her office. Am. Compl. ¶ 85.  Dr. Maulucci baselessly stated that Dr. Kitzmiller's motherhood was a limitation. *Id.* ¶ 184.  Even after Plaintiff proved that having children never affected her availability, Dr. Maulucci persisted. *Id.* ¶¶ 185-186.  Dr. Maulucci made similar comments to another older female faculty member with young

14

children. *Id.* ¶ 199. Such allegations reflect precisely the type of discriminatory stereotyping condemned by the Second Circuit in *Back*.

Plaintiff alleges repeated race-based and race-related hostility. After Plaintiff advocated on behalf of racial-minority students and raised concerns that enrollment caps disproportionately harmed minority students, Dr. Abu El-Haj reacted negatively, told Plaintiff she would be happier elsewhere, and suggested that she leave Barnard. Am. Compl. ¶¶ 90, 92, 94. During her one-on-one interview Dr. Sharp expressed disbelief that a majority-Black high school in Philadelphia could achieve a 100% college-going rate and baselessly challenged Plaintiff's research findings. *Id.* ¶¶ 130-132. Barnard's Vice President for Diversity disclosed that Dr. Sharp had a reputation for being anti-Black and had engaged in racially prejudiced conduct. *Id.* ¶ 135. Dr. Abu El-Haj publicly raged at Plaintiff during a workshop on race discrimination, falsely accusing her of being anti-Palestinian. *Id.* ¶¶ 222-223. Dr. Abu El-Haj rejected Plaintiff for Urban Studies as "not urban enough," coded language for race. *Id.* ¶¶ 139-140. A jury should weigh whether Plaintiff was subjected to hostility because of race-related considerations and advocacy.

Plaintiff alleged that the hostile environment extended to discrimination based upon race association with her Jewish husband whom Dr. Abu El-Haj falsely criticized as a deficient spouse and father. Am. Compl. ¶¶ 136-137. Dr. Abu El-Haj falsely implied that Plaintiff was anti-Muslim. *Id.* ¶ 81. Plaintiff was repeatedly demeaned and undermined by comments suggesting she was not qualified, insufficiently "urban," should leave Barnard, was receiving recognition she did not deserve, and was improperly seeking opportunities for advancement. *Id.* ¶¶ 92, 102, 104, 110, 139.

Taken together with Barnard's admitted climate concerns regarding the Education Studies Program, Plaintiff's internal discrimination complaints, and Defendant's failure to meaningfully

15

investigate those complaints, (Am. Compl. ¶¶ 208, 210, 213-214, 230-232), the Amended Complaint plausibly alleges far more than isolated slights, supports the conclusion that Plaintiff was treated less well because of her protected characteristics, and states hostile work environment claims. *See Ward v. Cohen Media Publications LLC*, 2023 WL 5353342, at *12–13 (S.D.N.Y. Aug. 21, 2023) (denying motion to dismiss hostile environment claims based on supervisor's focus on putting plaintiff down for being an older woman who dressed modestly as a Mormon); *Cummings v. City of New York*, 246 A.D.3d 560, 561, 251 N.Y.S.3d 91, 92–93 (2026) (supervisor implied that employee received high evaluation scores because she was having sexual relations with higher-ups).

## D.    Plaintiff Sufficiently Pled Retaliation Claims.

For retaliation claims, Plaintiff need only plausibly allege that she engaged in protected activity, Defendant was aware of that activity, she thereafter suffered adverse treatment, and the protected activity was a motivating factor in Defendant's actions. *See Vega*, 801 F.3d at 90-91. Under the NYCHRL, the standard is broader, requiring only conduct reasonably likely to deter a person from engaging in protected activity. N.Y.C. Admin. Code § 8-107(7). The NYSHRL is construed liberally and substantially in accordance with the NYCHRL's remedial purposes. *Livingston*, 563 F. Supp. 3d at 233-34.

