**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                    :

ERIKA KITZMILLER,                 :

                        :

          Plaintiff,        :       Case No.: 1:25-cv-08634-ER

                        :

-against-                 :       **ECF CASE**

                        :

                        :

BARNARD COLLEGE AND THE TRUSTEES :
OF COLUMBIA UNIVERSITY IN THE CITY :
OF NEW YORK,THEA ABU EL-HAJ, MARIA :
RIVERA MAULUCCI, ELIZABETH SCOTT-  :
FRANCIS, ANGELA OLINTO, LINDA BELL, :
SIAN BEILOCK, LAURA ANN ROSENBURY,:
and LESLIE A. SHARP,         :

                        :

          Defendants.       :

                        :

-------------------------------------------------------- X

 

**<u>DEFENDANTS THE TRUSTEES OF COLUMBIA UNIVERSITY'S AND ANGELA OLINTO'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT ..........................................................................................................................1

    I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED...................................................1

    II.    COLUMBIA WAS NOT PLAINTIFF'S EMPLOYER UNDER ANY THEORY, AND ALL CLAIMS AGAINST IT SHOULD BE DISMISSED. ...............................................2

        A.     Plaintiff Fails to Plead a "Single Employer" Relationship...................................2
        B.     Plaintiff Fails to Plead a "Joint Employer" Relationship. ...................................4
        C.     The University Statutes Confirm Columbia's Independence. ...............................6

    III.   PLAINTIFF'S DISCRIMINATION CLAIM SHOULD BE DISMISSED.........................7

        A.     Plaintiff's Sex-Based Discrimination Claims Should Be Dismissed. ..................8
        B.     Plaintiff's Race-Based Discrimination Claims Should Be Dismissed. ................8
        C.     Plaintiff's Age-Based Discrimination Claims Should Be Dismissed...................9
        D.     Plaintiff's Claims for Ethnicity Association Discrimination Should Be Dismissed. ........................................................................................................9

    IV.   PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED. ...........................9

    V.    ALL CLAIMS AGAINST PROVOST OLINTO SHOULD BE DISMISSED. ...............10

        A.     Plaintiff's Claims for Aiding and Abetting Fail as a Matter of Law..................10
        B.     Plaintiff's Claims for Retaliation Fail as a Matter of Law. ...............................11

    VI.   PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED............................11

        A.     Plaintiff's Hostile Work Environment Claims Should Be Dismissed...............11
        B.     Plaintiff's Unequal Pay Claims Should Be Dismissed....................................11
        C.     Plaintiff's Breach of Contract Claims Should Be Dismissed............................12

CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahmad v. White Plains City Sch. Dist.*,
No. 18-CV-3416, 2019 WL 3202747 (S.D.N.Y. July 16, 2019)............................................. 9

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022) .................................................................................. 12

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) ................................................................................................... 2

*Cassard v. Omnicom Media Grp. Holdings, Inc.*,
No. 1:25-CV-02201, 2025 WL 3227617 (S.D.N.Y. Nov. 19, 2025) ................................. 4, 5

*Castillo v. Albert Einstein Coll. of Med. Inc.*,
No. 24-Civ-984, 2025 WL 692124 (S.D.N.Y. Mar. 4, 2025) ................................................ 5

*Chang Yan Chen v. Lilis 200 W. 57th Corp.*,
No. 19-CV-7654, 2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020)....................................... 2, 3

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020) ............................................................................................................... 9

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995) ................................................................................................... 2

*Dobrosmylov v. DeSales Media Grp., Inc.*,
532 F. Supp. 3d 54 (E.D.N.Y. 2021)................................................................................... 2, 3

*Doheny v. Int'l Bus. Machs., Corp.*,
714 F. Supp. 3d 342 (S.D.N.Y. 2024) ................................................................................ 4, 5

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ................................................................................................. 11

*Felder v. U.S. Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) .................................................................................................... 4

*Fenner v. News Corp.*,
No. 09-Civ-09832, 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013)........................................... 5

*Holt v. KMI-Cont'l, Inc.*,
95 F.3d 123 (2d Cir. 1996) ..................................................................................................... 9