Plaintiff alleges multiple protected activities. She asserts that as early as 2019 she complained to Provost Bell and Dr. Abu El-Haj regarding inequitable educational benefits afforded to Barnard as compared to Columbia faculty. Am. Compl. ¶¶ 538-540. She repeatedly advocated on behalf of racial-minority students challenging enrollment caps which generated hostility from decisionmakers. *Id.* ¶¶ 90-92, 94, 99-100. Significantly, Plaintiff filed a formal complaint with Barnard's Office of Nondiscrimination and Title IX on January 12, 2023 alleging discrimination on

16

the basis of race, age, parental status, marital status, and retaliation. *Id.* ¶ 541. Defendant indisputably was aware of that complaint, as it was handled by Barnard's Title IX Office, whose Director informed Plaintiff of "climate" concerns within the Education Studies Program and acknowledged irregularities and conflicts of interest in the search process. *Id.* ¶¶ 542-543, 545.

Plaintiff does not rely solely upon the denial of the tenure-track positions as the adverse actions. Rather, she alleges that following her protected activity Defendants failed to support her grant applications, ignored repeated requests concerning funding opportunities worth hundreds of thousands of dollars, and failed to conduct a proper investigation into her discrimination complaints. Am. Compl. ¶¶ 544, 546-550. Prior to her complaints, the Provost's Office had assisted Plaintiff in securing grant funding. *Id.* ¶ 546. After Plaintiff challenged discriminatory treatment and filed formal complaints, Provost Bell ignored requests for support regarding a $600,000 WT Grant award, a proposal involving the Columbia Global Center in Jordan, and Plaintiff's selection as a semifinalist for a prestigious Spencer Foundation grant. *Id.* ¶¶ 547-550. At the pleading stage, the sudden withdrawal of institutional support for a historically funded faculty member's grant activities, particularly where such funding is central to academic advancement, scholarship, and professional reputation, is sufficient to allege retaliatory conduct and should be subjected to discovery and weighed by a jury. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Vega*, 801 F.3d at 90-91. The significance of this activity including that grant awards would aid Plaintiff's career while profiting Barnard/Columbia is a matter for the jury to weigh, as is whether the Defendants did not have a legitimate business reason for shunning Plaintiff's opportunities.

At the pleading stage, temporal proximity is not the exclusive means of establishing causation; a plaintiff may also rely upon a pattern of antagonism, retaliatory conduct, inconsistent

17

explanations, and other circumstantial evidence. *Vega*, 801 F.3d at 90-91; *Duplan v. City of New York*, 888 F.3d 612, 625-26 (2d Cir. 2018). Plaintiff alleges causation based upon timing, antagonism, and pretext. Am. Compl. ¶¶ 552-553. The pattern of hostility occurred after she raised concerns regarding discrimination at Barnard. *Id.* ¶¶ 541-543. She alleges that Defendant's explanations for refusing to hire her were pretextual and that she was subjected to hostility. *Id.* ¶ 553. Viewed in the light most favorable to Plaintiff, the Amended Complaint plausibly alleges that Defendant's conduct followed her protected complaints and was motivated by retaliatory animus.

Defendant incorrectly posits that 2019 complaints regarding disparities in educational benefits between Barnard and Columbia faculty do not constitute protected activity, but the pleading standard is far more forgiving. A plaintiff only need allege that she opposed conduct that she reasonably believed violated anti-discrimination laws. *Littlejohn*, 795 F.3d at 317. Plaintiff complained directly to Provost Bell and Dr. Abu El-Haj that Barnard faculty received inferior childhood tuition benefits relative to Columbia, and that even contingent faculty and staff at Columbia received K-12 educational benefits unavailable at Barnard. Am. Compl. ¶¶ 538-540. Plaintiff alleged that these disparities reflected Barnard's "anti-family environment and clear inequities." *Id.* ¶ 540.