*Huang v. Shanghai City Corp.*,
459 F. Supp. 3d 580 (S.D.N.Y. 2020) ................................................................................ 2, 3

*Joseph v. Owens & Minor Distrib., Inc.*,
   5 F. Supp. 3d 295 (E.D.N.Y. 2014),
   *aff'd*, 594 F. App'x 29 (2d Cir. 2015) ...................................................................................... 10

*Lavin-McEleney v. Marist Coll.*,
   239 F.3d 476 (2d Cir. 2001) ...................................................................................................... 12

*LeeHim v. N.Y.C. Dep't of Educ.*,
   No. 17-Civ-3838, 2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017) .......................................... 9

*McGuigan v. CAE Link Corp.*,
   851 F. Supp. 511 (N.D.N.Y. 1994) ............................................................................................ 9

*Mesias v. Cravath, Swaine & Moore LLP*,
   106 F. Supp. 3d 431 (S.D.N.Y. 2015) ...................................................................................... 10

*Meyer v. State of N.Y. Off. of Mental Health*,
   174 F. Supp. 3d 673 (E.D.N.Y. 2016) ....................................................................................... 8

*Pellegrini v. Sovereign Hotels, Inc.*,
   740 F. Supp. 2d 344 (N.D.N.Y. 2010) ..................................................................................... 11

*Sanchez v. L'Oreal USA, Inc.*,
   No. 21-CV-3229, 2022 WL 1556402 (S.D.N.Y. May 17, 2022) ........................................... 11

*Sosa v. Medstaff, Inc.*,
   No. 12-Civ-8926, 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ............................................ 8

*Tu v. OppenheimerFunds, Inc.*,
   No. 10-Civ-4971, 2012 WL 516837 (S.D.N.Y. Feb. 16, 2012) ............................................ 10

*United States v. McKeon*,
   738 F.2d 26 (2d Cir. 1984) .......................................................................................................... 4

*Ward v. Cohen Media Publ'ns LLC*,
   No. 1:22-cv-06431, 2023 WL 5353342 (S.D.N.Y. Aug. 21, 2023) ........................................ 6

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000) .......................................................................................................... 6

*Whaley v. City Univ. of N.Y.*,
   555 F. Supp. 2d 381 (S.D.N.Y. 2008) ...................................................................................... 11

iii

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms what Columbia's Motion demonstrated: Plaintiff cannot identify a single Columbia employee who made, directed, or participated in the two Barnard hiring decisions at issue. Instead, the Opposition repackages an academic affiliation as *employment control*, relies on marketing materials and branding to argue interrelation of operations, raises new characterizations for the first time that do not appear in the Amended Complaint, and misreads the University Statutes. None of this cures Plaintiff's fundamental pleading deficiency. Columbia was not Plaintiff's employer, Columbia did not participate in the challenged decisions, and Provost Olinto has no involvement in this case. The Motion should be granted.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's Title VII and ADEA discrimination claims based on the November and December 2022 hiring decisions remain untimely.[1] Plaintiff filed her EEOC Charge on April 4, 2024 and with the New York State Division of Human Rights on May 8, 2024—more than 300 days after those decisions. (ECF 30 ¶ 48.) The parties' Tolling Agreement does not help: it expressly provides that claims "time-barred as of the Effective Date [December 13, 2024] . . . shall remain time-barred." (ECF 69-1 ¶¶ 1, 3.) Plaintiff's Title VII and ADEA claims had long since expired by that date.[2] Plaintiff's attempt to salvage these claims by pointing to post-June 2023 grant-related non-responses (ECF 67 at 5) conflates retaliation with discrimination and, again, relies on alleged conduct by Barnard administrators—not Columbia. To the extent Plaintiff relies on earlier workplace remarks from 2019-2021 (ECF 30 ¶¶ 81, 85, 92, 93) to support her state and

---

[1] Defendant Barnard College has fully briefed the statute of limitations argument in its Reply. Columbia and Provost Olinto hereby incorporate by reference the arguments and authorities set forth therein as though fully stated herein.