Read in conjunction with Plaintiff's broader allegations concerning discrimination against mothers, including repeated comments that women with young children were less available for work, less suitable candidates for advancement, and should prioritize childcare responsibilities over professional opportunities, (*Id.* ¶¶ 179-199), it is credible that Plaintiff opposed what she reasonably believed to be sex-based and family-status-based inequities in employee benefits. At the pleading stage, a court must draw that reasonable inference in Plaintiff's favor. *See Vega*, 801 F.3d at 87.

This is particularly true under both the NYCHRL and NYSHRL since they are to be construed broadly in favor of discrimination plaintiffs.  *See Mihalik*, 715 F.3d at 109-13.

Defendant's motion improperly isolates each alleged retaliatory act and instance of protected activity.  The Second Circuit teaches that retaliation claims must be evaluated on the totality of the alleged facts and circumstances. *See Vega*, 801 F.3d at 90-91.  Plaintiff alleged years of complaints of inequitable treatment, racial equity issues, discriminatory hiring practices, and formal discrimination complaints, followed by continuing antagonism, denial of professional opportunities, withdrawal of institutional support, pretextual explanations, and an inadequate investigation process. Am. Compl. ¶¶ 538-553.  Taken together, these allegations plausibly support retaliation claims; hence, the motion to dismiss should be denied.  *See Littlejohn*, 795 F.3d at 316; *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020).

Reliance on *Fincher v. Depository Trust & Cleaning Corp.*, 604 F.3d 712 (2d Cir. 2010), is misplaced.  Plaintiff does not merely claim that Barnard failed to investigate her complaint.  Rather, she alleges that Barnard's Nondiscrimination and Title IX Office acknowledged "climate" concerns within the Education Studies Program, recognized irregularities in the search process, disingenously conducted only an "inquiry" instead of the investigation contemplated by Barnard policy, did not interview relevant witnesses, failed to provide the report required by policy, denied Plaintiff the opportunity to respond to findings, and effectively concealed the outcome of the process.  Am. Compl. ¶¶ 210, 214, 223, 230-232.  Plaintiff alleges that Barnard's refusal to properly investigate her allegations occurred after she engaged in protected activity and formed part of a broader pattern of retaliation that included the withdrawal of institutional support for her grant activities and continuing hostility toward her complaints.  *Id.* ¶¶ 544, 547-553.  Unlike *Fincher*, Plaintiff

19

challenges a sham and procedurally deficient "inquiry" process as part of an ongoing retaliatory course of conduct, not merely a failure to investigate standing alone.

The Supreme Court has emphasized that anti-retaliation provisions extend beyond ultimate employment decisions and prohibit employer conduct that could dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Employees need show only "some harm" with respect to the terms, conditions, or privileges of employment. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355-60 (2024). A reasonable employee certainly could be deterred from filing complaints if she knew that the employer would disregard its own nondiscrimination procedures, refuse to conduct a meaningful investigation, withhold required findings, deny any meaningful opportunity for review, and block economic support.

Plaintiff alleges that, after engaging in protected activity, Barnard administrators withdrew institutional support for her continuing grant-related efforts and denied her assistance necessary to pursue significant research and funding opportunities. Am. Compl. ¶¶ 240-46. Institutional support for grant activity is not a trivial workplace benefit; it directly affects research productivity, professional reputation, publication opportunities, promotion prospects, tenure opportunities, future compensation, and overall career advancement. *See id.* Whether Barnard's conduct would deter a reasonable employee from engaging in protected activity presents a fact-intensive question inappropriate for resolution on a motion to dismiss. *See Burlington Northern*, 548 U.S. at 68. This is particularly true under the NYCHRL which requires only conduct "reasonably likely to deter a person from engaging in protected activity." *Mihalik*, 715 F.3d at 112-13.