[2] Provost Olinto was not a party to the Tolling Agreement. To the extent Plaintiff's aiding-and-abetting claims against Olinto are premised on her alleged participation in the 2022 hiring decisions—which are the underlying discriminatory acts—those claims are independently time-barred as to Olinto under any applicable statute of limitations.

city law claims, those allegations are likewise time-barred.

## II. COLUMBIA WAS NOT PLAINTIFF'S EMPLOYER UNDER ANY THEORY, AND ALL CLAIMS AGAINST IT SHOULD BE DISMISSED.

### A. Plaintiff Fails to Plead a "Single Employer" Relationship.

Plaintiff's Opposition fails to cure the fundamental deficiency in her pleading: she does not allege facts demonstrating that Columbia controlled the employment decisions at issue. While Plaintiff correctly identifies the factors courts rely on to assess 'single employer' status, she misapplies those factors and disregards the Second Circuit's focus on "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). Here, that entity is Barnard—and nothing in the Opposition changes that conclusion.

The Opposition's primary evidence of "interrelation of operations" consists of shared branding, websites, logos, course catalogs, dining halls, and athletic facilities. (ECF 68 at 4-5.) As Columbia demonstrated in its Motion, these allegations describe an academic affiliation—not operational integration indicative of a single employer. Joint advertising and marketing do not make two entities a single integrated enterprise. *See Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020). Common benefits plans, shared facilities, and cross-registration of students likewise do not establish a single integrated enterprise. *See Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021); *Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654, 2020 WL 7774345, at *4 (S.D.N.Y. Dec. 30, 2020).

The Opposition also asserts that "the integration was especially direct" as to Plaintiff's academic program and the challenged searches because the Urban Studies Program describes itself as a "Barnard-Columbia" program, Columbia paid part of Plaintiff's salary, and Barnard's pay

2

stubs bear Columbia's name. (ECF 68 at 5.) None of this establishes operational integration for employment purposes. A program that uses both institutions' names reflects an academic partnership, like the broader affiliation between the institutions. *See Huang*, 459 F. Supp. 3d at 587 (finding that independent businesses using "a single website or a common name for marketing purposes" does not "make each responsible for the labor law violations of the other"). And as discussed in Columbia's Motion (ECF 59 at 4), Columbia's partial salary reimbursement was an accommodation to retain Dr. Jacobs, not evidence that Columbia controlled Plaintiff's employment. Moreover, Plaintiff's paycheck came directly from Barnard. The appearance of the word "Columbia" on Barnard's pay stubs is branding—not evidence of shared payroll or operational integration. *Id.* [3]

The Opposition argues that Columbia and Barnard share centralized control of labor relations and common management based on provisions of the Statutes, overlapping leadership roles, faculty appointment procedures, and Columbia faculty participation on Barnard hiring committees. (ECF 68 at 6.) These allegations do not plausibly state centralized control of labor relations because they do not show that Columbia made, directed, or controlled the hiring decisions at issue, which did not involve a tenured position. Nor do structural mechanisms under the Statutes demonstrate that Columbia *actually exercised* any role in the 2022 searches. Indeed, Plaintiff previously alleged that "the Columbia counterpart departments were never involved in [the] searches" she now challenges. (ECF 1 ¶ 146.) That admission—conspicuously deleted from the Amended Complaint—confirms Columbia played no role in the relevant decisions. *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).

As to the search committees, every member held a primary appointment at Barnard. (ECF

---

[3] Plaintiff's attempts to distinguish *Chang Yan Chen*, *Dobrosmylov*, and *Huang* (ECF 68 at 5 n.1) are unavailing. The legal principle these cases establish applies regardless of industry or procedural posture.