Defendant's causation argument improperly asks the Court to resolve factual disputes and draw inferences in its favor at the pleading stage. Accepting the Amended Complaint's allegations

as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff plausibly alleges that after she engaged in protected activity, Defendants subjected her to a continuing course of retaliatory conduct and antagonism, including adverse actions affecting her professional opportunities, institutional support, and career advancement. Those allegations are sufficient to permit a plausible inference of retaliatory causation. *See Littlejohn*, 795 F.3d at 316; *Farmer*, 473 F. Supp. 3d at 334.

**E.      Plaintiff's Equal Pay Claims Should Not Be Dismissed**.

An Equal Pay Act plaintiff simply must show that the employer paid different wages to employees of the opposite sex for equal work requiring equal skill, effort, and responsibility performed under similar working conditions. *See* 29 U.S.C. § 206(d)(1); *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). At the pleading stage, she is not required to prove her claim or plead every detail of a comparator's daily work. Plaintiff alleges that Barnard and Columbia faculty have the same responsibilities in teaching, scholarship, and service; are evaluated according to the same tenure and promotion standards; are reviewed by the same final committees; operate within an integrated academic environment; and perform comparable teaching, scholarship, advising, and service work. Am. Compl. ¶¶ 257, 265, 801-04, 812-15. The necessary comparator detail is ample.

Plaintiff plausibly alleges a sex-based compensation disparity. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019). Historically Columbia faculty have earned higher salaries than Barnard faculty, Assistant Professor salaries at Columbia exceeded Barnard salaries by an average of $35,764 during the 2022-2023 academic year, and Barnard faculty receive lesser benefits, including on childcare, education, housing, insurance, and retirement. Am. Compl. ¶¶ 255, 260-262. Further, the lower-paid Barnard faculty population is mostly female while the higher-paid Columbia faculty population is mostly male. Barnard's own historical documents recognize that the Barnard-

Columbia salary disparity "implies that teaching women has less value than teaching men." *Id.* ¶¶ 256, 263-266.[3]  These allegations plausibly plead not merely generalized institutional disparity, but a sex-linked compensation structure affecting faculty who perform substantially similar work within an integrated Barnard-Columbia academic system.  *Id.* ¶¶ 782-784, 798-808, 810-819.

The NYCHRL requires liberal construction and prohibits treating an employee "less well" with respect to compensation because of sex.  *See Mihalik*, 715 F.3d at 109-13.  Plaintiff performed teaching, research, advising, and service responsibilities substantially similar to male Columbia-affiliated faculty, but was compensated at a lower rate because of sex.  Am. Compl. ¶¶ 799-808, 811-819.  These allegations independently state claims even if Defendant disputes the federal EPA's more technical "equal work" standard.

Reliance on cases dismissing conclusory equal-pay claims is misplaced. They failed to identify meaningful facts about the comparators' work. Here, Plaintiff alleges a common academic rank, faculty duties, tenure/promotion standards, final review structure, comparable teaching, scholarship, advising, and service, and a quantified salary disparity between Barnard and Columbia professors.  Am. Compl. ¶¶ 257, 260, 265, 801-804, 812-815.  At the pleading stage, those allegations are sufficient to provide Defendants fair notice and to permit a reasonable inference that Plaintiff and male Columbia-affiliated faculty performed substantially similar work under similar conditions for unequal compensation.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 470–71 (S.D.N.Y. 2013).

---

[3]Plaintiff also alleges additional sex discrimination within Barnard.  At Barnard, women are concentrated in non-tenure track faculty positions, where they receive lower pay and short term contracts, with no room for professional advancement.  Am. Compl. ¶ 267.  Seventy-five percent (75%) of Barnard's non-tenure track faculty are women, according to IPEDS for the 2022-2023 academic year.  *Id.* ¶ 268.