3

30 ¶¶ 120-21.) *See Cassard v. Omnicom Media Grp. Holdings, Inc.*, No. 1:25-CV-02201, 2025 WL 3227617, at *4 (S.D.N.Y. Nov. 19, 2025) (plaintiff must allege "concrete allegations against specific entities . . . in order to create a plausible inference of an employment relationship among them") (citation omitted). Dr. Sharp is a Professor of Anthropology at Barnard whose Columbia affiliation is an adjunct, non-salaried role. (ECF 59 at 11 n.10.) Plaintiff does not (and cannot) allege Dr. Sharp was acting on Columbia's behalf when she served on the Barnard search committees. The Opposition's assertion that Dr. Sharp works in a "joint Barnard-Columbia department" (ECF 68 at 6) also rests on Plaintiff's claim that Dr. Sharp told her about how she personally views the Anthropology department (ECF 30 ¶ 128). Similarly, Dr. Passell's membership in the "Barnard-Columbia Urban Studies Program" does not make him a Columbia employee or agent, nor does it plausibly demonstrate Columbia's involvement in the hiring decisions. In any event, allegations of overlapping personnel, without more, do not plausibly state common management. *See Fenner v. News Corp.*, No. 09-Civ.-09832, 2013 WL 6244156, at *11 (S.D.N.Y. Dec. 2, 2013).

The Opposition does not separately address the "common ownership" factor. Accordingly, Columbia incorporates by reference the arguments set forth in its Motion for this factor (ECF 59 at 14).

### B.    Plaintiff Fails to Plead a "Joint Employer" Relationship.

Plaintiff's joint employer theory (ECF 68 at 7-11) is equally unavailing. In a joint employer relationship, two or more entities "share significant control of the same employee." *Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 377 (S.D.N.Y. 2024) (quoting *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022)). The "greatest emphasis" is placed on whether the alleged employer controlled the "manner and means" by which the worker completes assigned tasks. *Id.* (citation omitted).

Plaintiff does not plausibly allege that Columbia hired her, supervised her, set her teaching schedule, assigned her courses, evaluated her performance, disciplined her, or terminated her employment. All such allegations are directed at Barnard faculty and administrators. (*See* ECF 30 ¶¶ 86-94, 107-09, 120-21, 183-87, 241-44.) Plaintiff's reliance on Columbia's general approval authority over faculty appointments (ECF 68 at 8) does not demonstrate that Columbia controlled the "manner and means" of Plaintiff's work. As discussed further in Section II.C, *infra*, Columbia's most direct involvement relates to tenure decisions—not hiring searches for non-tenured positions. Plaintiff does not allege that Columbia actually approved or reviewed the specific appointments of Dr. Gross or Dr. Herbert—and her own original complaint confirms that "the Columbia counterpart departments were never involved in [the] searches" at issue. (ECF 1 ¶ 146.) And, the allegations regarding Dr. Sharp and Dr. Passell are equally unpersuasive since the Amended Complaint does not allege that either was acting *on behalf of* Columbia.

Plaintiff's reliance on the conclusory collective label "Barnard/Columbia" (ECF 30 ¶¶ 115, 117) as evidence of "joint decisions" without any factual allegation of what Columbia actually did with respect to these hires is bootstrapping. Such undifferentiated allegations are simply insufficient to state a claim. *See Cassard*, 2025 WL 3227617, at *4.

The cases Plaintiff relies upon do not support her position. In *Castillo v. Albert Einstein Coll. of Med. Inc.*, No. 24-Civ-984, 2025 WL 692124, at *4 (S.D.N.Y. Mar. 4, 2025), the court did not find joint employment—it merely declined to resolve the question where the plaintiff alleged shared payroll, supervision, and day-to-day control. Plaintiff does not plausibly plead such allegations here. *Ward v. Cohen Media Publications LLC*, No. 1:22-cv-06431, 2023 WL 5353342 (S.D.N.Y. Aug. 21, 2023), is similarly inapposite: the three defendant entities were all run by the same individual, shared legal, HR, and administrative staff, all three paid the plaintiff, and

5

collectively terminated her. *Id*. at *7-8. Those facts bear no resemblance to this case. *Weinstock v. Columbia Univ*., 224 F.3d 33 (2d Cir. 2000), is also inapposite. *Weinstock* involved a tenure decision at Barnard in which Columbia's Provost personally rejected the committee's favorable recommendation—making Columbia the actual decision-maker—and a Columbia counter-department voted on the candidate as a required step. *Id.* at 38-39. Here, Plaintiff fails to plausibly allege that any Columbia official participated in or made any hiring decision on behalf of Columbia, and Plaintiff admitted in her original Complaint that no Columbia counterpart departments were involved. (ECF 1 ¶ 146.)