F.     **Plaintiff Sufficiently Alleged Breach of Contract Claims.**

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege [i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages." *Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 144 (S.D.N.Y. 2023).  Plaintiff pled the existence of a 2019 agreement with essential terms that in exchange for Dr. Jacobs staying at Columbia that Dr. Kitzmiller would be fairly considered by Defendants for a tenure track position.  Am. Compl. ¶¶ 76, 656.  She pled adequate performance in that Dr. Jacobs stayed at Columbia despite opportunities for outside employment in reliance on this promise.[4]  *Id.* ¶¶ 77, 657-58.  Plaintiff pled that Defendants breached that agreement when they failed to fairly consider her for a tenure track position.  *See Id.* ¶¶ 659 & Counts I-XXII (asserting failure to hire based on discrimination or retaliation).  Plaintiff also alleged damages in that as a result of the breach she was not hired for a tenure track position and suffered monetary damages.  *Id.* ¶¶ 299, 659-660.  Whether a valid and enforceable agreement existed "presents a question of fact which can not be determined at this time" and, as a result, the motion to dismiss should be denied.  *See Zentz v. Int'l Foreign Exch. Concepts, L.P.*, 33 Misc. 3d 1212(A), 939 N.Y.S.2d 745 (Sup. Ct. 2011), aff'd, 106 A.D.3d 904, 965 N.Y.S.2d 180 (2013).

Under New York law, workplace policies, including university policies that relate to a university's relationship with its faculty, can create binding and actionable contracts.  *Joshi v. Trustees of Columbia University*, 515 F.Supp.3d 200, 212-213 (S.D.N.Y. 2021).  Courts long have recognized that colleges and universities are contractually obligated to substantially comply with the specific procedures and standards they adopt and publish.  *See Tedeschi v. Wagner Coll.*, 49 N.Y.2d

---

[4]Dr. Kitzmiller and Dr. Jacobs performed their jobs excellently.  Am. Compl. ¶¶ 657-58.

652, 660 (1980).  A faculty member states a breach-of-contract claim by identifying specific contractual promises contained in university rules, policies, handbooks, bylaws, or procedures and alleging facts showing that the institution failed to follow them.  *See Id.*

Count XXIV identifies specific provisions of Barnard's Academic Code and Faculty Handbook governing faculty hiring and promotion procedures.  Am. Compl. ¶¶ 663-671.  Plaintiff alleges that Barnard's Academic Code requires recommendations on appointments, promotions, and tenure to be made by faculty members holding ranks higher than the candidate under consideration, yet three search committee members held lower ranks in violation of the governing procedures.  *Id.* ¶ 664.  Barnard's policies prohibit conflicts of interest, require recusal of faculty evaluating their own students, and require search pools to be narrowed according to the criteria set forth in the published position advertisement.  *Id.* ¶¶ 665-671.  Plaintiff specifically alleges that Dr. Abu El-Haj failed to recuse herself from evaluating her own former student, that her brother-in-law participated on the committee, that another committee member was her direct report, and that Plaintiff was rejected based upon a pretextual "not urban enough" criterion that appeared nowhere in the position announcement.  *Id.* ¶¶ 666-671.  Such allegations identify specific violated contractual provisions and therefore adequately plead a breach of contract under New York law.

Count XXV likewise identifies specific promises contained in the Title IX and nondiscrimination procedures and alleges detailed deviations from those procedures.  Plaintiff alleges that Barnard's Title IX Office promised a thorough investigation, witness interviews, and a final investigative report.  Am. Compl. ¶¶ 682-683.  She further alleges that Barnard's written policies distinguished between an "inquiry" and an "investigation," established timelines for each process, required witness interviews, required review by an outside pool of reviewers, provided for

24

a written report summarizing interviews and evidence, and contemplated an opportunity for response and appeal.  *Id.* ¶¶ 684-700.