### C.    The University Statutes Confirm Columbia's Consultative Role in Barnard's Tenure Track Process.

Plaintiff's claim (ECF 68 at 11–13) that Columbia misrepresented the Statutes is foreclosed by the Statutes' plain language, which confirms Columbia's position.

First, Section 234 provides that instructional officers "shall be nominated by the president of the college, acting as dean in the University, with the approval of the Trustees of the college and of the University, and shall be appointed and reappointed by the University according to its custom." (ECF 60-1, § 234.) On its face, this shows the nomination originates with Barnard's own president, the approval step rests with the Trustees—rather than the University exercising discretionary review of individual candidates—and the University's role in appointing and reappointing is a customary act that follows nomination and trustee approval, not an independent power of control. Critically, when § 234 turns to the operative question of how the college and the University are to interact on appointments specifically, it states only that "[t]he college and the University shall *consult* on appointments in accordance with the Agreement." (*Id*. (emphasis added).)

Moreover, § 234's reference to "the University's participation in the procedures leading to

the award of tenure" confirms that Columbia's most direct involvement concerns decisions regarding tenure—not the non-tenure hiring searches at issue here. Regardless, Plaintiff does not allege that Columbia actually exercised any approval or disapproval authority over the specific appointments of Dr. Gross or Dr. Herbert.

Second, Plaintiff's contention that Columbia "selectively quote[d]" § 237 is a red herring. Section 237(a) clearly disclaims any "implied obligation, responsibility, or liability, of any kind whatsoever, for the maintenance, support, direction, or administration of the college, ***including, but not limited to, the conditions of employment and rights and privileges of its faculty***." (ECF 60-1, §237(a) (emphasis added).) Plaintiff does not identify any provision of the Agreement that creates an employment obligation sufficient to override this express disclaimer.

Third, Plaintiff relies on §§ 230 and 231 to argue that Columbia's President "supervises and directs Barnard's activities and holds a seat on its Board." (ECF 68 at 12.) But § 230 limits the President's role to acts that "shall not contravene the college's Charter, as amended, or the provisions of the Agreement"—confirming that this is a coordination function, not operational control over individual faculty employment decisions. The "advice and consent" language in § 231 governs the appointment of Barnard's president—a procedural check analogous to a confirmation role—not authority over day-to-day hiring of individual faculty members. Columbia and Barnard make independent admissions decisions, serve distinct employee and student populations, and maintain separate endowments, budgets, payrolls, benefits, and employment policies.[4]

## III.    PLAINTIFF'S DISCRIMINATION CLAIM SHOULD BE DISMISSED.

The discrimination claims also fail because Plaintiff alleges no discriminatory conduct by Columbia. "[T]he appropriate focus is on the actual decisionmaker—the conduct of one employer

---

[4] Plaintiff notes that Columbia cited Chapter XIII rather than Chapter XXIII. (ECF 68 at 12.) This was a typographical citation error that does not affect the substance of Columbia's argument.

cannot necessarily be imputed to the other." *Sosa v. Medstaff, Inc.*, No. 12-Civ-8926, 2013 WL 6569913, at \*2-4 (S.D.N.Y. Dec. 13, 2013). Every allegedly discriminatory statement identified in the Opposition was made by Barnard personnel acting through Barnard's processes. (See ECF 68 at 13-20.) Plaintiff does not allege that any Columbia employee made discriminatory remarks or exercised control over the hiring decisions.

### A.    Plaintiff's Sex-Based Discrimination Claims Should Be Dismissed.

Both successful candidates were women, creating a strong inference against sex discrimination. *See Meyer v. State of N.Y. Off. of Mental Health*, 174 F. Supp. 3d 673, 687-88 (E.D.N.Y. 2016). The Opposition presents Dr. Maulucci's comment about Plaintiff's children and teaching availability (ECF 68 at 14-15) as evidence of the 2022 search decisions, but the Amended Complaint reveals this statement was made on April 3, 2024 (ECF 30 ¶ 179)—over sixteen months after the November and December 2022 decisions. The Opposition's temporal framing is misleading. Regardless, this statement was made by a Barnard professor—not a Columbia employee.