Plaintiff alleges numerous specific departures from those requirements, including the failure to interview identified witnesses, the failure to complete the process in accordance with policy, the failure to provide the required report, the failure to submit evidence for outside review, and the failure to permit a meaningful response or appeal.  *Id.* ¶¶ 687-700.  These are not vague allegations of unfair treatment; they are detailed allegations that Barnard failed to follow the procedures it expressly adopted and promised to follow.  Under *Tedeschi* and its progeny, those allegations are sufficient to state a plausible claim for breach of contract.  The allegations also support an inference of pretext.  Barnard refused to investigate suggested witnesses and then used a "lack of evidence" basis to dismiss Plaintiff's complaints.  *Id.* ¶¶ 220, 227-2.8

Defendant's reliance on handbook-disclaimer cases is therefore misplaced.  Plaintiff is not attempting to transform aspirational statements or generalized policies into contractual guarantees. Rather, she identifies specific procedural obligations contained in Barnard's procedures and alleges specific factual departures from those obligations.  Whether Barnard in fact complied with those procedures is a factual issue that cannot be resolved on a motion to dismiss.  Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, Counts XXIII, XXIV and XXV adequately state claims for breach of contract and should proceed to discovery.

**G.    Plaintiff Adequately Pled Claims Against Individual Defendants.**

Under the NYCHRL and NYSHRL individual liability extends far beyond the final decisionmaker.  An individual may be liable where he or she participates in discriminatory conduct, aids and abets such conduct, condones it, or fails to take corrective action despite knowledge and

authority to do so. *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 457-58 (2021); *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). Numerous courts in this District have denied motions to dismiss where supervisors knew of discrimination, participated in investigations, influenced employment decisions, or failed to remedy known misconduct. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366-67 (S.D.N.Y. 2012); *Farmer*, 473 F. Supp. 3d at 335-36.

1.      **Dr. Thea Abu El-Haj**. Barnard's effort to minimize Dr. Abu El-Haj's role is particularly untenable. The Amended Complaint alleges that she:

- served as Chair of both tenure-track search committees (¶¶ 107, 120-121);
- participated in both hiring decisions challenged in this lawsuit (¶¶ 107, 120-121, 305);
- expressed hostility toward Plaintiff after Plaintiff advocated for racial-minority students and challenged enrollment caps as a racial-equity issue (¶¶ 90-94);
- told Plaintiff she "would be happier at another institution" and "should consider leaving Barnard" after Plaintiff raised racial-equity concerns (¶ 92);
- criticized Plaintiff for meeting with Provost Bell (¶ 92);
- suggested Plaintiff's public recognition by President Beilock was undeserved (¶ 102);
- made repeated comments concerning Plaintiff's maternal status and children (¶ 85);
- implied Plaintiff was anti-Muslim (¶ 81);
- said that Plaintiff's husband was a bad spouse and father when the only thing she knew about him was that he is Jewish (¶ 476);
- told Plaintiff there was "nothing" to improve to obtain a tenure-track position (¶ 108); and
- chaired the search committees that rejected Plaintiff in favor of younger women without children (¶¶ 113-118), and in favor of a Black individual for the Urban Studies position telling Plaintiff that she was "was not urban enough." ¶ 139.

These are not allegations of passive awareness. Plaintiff expressly identifies Dr. Abu El-Haj as a decisionmaker in the failures to hire. Am. Compl. ¶ 305. Courts routinely deny dismissal where a plaintiff alleges that a supervisor participated in the challenged employment decision and made comments reflecting discriminatory animus. *Feingold*, 366 F.3d at 157-58; *Farmer*, 473 F. Supp. 3d at 335-36.

**2.      Dr. Maria Rivera Maulucci**.  The Complaint alleges that Rivera Maulucci was not

a bystander but a participant in the challenged decisions who:

- served on both search committees (¶¶ 120-121);
- participated directly in the hiring decisions (¶ 305);
- rejected Plaintiff's concerns regarding racial equity and enrollment caps (¶ 93);
- participated in a program climate that multiple contingent faculty members viewed as retaliatory (¶¶ 95-96); was involved in selecting younger candidates without children over Plaintiff (¶¶ 113-118);
- told Plaintiff, "We need people to teach at night and you won't want to do that with children," (¶¶ 179, 184),
- made other sexist comments, and;
- was named as a decisionmaker responsible for the challenged failures to hire. (¶ 305).