### B.    Plaintiff's Race-Based Discrimination Claims Should Be Dismissed.

The sole basis for Plaintiff's race claim is the alleged "not urban enough" comment by Barnard Professor Dr. Abu El-Haj. (ECF 68 at 16-17.) This is facially race-neutral, and Plaintiff's subjective interpretation does not create a plausible inference of race discrimination. *See LeeHim v. N.Y.C. Dep't of Educ.,* No. 17-Civ-3838, 2017 WL 5634128, at \*7 (S.D.N.Y. Nov. 21, 2017). A single ambiguous remark, without factual context connecting it to discriminatory animus, cannot sustain a race discrimination claim. *See Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at \*5 (S.D.N.Y. July 16, 2019). This is particularly true for Plaintiff's Section 1981 claim, which requires that race was the "but-for cause" of her injury. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). While Plaintiff alleges one

successful candidate (Dr. Herbert) is African American (ECF 30 ¶ 119), she does not allege the race of the other (Dr. Gross), and thus cannot show that both challenged decisions favored candidates outside her protected class. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129-30 (2d Cir. 1996). Regardless, the comment was allegedly made by a Barnard professor—not a Columbia employee.

### C.       Plaintiff's Age-Based Discrimination Claims Should Be Dismissed.

Plaintiff's age theory rests on the alleged preference for candidates "fresh out of their Ph.D." programs. (ECF 68 at 18-19.) A preference for early-career academics does not constitute age discrimination because a Ph.D. can be obtained at any age. *See McGuigan v. CAE Link Corp.*, 851 F. Supp. 511, 514 (N.D.N.Y. 1994). And, these comments were allegedly made by Barnard faculty—not Columbia employees.

### D.       Plaintiff's Claims for Ethnicity Association Discrimination Should Be Dismissed.

All allegedly anti-Semitic remarks were made by Dr. Abu El-Haj, a Barnard professor. (ECF 68 at 19-20.) Plaintiff does not allege that any Columbia employee commented on her husband's religion, participated in the promotion decisions, or was aware of Dr. Jacobs's religion in connection with any employment decision. The absence of any Columbia-specific allegations is fatal. *See Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309-10 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).

## IV.      PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED.

Plaintiff's retaliation claims fail for the reasons set forth in Columbia's Motion (ECF 59 at 23-25), which are incorporated herein. The Opposition does not overcome these deficiencies.

The promotion decisions at issue occurred in November and December 2022, before Plaintiff's January 2023 internal complaint. An adverse action that predates the protected activity

cannot, as a matter of law or common sense, have been caused by it. *See Tu v. OppenheimerFunds, Inc.*, No. 10-Civ-4971, 2012 WL 516837, at \*11 (S.D.N.Y. Feb. 16, 2012). Plaintiff's 2021 class-cap complaints are approximately eighteen months removed from the promotion decisions—far too remote to support an inference of causation. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015).

Plaintiff's reliance on post-January 2023 grant-related non-responses (ECF 68 at 21-22) fares no better because those acts are attributable only to Barnard administrators—not Columbia. (ECF 30 ¶¶ 241-244.) The Opposition's characterization that Provost Olinto "acknowledged the ongoing discrimination" (ECF 68 at 22) is unsupported by the Amended Complaint, which alleges only that Olinto said she would talk to Barnard's Provost. (ECF 30 ¶ 253.) That is not an acknowledgment of discrimination, and Olinto's alleged inaction in October 2024—nearly two years after the promotion decisions and months after Plaintiff's employment ended—cannot establish causation.[5]

## V.     ALL CLAIMS AGAINST PROVOST OLINTO SHOULD BE DISMISSED.

### A.     Plaintiff's Claims for Aiding and Abetting Fail.

A precondition to aiding-and-abetting liability is a valid primary claim of discrimination. *See Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at \*5 (S.D.N.Y. May 17, 2022). Because Plaintiff's discrimination claims against Columbia fail for the reasons set forth above, the derivative aiding-and-abetting claims against Olinto also fail.