These allegations alone distinguish this case from the authorities relied upon by Barnard.  Plaintiff

is not alleging mere supervisory status.  She alleges committee membership, direct participation in

the selection process, discriminatory comments, and discriminatory outcomes.

**3.      Dr. Lesley Sharp.**  Barnard attempts to characterize Sharp's conduct as a single

innocuous comment.  Dr. Sharp served on both search committees.  Am. Compl. ¶¶ 120-121.  During

Plaintiff's interview where they discussed research at a majority-Black school where every graduate

attended college, Dr. Sharp unknowledgeably responded with hostility and insisted that Plaintiff's

description could not be true.  *Id.* ¶¶ 130-132. Plaintiff reported this conduct to administration which

admitted that Dr. Sharp had a reputation on campus for being anti-Black and provided examples of

racially prejudiced conduct.  *Id.* ¶¶ 134-135.  Taken together, Dr. Sharp's committee membership,

participation in the hiring process, interview conduct, and alleged reputation for racial bias plausibly

support an inference of discriminatory animus.  Whether her comment was innocuous should be

weighed by a jury.

      **4.**          **Dr. Linda Bell**.  Barnard's motion largely concedes that Dr. Bell repeatedly received complaints of discrimination and possessed authority over hiring and nondiscrimination matters.

The Complaint alleges that Bell:

- served as Provost and Dean of Faculty (¶ 8);
- possessed authority over faculty hiring (¶¶ 205, 209);
- oversaw Barnard's Office of Nondiscrimination and Title IX (¶ 205);
- encouraged Plaintiff to pursue tenure-track opportunities (¶¶ 86-89);
- acknowledged Plaintiff's qualifications and indicated she was well-positioned for promotion (¶¶ 87-88);
- agreed to provide mentoring support but never did so (¶ 89);
- met personally with Plaintiff regarding discrimination complaints (¶¶ 209, 213);
- characterized Plaintiff's complaints as "really serious" and "serious concerns" (¶ 213);
- possessed authority to intervene (¶¶ 205, 209)k,
- nevertheless failed to remedy the discriminatory conduct (¶¶ 213, 235), and;
- failed to support Plaintiff's grants.  (¶¶ 240-46).

These allegations suffice under both the NYSHRL and NYCHRL.  *See Feingold*, 366 F.3d at 158.

      **5.**          **Dr. Sian Beilock.**  Barnard portrays Beilock as merely copied on emails. The Complaint alleges far more.  Plaintiff alleges that President Beilock:

- served as President of Barnard (¶ 9);
- possessed oversight authority over Barnard's Nondiscrimination and Title IX Office (¶ 204);
- received complaints from Plaintiff concerning the discriminatory hiring process (¶ 203);
- was copied on numerous discrimination-related communications (¶¶ 218, 233-236);
- met with Plaintiff regarding the handling of Plaintiff's discrimination complaint (¶ 220);
- misled Plaintiff that there was an investigation going on (¶ 220); and
- failed to take corrective action despite possessing authority to do so. ¶¶ 203-220, 233-236.

Her actual knowledge, authority, misrepresentation, and inaction adequately pled aiding-and-abetting liability.

      **6.**          **Dr. Laura Ann Rosenbury.**  Barnard similarly attempts to portray President Rosenbury as a mere recipient of correspondence.  The Complaint alleges that Dr. Rosenbury:

- assumed the presidency during the relevant period (¶ 10);
- received direct written complaints regarding discrimination and retaliation (¶¶ 237-238);

- was informed that Plaintiff's complaints were not being properly investigated (¶ 237);
- received follow-up communications concerning the same issues (¶¶ 238-250);
- failed to take meaningful corrective action despite having authority to do so (¶¶ 237-250);
- failed to support Plaintiff's grants.  ¶ 243.