Even if the primary claims survived, Olinto's sole involvement—a meeting with Dr. Jacobs (not Plaintiff) in October 2024, nearly two years after the promotion decisions and months after Plaintiff's employment ended—cannot constitute "actual participation" in the alleged, already-

---

[5] Indeed, Olinto did not assume the role of Provost until April 2024—well over a year after the promotion decisions at issue were made in November and December 2022.

completed discrimination. Plaintiff's reliance on *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004), and *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010), is misplaced because those cases involved supervisors with actual authority over the plaintiff's employment who failed to act on *contemporaneous* complaints of ongoing discrimination. Here, Olinto had no employment relationship with Plaintiff and no authority over Barnard's hiring processes, and is alleged only to have spoken with Plaintiff's husband nearly two years after the promotion decisions at issue.

### B.    Plaintiff's Claims for Retaliation Fail.

For the same reasons, Plaintiff cannot establish a causal connection between any protected activity and Olinto's alleged inaction. Olinto's "failure to act" after Dr. Jacobs contacted her does not constitute an adverse employment action—Olinto had no duty to intervene at a separate institution on behalf of a non-employee. *See Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 402 (S.D.N.Y. 2008). There is no causal connection between Plaintiff's protected activity and any action or inaction by Olinto.

## VI.    PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED.

Columbia incorporates by reference its Motion (ECF 59 at 25-28) on the following claims, which the Opposition does not meaningfully address as to Columbia.

### A.    Plaintiff's Hostile Work Environment Claims Should Be Dismissed.

All alleged hostile conduct allegations are directed at Barnard personnel. No Columbia employee is alleged to have engaged in harassing or discriminatory conduct directed at Plaintiff.

### B.    Plaintiff's Unequal Pay Claims Should Be Dismissed.

Plaintiff was employed and paid by Barnard. Comparing institution-wide salary averages between *two separate employers* cannot plausibly satisfy the comparator requirement. Moreover, Plaintiff identifies no specific Columbia faculty member performing substantially similar work

under similar conditions. *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001).

## C. Plaintiff's Breach of Contract Claims Should Be Dismissed.

Plaintiff does not plead an enforceable contract between herself and Columbia. The alleged promise to Dr. Jacobs that Plaintiff would be "fairly considered" (ECF 30 ¶ 76) is too vague to constitute a contractual obligation, and Plaintiff lacks standing to enforce an agreement made with her husband. Barnard's internal policies do not create contractual obligations binding on Columbia. *See Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 414 (S.D.N.Y. 2022).

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss of Defendants The Trustees of Columbia University in the City of New York and Provost Angela Olinto in its entirety.

Dated: New York, New York
   July 20, 2026

Respectfully submitted,

PROSKAUER ROSE LLP
By: */s/ Evandro C. Gigante*
Evandro C. Gigante
Edna D. Guerrasio
Eleven Times Square
New York, New York 10036
(t) 212-969-3000
(f) 212-969-2900
egigante@proskauer.com
eguerrasio@proskauer.com
*Attorneys for Defendants The Trustees of Columbia*
*University in the City of New York and*
*Angela Olinto*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I caused Defendants The Trustees of Columbia University's and Columbia Provost Angela Olinto's Reply Memorandum of Law In Support of their Motion to Dismiss Plaintiff's First Amended Complaint to be served on all counsel of record through the court's electronic-filing system.

Dated: July 20, 2026
      New York, New York                            */s/ Evandro Gigante*
                                          Evandro Gigante

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the foregoing brief is limited to 3,495 words total.

The word counts were prepared using the Microsoft Word "Word Count" tool, excluding the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but including "material contained in footnotes or endnotes."  Local Civil Rule 7.1.


Dated: July 20, 2026
      New York, New York        */s/ Evandro Gigante*
                                      Evandro Gigante

14