Whether Dr. Rosenbury's responses were sufficient is a factual issue inappropriate for resolution on this motion when Plaintiff plausibly alleged that Rosenbury knowingly permitted discriminatory conduct to continue.

7.      **Dr. Elizabeth Scott-Francis**.  Barnard's argument ignores that Dr. Scott-Francis served as the principal official responsible for investigating Plaintiff's complaints.  The Amended Complaint alleges that Scott-Francis:

- served as Director of Barnard's Office of Nondiscrimination and Title IX (¶ 6);
- conducted the inquiry into Plaintiff's discrimination complaints (¶¶ 214-232);
- failed to interview relevant witnesses (¶¶ 214-227);
- conducted only an "inquiry" rather than a formal investigation (¶¶ 214-227);
- refused to provide a written investigative report (¶¶ 229-232);
- knew Plaintiff was viewed as an advocate for minority students (¶ 100); and
- acknowledged that there were "climate" concerns within the Ed. Studies Program. ¶ 298.

Courts routinely hold that allegations of a sham investigation, deliberate indifference, or intentional failure to remedy known discrimination are sufficient to plead individual liability under the NYSHRL and NYCHRL. *See Farmer*, 473 F. Supp. 3d at 335-36.

### III.  CONCLUSION

It should be noted that while at Barnard, Dr. Kitzmiller did not receive any training on the Equal Pay Act and non-discrimination of mothers or older women (though mandated by law) and she knows of no such training for others.  Am. Compl. ¶¶ 269 – 270.  Discovery is likely to confirm that the leaders who destroyed her fine career were not meaningfully trained, overseen, controlled by internal statutory provisions or otherwise and felt free to discriminate.  Defendants fault Dr.

Kitzmiller for the length of her complaint, which in truth is a measure of the intensive facts already developed even before discovery, the three sets of laws (city, state, and federal) involved and the substantial internal contractual measures that were flouted.  The reality is that Defendants wish to block discovery and usurp the jury function rather than answer Plaintiff's comprehensive pleading and proceed normally to trial.

It is respectfully submitted that the Court should deny Barnard's Motion to Dismiss in its entirety.

Respectfully submitted,

LIEBER HAMMER HUBER PAUL &
& HOFFMAN, P.C.

James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
jlieber@lhhb-law.com
thuber@lhhb-law.com
Counsel for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief contains 8,698 words, excluding the

parts of the document that are exempted by Local Civil Rule 7.1(c). The undersigned relied on

the word count of the word-processing program used to prepare this document.

s/James B. Lieber
James B. Lieber
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which shall serve notice upon the following:

Jacqueline Phipps Polito, Esq.
Erin Train, Esq.
Littler Mendelson
375 Woodcliff Drive, Suite 2D
Fairport, N.Y. 14450
585-203-3400 (tel.)
585-203-3414 (fax)
jpolito@littler.com
etrain@littler.com

Emily Gaines
Littler Mendelson
900 Third Avenue
New York, NY 10022
914-803-2032 (tel.)
egaine@littler.com

Counsel for Defendant Barnard College, Thea Abu El-Haj, Maria Rivera Maulucci,
Elizabeth Scott-Francis, Linda Bell, Sian Beilock, Laura Ann Rosenbury, and Lesley A. Sharp

Evandro Cristiano Gigante, Esq.
Edna Doris Guerrasio, Esq.
Proskauer Rose LLP
11 Times Square
New York, NY 10036
(212) 969-3132 (tel.)
(212) 969-2900 (fax)
egigante@proskauer.com
eguerrasio@proskauer.com

Counsel for Defendant Trustees of Columbia University
in the City of New York and Angela Olinto

s/James B. Lieber
James B. Lieber
Counsel for Plaintiff